SEYFARTH SHAW LLP
Michael J. Burns (SBN 172614)
mburns@seyfarth.com
560 Mission Street, Suite 3100
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

SEYFARTH SHAW LLP
Michelle Zakarian (SBN 327628)
mzakarian@seyfarth.com
2029 Century Bark East, Suite 3500
Los Angeles, California 90017-3021
Telephone: (310) 277-7200
Facsimile:  (310) 201-5219

Attorneys for Defendant
ACADIA HEALTHCARE COMPANY, INC.
d/b/a MISSION TREATMENT SERVICES, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHERINE WILLIAMS, an individual,<br><br>       Plaintiff,<br><br>  v.<br><br>ACADIA HEALTHCARE COMPANY, INC. d/b/a MISSION TREATMENT SERVICES, INC., a corporate entity form unknown; and DOES 1-50, inclusive,<br><br>       Defendants. | Case No. ___'21CV1174 AJB  MSB___<br><br>Hon. _____<br><br>**DECLARATION OF MICHAEL J. BURNS IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL**<br><br>[Filed Concurrently With Notice Of Removal; Declaration Of Christy Enos In Support; Declaration Of Scott Allen In Support; Corporate Disclosure Statement; Notice Of Interested Parties; Civil Cover Sheet; and Proof of Service]<br><br>(Removed from San Diego County Superior Court, Case No. 37-2020-00038158-CU-WT-NC)<br><br>Complaint Filed:   October 16, 2020<br>Trial Date:      None set |

## DECLARATION OF MICHAEL J. BURNS

I, Michael J. Burns, hereby declare and state as follows:

1.      I have personal knowledge of the facts contained in this declaration, and if called as a witness, could and would testify as to their accuracy.

2.      I am an attorney at law licensed to practice before all courts in the state of California and am a partner with Seyfarth Shaw LLP, attorneys of record for Acadia Healthcare Company, Inc. d/b/a Mission Treatment Services, Inc. ("Acadia" or "Defendant") in connection with the above captioned matter.  All of the pleadings and correspondence in this lawsuit are maintained in our office in the ordinary course of business under my direction and control.  I have reviewed the pleadings and correspondence in preparing this declaration.

3.      **Exhibit A** through **Exhibit C** constitute all of the pleadings in the Superior Court's record that have been served on Defendant, filed by Defendant, or retrieved from the Court's records prior to the filing of this Notice of Removal.  Defendant has not filed or received any other pleadings or papers, other than the pleadings described as **Exhibit A** through **Exhibit C**, in this action prior to this Notice of Removal.

4.      I conducted a review of public records for Plaintiff Katherine Williams ("Plaintiff"), which revealed that Plaintiff has lived in California since at least January 1987.  Attached hereto as **Exhibit D** is a true and correct copy of the results of Defendant's public records search for Plaintiff, redacted to comply with Federal Rule of Civil Procedure 5.2 and Local Rule 5.2-1.

5.      Attached hereto as **Exhibit E** and **Exhibit F** are true and correct copies of jury verdict reports for cases that have issues similar to Plaintiff's allegations that she was discriminated against because of her age and disability and are factually similar to the issues in these cases.  Attached hereto as **Exhibit G** are true and correct copies of jury verdict reports for cases that have awarded attorneys' fees in excess of $75,000.00 in cases involving discrimination.

6.     I anticipate depositions being taken in this case and that ultimately Defendants will file a Motion for Summary Judgment.  I have been licensed to practice law since December 1994.  In the last thirteen years, I have represented employers in hundreds of different employment law cases.  Based on my experience, attorneys' fees in employment discrimination cases often exceed $75,000.00.  In this regard, it is more likely than not that the fees will exceed $75,000.00 through discovery and a summary judgment hearing, and fees would certainly exceed $75,000.00 if the case proceeds to trial.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on June 24, at San Francisco, California.

Michael J. Burns

_____

Michael J. Burns

DECLARATION OF MICHAEL J. BURNS IN SUPPORT OF NOTICE OF REMOVAL

72258387v.1

# Exhibit A

Jihad M. Smaili, Esq. [262219]
**SMAILI & ASSOCIATES, PC**
Civic Center Plaza Towers
600 W. Santa Ana Blvd., Suite 202
Santa Ana, California 92701
714-547-4700
714-547-4710 (facsimile)
jihad@smaililaw.com

Attorney for Plaintiff

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**10/16/2020** at 02:06:31 PM
Clerk of the Superior Court
By Michael Clemens, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF SAN DIEGO

KATHERINE WILLIAMS, an individual;

Plaintiff,

v.

ACADIA HEALTHCARE COMPANY, INC. d/b/a MISSION TREATMENT SERVICES, INC., a corporate entity form unknown; and DOES 1-50, inclusive,

Defendants.

Case No.: 37-2020-00038158-CU-WT-NC

Assigned for all purposes to the

**COMPLAINT:**
1. Discrimination in Violation of Gov. Code §12940 *et seq.*
2. Age Discrimination in Violation of Gov. Code §12940 *et seq.*
3. Failure to Prevent Discrimination in Violation of Gov. Code § 12940(k)
4. Failure to Accommodate in Violation of Gov. Code § 12940(m)
5. Failure to Engage in Interactive Process in Violation of Gov. Code § 12940(n)
6. Retaliation in Violation of Gov. Code §12940(h)
7. Wrongful Termination
8. Violation of Business & Professions Code § 17200 *et seq.*

**DEMAND FOR JURY TRIAL**
**UNLIMITED JURISDICTION**

COMPLAINT

1

Plaintiff Katherine Williams (hereinafter "Plaintiff" and/or "Williams") alleges as follows:

## THE PARTIES

1.     At all times mentioned herein, and at the time the causes of action arose, Plaintiff was and is an individual.

2.     Plaintiff is informed and believes and thereon alleges that at all times mentioned herein, Defendant Acadia Healthcare Company, Inc. d/b/a Mission Treatment Services, Inc. ("Company"), is a corporate entity, form unknown, regularly conducting business in the State of California, and specifically, in the County of San Diego. Plaintiff is further informed and believes and thereon alleges that Company was transacting business in the County of San Diego, State of California, at the time claims of Plaintiff arose. At all times relevant, Company was an employer within the meaning of *Government Code* §12926(d) and as such was barred from, *inter alia*, harassing, discriminating or retaliating against Plaintiff in personnel, scheduling, employment, promotion, advancement, retention, hiring, terminating and other decisions relating to Plaintiff's employment on the basis of age, race, physical disability or medical condition, participation in protected activity, and other immutable characteristics.

3.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1—50, inclusive, are currently unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to show their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each Defendant named herein as a DOE was responsible in some manner for the occurrences and damages alleged herein.

4.     Each reference in this complaint to "Defendant" and/or "Defendants" refers to Company, and also refers to all Defendants sued under fictitious names, jointly and severally.

5.     Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, are now and/or at all times mentioned in this Complaint were in some

Smail & Associates, P.C.

manner legally responsible for the events, happenings and circumstances alleged in this Complaint.   Plaintiff is further informed and believes and thereon alleges that Defendants, and each of them, proximately subjected Plaintiff to the unlawful practices, wrongs, complaints, injuries and/or damages alleged in this Complaint.   Likewise, Defendants, and each of them are now and/or at all times mentioned in this Complaint were the agents, servants and/or employees of some or all other Defendants, and vice-versa, and in doing the things alleged in this Complaint, Defendants are now and/or at all times mentioned in this Complaint were acting within the course and scope of that agency, servitude and/or employment.

6.      Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, are now and/or at all times mentioned in this Complaint were members of and/or engaged in a joint venture, partnership and common enterprise, and were acting within the course and scope of, and in pursuance of said joint venture, partnership and common enterprise.

7.      Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, at all times mentioned in this Complaint, concurred and contributed to the various acts and omissions of each and every one of the other Defendants in proximately causing the complaints, injures and/or damages alleged in this Complaint.   Plaintiff is further informed and believes and thereon alleges that Defendants, and each of them, at all times mentioned in this Complaint, approved of condoned and/or otherwise ratified each and every one of the acts and/or omissions alleged in this Complaint.   Likewise, Defendants, and each of them, at all times mentioned in this Complaint aided and abetted the acts and omissions of each and every one of the other Defendants thereby proximately causing the damages alleged in this Complaint.

8.      Plaintiff is informed and believes and thereon alleges that at all actions alleged herein committed by Defendants were committed by managing agents of Defendants, or, such conduct was known by and/or ratified by managing agents of Defendants.

## VENUE AND JURISDICTION

9.     Venue is proper in this county and this Court has jurisdiction over this matter because Defendants operate out of Carlsbad, California, and, all of the claims and causes of action alleged herein occurred and accrued in the County of San Diego, State of California.

## FACTUAL BACKGROUND

10.     In or around November 2004, Defendant hired Plaintiff as a Clinic Director. Her job duties included, but were not limited to, day-to-day responsibilities and operations of the clinic, staffing, conducting performance evaluations, and counseling of outpatients. She earned a monthly salary of $3,000. Plaintiff dedicated 15 years of hard work to Defendant and never received a negative performance evaluation.

11.     Plaintiff is 68 years of age.

12.     While employed, Plaintiff became aware of plans for a merger between Defendant and another company. On or about November 13, 2018, Plaintiff's physician provided her with a doctor's note to inform Defendant of her Attention Deficit Disorder ("ADD"). Defendant was already aware of her preexisting medical condition and it was also noted in her employee chart. However, Plaintiff wanted to ensure that after Defendant merged with the new company, her new employer would also be aware of the same. As planned, on or about February 15, 2019, Acadia Healthcare merged with Mission Treatment Services.

13.     On or about May 7, 2019, Regional Director, Christie Enos ("Enos") inquired about Plaintiff's plans for retirement. During their conversation, Plaintiff informed Enos that the webinars were not adequate training and kindly requested one-on-one training. Enos quickly denied her request and mentioned, "It's not Acadia's way." Plaintiff was stunned at how quickly she was dismissed given that she needed the additional resource as an accommodation for her disability.

14.     On or about May 14, 2019, Plaintiff attempted to complain to Defendant's newly appointed Human Resources ("HR") Director, Jeff Rummel ("Rummel"), about her stress and ongoing issues with Enos. However, Rummel never gave Plaintiff the opportunity to voice her concerns. He dismissively directed her to speak with Enos regarding her issues. This was simply not possible as the issues concerned Enos herself and thus would need to be addressed by another agent of Defendant. Thus, despite being aware of her work-related disability, Defendant failed to provide an accommodation, refused to engage Plaintiff in a good faith interactive process, and did not provide workers' compensation paperwork.

15.     On or about June 4, 2019, Defendant's former President, Peter Morris ("Morris") and Regional Vice President, Tim Sanderson ("Sanderson") held an important meeting. During this meeting, Plaintiff kindly asked if she could speak with them about her work-related stress, anxiety, and issues with Enos. Morris and Sanderson refused to speak with Plaintiff and instructed her to approach Enos only. Plaintiff simply asked if she could send them e-mail disclosing information, but Morris and Sanderson immediately interrupted stating, "No. Do not send any communication to us." Plaintiff was shut down and prevented from voicing her legitimate concerns about her workplace.

16.     Left without options, Plaintiff filed for FMLA on or about June 10, 2019, and was placed off work until August 26, 2019. Plaintiff also filed for workers' compensation on or about July 3, 2019.

17.     On or about August 26, 2019, Plaintiff anticipated returning to work after being released by her doctor. However, her doctor extended her disability status and Plaintiff was not cleared to return.

18.     Throughout her employment with Defendant, Plaintiff suffered from multiple work-related disabilities. As previously mentioned, Plaintiff was diagnosed with ADD, alongside severe stress, depression, insomnia, and headaches. Plaintiff also had difficulty with her vision. In or around 2019, Plaintiff was diagnosed with Carpal Tunnel Syndrome, as a result of the nature of her work with Defendant. Plaintiff made Defendant

COMPLAINT

5

1  aware of all her disabilities and pain on numerous occasions. Defendant repeatedly failed
2  to provide a reasonable accommodation, refused to engage in a good faith interactive
3  process, and did not provide her with workers' compensation paperwork. Further,
4  Plaintiff was forced to work through her pain and disabilities which exacerbated her
5  injuries due to Defendant's disregard.

6      19.    After the company merger, Plaintiff's duties changed overnight. Defendant
7  did not provide Plaintiff with the necessary training to fulfill expectations and instead,
8  denied her request for assistance.

9      20.    Defendant's agent, Enos, constantly threatened Plaintiff after Plaintiff
10  lodged complaints about her. Defendant's agent stated that, "[Defendant] is big on
11  insubordination,"—a statement that Plaintiff reasonably interpreted to be a threat in
12  retaliation for her participation in protected conduct.

13      21.    Additionally, Defendant discriminated against Plaintiff on account of her
14  age. Enos repeatedly asked about Plaintiff's plans for retirement. Moreover, Plaintiff and
15  another mature co-worker *viz.* "Barbara" were denied proper training. In fact, when co-
16  worker, Celina Maham ("Maham"), attempted to help teach Plaintiff and Barbara,
17  Defendant's agent, Enos reprimanded Maham for doing so.

18      22.    On or about September 27, 2019, Defendant replaced Plaintiff with another
19  employee. Plaintiff is informed and believes that her replacement, all subsequent
20  replacements, have been significantly younger and less experienced than her.

21      23.    On or about December, 15, 2019, Plaintiff's doctor released Plaintiff back
22  to work. Plaintiff submitted requisite paperwork and communicated with HR
23  representative, Scott Allen. However, Defendant refused to put her into the schedule.
24  Plaintiff is informed and believes that Defendant terminated her employment on or about
25  December 15, 2019.

26      24.    Prior to filing this lawsuit, Plaintiff exhausted her administrative remedies
27  by timely filing a complaint with the Department of Fair Employment and Housing
28  (DFEH) and receiving a right-to-sue notice dated March 30, 2020.

Smaili & Associates, P.C.

## FIRST CAUSE OF ACTION

### DISCRIMINATION IN VIOLATION OF

### CALIFORNIA GOVERNMENT CODE § 12940 *et seq.*

### (Against All Defendants)

25.     Plaintiff refers to all allegations contained in paragraphs 1-24, inclusive and by such reference incorporates the same herein as though fully realleged in detail.

26.     California law, and particularly the Fair Employment and Housing Act ("FEHA"), codified at *Government Code* §12900 *et seq.*, prohibits discrimination against persons with a physical condition or disability, which is broadly defined therein, and which includes even the perception that a person has a medical or mental condition and/or physical condition or disability.  FEHA further prohibits discrimination based upon, *inter alia*, age, race, gender, sexual orientation, national origin, pregnancy and other immutable characteristics.

27.     Plaintiff has a disability as alleged above.

28.     Defendant was aware of Plaintiff's on the job injury and her resulting disability, as herein alleged, because Plaintiff specifically reported said disability directly to Defendant via Defendant's supervisors and managing agents.

29.     At all times herein alleged, Plaintiff was qualified for the position of employment that she held with Defendant and was able to perform the essential functions of that job.

30.     Plaintiff is informed and believes and thereon alleges that as a direct and proximate result of Plaintiff's disability, Defendant refused to engage Plaintiff in an interactive process, refused to communicate with Plaintiff, refused to accommodate Plaintiff 's medical restrictions, denied Plaintiff opportunity for advancement, promotion and the ability to earn a living, and terminated Plaintiff.

31.     Defendant's discriminatory action against Plaintiff, as alleged above, constitutes unlawful discrimination in employment on account of Plaintiff's disability in violation of FEHA, and particularly *Gov't Code* §12940(a).

32.   As a direct, foreseeable, and proximate result of Defendant's discriminatory action against Plaintiff, as herein alleged, Plaintiff has been harmed in that Plaintiff has suffered the loss of wages, salary, benefits, the potential for advancement, and additional amounts of money Plaintiff would have received but for Defendants' discriminatory conduct, all in an amount subject to proof at the time of trial, but believed to be no less than three hundred thousand dollars.

33.   As a direct, foreseeable, and proximate result of the wrongful conduct of Defendant as herein alleged, Plaintiff has also suffered and continues to suffer emotional distress and anguish, humiliation, anxiety, and medical expenses all to Plaintiff damage in an amount subject to proof at trial.

34.   Plaintiff is informed and believes and thereon alleges that the above-alleged actions of Defendant were the result and consequence of Defendant's failure to supervise, control, direct, manage, and counsel those agents throughout Plaintiff 's employment and that Defendant ratified, condoned and/or encouraged the discriminatory behavior and enabled agents to believe that their conduct was appropriate.

35.   Defendant, and each of them, failed to offer counseling or comfort to Plaintiff and sent the unmistakable message that such conduct is appropriate in the workplace.

36.   Plaintiff is informed and believes and thereon alleges that Defendant has a systemic and wide-spread policy of discriminating against and retaliating against employees with disabilities. By failing to stop the discrimination, harassment and retaliation, Defendant ratified the discriminatory and retaliatory conduct which, in turn, directly caused a vicious cycle of wrongful conduct with impunity.

37.   Plaintiff is informed and believes and thereon alleges that Plaintiff's on the job injury and resulting disability was a motivating factor in the decision of Defendant to discriminate against her.

38.   The outrageous conduct of Defendant, and each of them, as alleged herein, was done with oppression and malice by Defendant and its supervisors and managers,

1  along with conscious disregard of Plaintiff's rights, and were ratified by those other
2  individuals who were managing agents of Defendant.

3      39.    The conduct of Defendant as alleged hereinabove was done with malice,
4  fraud or oppression, and in reckless disregard of Plaintiff's rights under California law.
5  As such, Plaintiff is entitled to punitive damages within the meaning of *Civ. Code* §3294.

6      40.    Plaintiff also continues to incur attorneys' fees and legal expenses in an
7  amount according to proof at the time of trial which fees and expenses are recoverable
8  pursuant to *Gov't Code* §12900 *et seq.*

9                    **SECOND CAUSE OF ACTION**
10                      **AGE DISCRIMINATION**
11             **IN VIOLATION OF GOV. CODE § 12940 *et seq.***
12                      **(Against all Defendants)**

13      41.    Plaintiff refers to all allegations contained in paragraphs 1-40, inclusive and
14  by such reference incorporates the same herein as though fully realleged in detail.

15      42.    At all times herein mentioned, Gov't Code §§12940(a) and 12941 were in
16  full force and effect and were binding on Defendant.  These sections require Defendant to
17  refrain from discriminating against any employee over the age of 40 because of their age.

18      43.    At the time of Plaintiff's termination, and at all times that Defendant was
19  discriminating against Plaintiff as alleged herein, Plaintiff was over the age of 40.
20  Plaintiff is informed and believes and thereon alleges that after years of wholly
21  satisfactory, competent and diligent performance to the profit of Defendants, that
22  Plaintiff's age, being over 40, was a motivating factor in Defendants' decision to
23  terminate Plaintiff's employment. Said conduct by Defendants was intentional and
24  willful.

25      44.    Plaintiff is informed and believes and thereon alleges that Plaintiff was
26  replaced with an employee below the age of 40.

27
28

Smaili & Associates, P.C.

45.     Defendant was aware of Plaintiff's age, as herein alleged, because Plaintiff maintained Plaintiff's personnel file which specifically contained the date of Plaintiff's birth and her corresponding age.

46.     At all times herein alleged, Plaintiff was qualified for the position of employment that she held with Defendant and was able to perform the essential functions of that job.

47.     Plaintiff is informed and believes and thereon alleges that as a direct and proximate result of Plaintiff's age, Defendant decided to terminate Plaintiff's employment, and in fact, did terminate Plaintiff's employment.

48.     Defendants' discriminatory action against Plaintiff, as alleged above, constitutes unlawful discrimination in employment on account of Plaintiff's age in violation of FEHA, and particularly Gov't Code §12940.

49.     As a direct, foreseeable, and proximate result of Defendants' discriminatory action against Plaintiff, as herein alleged, Plaintiff has been harmed in that Plaintiff has suffered the loss of wages, salary, benefits, the potential for advancement, and additional amounts of money Plaintiff would have received but for Defendant's discriminatory conduct, all in an amount subject to proof at the time of trial.

50.     As a direct, foreseeable, and proximate result of the wrongful conduct of Defendant as herein alleged, Plaintiff has also suffered and continues to suffer emotional distress and anguish, humiliation, anxiety, and medical expenses all to her damage in an amount subject to proof at trial.

51.     Plaintiff is informed and believes and thereon alleges that the above-alleged actions of Defendant were the result and consequence of Defendant's failure to supervise, control, direct, manage, and counsel those agents throughout Plaintiff's employment and that Defendant ratified, condoned and/or encouraged the discriminatory behavior and enabled agents to believe that their conduct was appropriate.

52.    Defendants, and each of them, failed to offer counseling or comfort to Plaintiff and sent the unmistakable message that such conduct is appropriate in the workplace.

53.    Plaintiff is informed and believes and thereon alleges that Defendant has a systemic and wide-spread policy of discriminating against and retaliating against employees over the age of 40.  By failing to stop the discrimination, harassment and retaliation, Defendant ratified the discriminatory and retaliatory conduct which, in turn, directly caused a vicious cycle of wrongful conduct with impunity.

54.    The outrageous conduct of Defendant, and each of them was done with oppression and malice by Defendant and its supervisors and managers, along with conscious disregard of Plaintiff's rights, and were ratified by those other individuals who were managing agents of Defendant.

55.    Plaintiff also continues to incur attorneys' fees and legal expenses in an amount according to proof at the time of trial which fees and expenses are recoverable pursuant to Gov't Code §12900 et seq.

**THIRD CAUSE OF ACTION**

**FAILURE TO PREVENT DISCRIMINATION IN VIOLATION**

**OF CALIFORNIA GOVERNMENT CODE § 12940(k)**

**(Against All Defendants)**

56.    Plaintiff refers to all allegations contained in paragraphs 1-55, inclusive and by such reference incorporates the same herein as though fully realleged in detail.

During the course of employment, Defendant, and each of them, failed to prevent or remedy discrimination, retaliation and harassment toward Plaintiff on the basis of her perceived disability and participation in protected conduct in violation of *Government Code* §12940(k).

57.    As a direct result of the wrongful conduct of Defendant, Plaintiff suffered, and continues to suffer, substantial losses in earnings and other benefits in an amount according to proof at the time trial, including special and general damages.

COMPLAINT

11

58.     As a direct, foreseeable, and proximate result of the wrongful conduct of Defendant, Plaintiff has suffered and continues to suffer emotional distress and anguish, humiliation, substantial losses in salary, bonuses, job benefits, and other employment benefits which her would have received all to her damage in a sum within the jurisdiction of the Court to be ascertained according to proof.

59.     Plaintiff is informed and believes and thereon alleges that the outrageous conduct of Defendant, and each of them, as alleged herein, was done with oppression and malice by Plaintiff's supervisors and managers, along with conscious disregard of Plaintiff's rights, and were ratified by those other individuals who were managing agents of Defendant.

60.     As a proximate result of the wrongful conduct of Defendant, and each of them, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish according to proof at the time of trial.

61.     These unlawful acts were further encouraged by Defendant and done with a conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring Plaintiff.   The conduct of Defendant alleged hereinabove was done with malice, fraud or oppression, and in reckless disregard of Plaintiff's rights under California law.

61.     As such, Plaintiff is entitled to punitive damages within the meaning of *Civ. Code* §3294.

62.     Plaintiff has also incurred and continues to incur attorneys' fees and legal expenses in an amount according to proof at the time of trial.

## FOURTH CAUSE OF ACTION

### FAILURE TO ACCOMMODATE DISABILITY IN VIOLATION OF

### CALIFORNIA GOVERNMENT CODE § 12940(m)

### (Against All Defendants)

63.     Plaintiff refers to all allegations contained in paragraphs 1-62, inclusive and by such reference incorporates the same herein as though fully realleged in detail.

64.     Plaintiff has a disability as alleged above.

65.     Defendant was aware of Plaintiff's disability, as alleged above and herein.

66.     Defendant failed and refused to accommodate Plaintiff's needs, and, failed and refused to engage in an interactive process with Plaintiff, and, failed to address Plaintiff's needs in light of her disabilities.

67.     At all times herein alleged, Plaintiff was qualified for the position of employment that she held with Defendant and was able to perform the essential functions of that job if such reasonable accommodation had been made by Defendant.  At no time would the performance of the functions of the employment position, with a reasonable accommodation for Plaintiff's disabilities, have been a danger to Plaintiff's or any other person's health or safety, nor would it have created an undue hardship to the operation of Defendant's business.

68.     Defendant's failure to accommodate Plaintiff, as alleged above, constitutes unlawful conduct in employment in violation of FEHA, and particularly *Gov't Code* §12940.

69.     As a direct, foreseeable, and proximate result of Defendant's wrongful conduct against Plaintiff, as herein alleged, Plaintiff has been harmed in that Plaintiff has suffered the loss of wages, salary, benefits, the potential for advancement, and additional amounts of money Plaintiff would have received but for Defendant's wrongful conduct, in an amount of at least three hundred thousand dollars, all subject to proof at the time of trial.

70.     As a direct, foreseeable, and proximate result of the wrongful conduct of Defendant as herein alleged, Plaintiff has also suffered and continues to suffer emotional distress and anguish, humiliation, anxiety, and medical expenses all to her damage in an amount subject to proof at trial.

71.     Plaintiff is informed and believes and thereon alleges that the above-alleged actions of Defendant were the result and consequence of Defendant's failure to supervise, control, direct, manage, and counsel those agents throughout Plaintiff's employment and

Smaili & Associates, P.C.

1  that Defendant ratified, condoned and/or encouraged the discriminatory behavior and

2  enabled agents to believe that their conduct was appropriate.

3    72.    Defendant, and each of them, failed to offer counseling or comfort to

4  Plaintiff and sent the unmistakable message that such conduct is appropriate in the

5  workplace.

6    73.    Plaintiff is informed and believes and thereon alleges that Defendant has a

7  systemic and wide-spread policy of discriminating against and retaliating against

8  employees with disabilities.   By failing to stop the discrimination, harassment and

9  retaliation, Defendant ratified the discriminatory and retaliatory conduct which, in turn,

10 directly caused a vicious cycle of wrongful conduct with impunity.

11   74.    Plaintiff is informed and believes and thereon alleges that Defendant's

12 desire to avoid accommodating Plaintiff was a motivating factor in the decision of

13 Defendant to discriminate against her.

14   75.    The outrageous conduct of Defendant, and each of them, as alleged herein,

15 was done with oppression and malice by Defendant and its supervisors and managers,

16 along with conscious disregard of Plaintiff's rights, and were ratified by those other

17 individuals who were managing agents of Defendant.

18   76.    The conduct of Defendant as alleged hereinabove was done with malice,

19 fraud, or oppression, and in reckless disregard of Plaintiff's rights under California law.

20 As such, Plaintiff is entitled to punitive damages within the meaning of *Civ. Code* §3294.

21   77.    Plaintiff also continues to incur attorneys' fees and legal expenses in an

22 amount according to proof at the time of trial which fees and expenses are recoverable

23 pursuant to *Gov't Code* §12900 *et seq.*

24 ///

25 ///

26 ///

27 ///

28 ///

*Smaili & Associates, P.C.*

**FIFTH CAUSE OF ACTION**

**FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN**

**VIOLATION OF CALIFORNIA GOVERNMENT CODE § 12940(n)**

**(Against All Defendants)**

78.     Plaintiff refers to all allegations contained in paragraphs 1-77, inclusive and by such reference incorporates the same herein as though fully realleged in detail.

79.     Plaintiff has a disability as alleged above.

80.     Defendant was aware of Plaintiff's disability, as alleged above and herein.

81.     Defendant failed and refused to engage Plaintiff in an interactive process designed to unite Plaintiff with her job.

82.     At all times herein alleged, Plaintiff was qualified for the position of employment that she held with Defendant and was able to perform the essential functions of that job if such reasonable accommodation had been made by Defendant.  At no time would the performance of the functions of the employment position, with a reasonable accommodation for Plaintiff's disabilities, have been a danger to Plaintiff's or any other person's health or safety, nor would it have created an undue hardship to the operation of Defendant's business.

83.     Defendant's failure to engage with Plaintiff in an interactive process, as alleged above, constitutes unlawful conduct in employment in violation of FEHA, and particularly *Gov't Code* §12940.

84.     As a direct, foreseeable, and proximate result of Defendant's wrongful conduct against Plaintiff, as herein alleged, Plaintiff has been harmed in that Plaintiff has suffered the loss of wages, salary, benefits, the potential for advancement, and additional amounts of money Plaintiff would have received but for Defendant's wrongful conduct, all in an amount no less than three hundred thousand dollars, subject to proof at the time of trial.

85.     As a direct, foreseeable, and proximate result of the wrongful conduct of Defendant as herein alleged, Plaintiff has also suffered and continues to suffer emotional

distress and anguish, humiliation, anxiety, and medical expenses all to her damage in an amount subject to proof at trial.

86.   Plaintiff is informed and believes and thereon alleges that the above-alleged actions of Defendant were the result and consequence of Defendant's failure to supervise, control, direct, manage, and counsel those agents throughout Plaintiff's employment and that Defendant ratified, condoned and/or encouraged the discriminatory behavior and enabled agents to believe that their conduct was appropriate.

87.   Defendant, and each of them, failed to offer counseling or comfort to Plaintiff and sent the unmistakable message that such conduct is appropriate in the workplace.

88.   Plaintiff is informed and believes and thereon alleges that Defendant has a systemic and wide-spread policy of discriminating against and retaliating against employees with disabilities.   By failing to stop the discrimination, harassment and retaliation, Defendant ratified the discriminatory and retaliatory conduct which, in turn, directly caused a vicious cycle of wrongful conduct with impunity.

89.   Plaintiff is informed and believes and thereon alleges that Defendant's desire to avoid accommodating Plaintiff was a motivating factor in the decision of Defendant to discriminate against her and ultimately terminate her.

90.   The outrageous conduct of Defendant, and each of them, as alleged herein, was done with oppression and malice by Defendant and its supervisors and managers, along with conscious disregard of Plaintiff's rights, and were ratified by those other individuals who were managing agents of Defendant.

91.   The conduct of Defendant as alleged hereinabove was done with malice, fraud or oppression, and in reckless disregard of Plaintiff's rights under California law. As such, Plaintiff is entitled to punitive damages within the meaning of *Civ. Code* §3294.

92.   Plaintiff also continues to incur attorneys' fees and legal expenses in an amount according to proof at the time of trial which fees and expenses are recoverable pursuant to *Gov't Code* §12900 *et seq.*

## SIXTH CAUSE OF ACTION

### RETALIATION IN VIOLATION OF

### CALIFORNIA GOVERNMENT CODE §12940(h)

#### (Against All Defendants)

93.   Plaintiff refers to all allegations contained in paragraphs 1-92, inclusive, and by such reference incorporates the same herein as though fully realleged in detail.

94.   At all times herein mentioned, FEHA, Government Code §12940(h), was in full force and effect and was binding on Defendant.  This statute requires Defendant to refrain from retaliating against Plaintiff.

95.   Plaintiff is informed and believes and thereon alleges that as a consequence of lodging complaints with Defendants about the harassing and discriminatory acts being committed against Plaintiff, coupled with Plaintiff's disability sustained while on-the-job for which workers compensation coverage was required along with reasonable accommodation, Defendant took retaliatory action against Plaintiff by failing to conduct a good faith interactive process aimed at reuniting Plaintiff with Plaintiff job, failing to determine the essential functions of Plaintiff's job, mistreat Plaintiff, and deny Plaintiff advancement and promotion.

96.   Defendant unlawfully retaliated against Plaintiff after she engaged in protected activity after being injured on the job, such as without limitation, filing or intending to file for workers' compensation benefits due to safety concerns and requesting accommodation, and, lodging workplace complaints related to the harassment and discrimination that she was facing, and other complaints of a hostile and unsafe working environment.

97.   As a proximate result of Defendant's willful, knowing, and intentional conduct against Plaintiff, she has sustained and continues to sustain substantial losses in Plaintiff earnings and other employment benefits and continues to suffer humiliation, emotional distress, and mental and physical pain an and anguish, and sleep dysfunction, all to Plaintiff damage in a sum according to proof.

98.     These unlawful acts were further encouraged by Defendant and done with a conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring Plaintiff.  In light of Defendant's willful, knowing, and intentional discrimination against Plaintiff which culminated in Plaintiff discharge, Plaintiff seeks an award of punitive and exemplary damages in an amount according to proof.

99.     Plaintiff has incurred and continues to incur legal expenses and attorney fees.  Plaintiff is presently unaware of the precise amount of said expenses and fees and prays leave of court to amend this Complaint when said amounts are more fully known.

### SEVENTH CAUSE OF ACTION

### WRONGFUL TERMINATION

### (Against all Defendants)

100.     Plaintiff refers to all allegations contained in paragraphs 1-99, inclusive and by such reference incorporates the same herein as though fully realleged in detail.

101.     Plaintiff informed Defendants of her age, work related injuries, and resulting pain. Further, Defendants were aware of Plaintiff's age, work related injuries, and resulting pain.

102.     *Gov't Code* §12940 et seq., prohibits forms of discrimination against protected classes of employees.

103.     Defendant wrongfully terminated Plaintiff in violation of a substantial and fundamental public policy in that a determining and motivating factor in Defendants' decision to terminate Plaintiff was the desire to retaliate against her because of: (i) her age, (ii) work related injuries, (iii) disability, (iv) complaints about her work environment, and (v) filing/perceived filing for workers compensation case.

104.     Plaintiff is informed and believes and thereon alleges that these factors made up Defendants decision to terminate Plaintiff and/or played an important and integral role in said decision.  Such discrimination was in violation of the public policy of the State of California and resulted in damage and injury to Plaintiff as alleged herein.

105.   As a proximate result of Defendants willful, knowing, and intentional discrimination and retaliation against Plaintiff, she has sustained and continues to sustain substantial losses in Plaintiff earnings and other employment benefits and continues to suffer humiliation, emotional distress, and mental and physical pain an and anguish, and loss of sleep/sleep dysfunction, all to her damage in a sum according to proof.

106.   In light of Defendants willful, knowing, and intentional discrimination against Plaintiff which resulted in her wrongful termination, Plaintiff seeks an award of punitive and exemplary damages in an amount according to proof.

## EIGHTH CAUSE OF ACTION

### VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200 *et seq.*

### (Against All Defendants)

107.   Plaintiff refers to all allegations contained in paragraphs 1-106 inclusive, and by such reference incorporates the same herein as though fully realleged in detail.

108.   Defendant, and each of them, have engaged in unfair and unlawful business practices as set forth above.

109.   Business & Professions Code § 17200 *et seq.* prohibits unlawful and unfair business practices.

110.   By engaging in the above-described acts and practices, Defendant, and each of them, have committed one or more acts of unfair, unlawful or fraudulent competition within the meaning of Business & Professions Code §17200 *et seq.*

111.   Defendant, and each of them, have violated statutes and public policies. Through the conduct alleged in this Complaint, Defendant, and each of them, have acted contrary to public policies and have engaged in other unlawful and unfair business practices in violation of Business & Professions Code § 17200 *et seq.*, depriving Plaintiff and all interested persons of rights, benefits, and privileges guaranteed to all employees under law.

112.    As a direct and proximate result of the aforementioned acts and practices, Plaintiff has suffered a loss of money and property in the form of wages and benefits that she would have received as an employee of Defendant, and each of them.

113.    Plaintiff seeks an order of this Court awarding restitution, injunctive relief and all other relief allowed under Business & Professions Code §17200 *et seq.*, plus interest and costs.

COMPLAINT

20

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1. For all actual, consequential, and incidental damages, including but not limited to loss of earnings and employee benefits, according to proof, but no less than three hundred thousand dollars;

2. For restitution for unfair competition pursuant to Business & Professions Code §17200 *et seq.*, resulting from Defendants' unlawful business acts and practices, according to proof;

3. For an order enjoining Defendants and their agents, servants, and employees, and all persons acting under, in concert with, or for them, from acting in derogation of any rights or duties alleged in this Complaint;

4. For pre-judgment and post-judgment interest, according to proof;

5. For punitive and exemplary damages, according to proof;

6. For attorneys' fees, according to proof and statute;

7. For costs of suit incurred herein;

8. For such other relief and the Court may deem just and proper.

Dated: October 12, 2020          **SMAILI & ASSOCIATES, P.C.**


By: _/s/ Jihad M. Smaili_
         Jihad M. Smaili, Esq.
         Attorney for Plaintiff

COMPLAINT

21

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury.

Dated: October 12, 2020                    **SMAILI & ASSOCIATES, P.C.**


By: _/s/ Jihad M. Smaili_
                 Jihad M. Smaili, Esq.
                 Attorney for Plaintiff

# Exhibit B

 **CT Corporation**

**Service of Process Transmittal**
05/27/2021
CT Log Number 539629566

**TO:** Chris Howard, Executive VP, General Counsel and Sec.
Acadia Healthcare Company, Inc.
6100 TOWER CIR STE 1000
FRANKLIN, TN 37067-1509

**RE:** **Process Served in California**

**FOR:** Acadia Healthcare Company, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | KATHERINE WILLIAMS, ETC., PLTF. vs. ACADIA HEALTHCARE COMPANY, INC., ETC., ET AL., DFTS. |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified<br>Case # 37202000038158CUWTNC |
| **NATURE OF ACTION:** | Employee Litigation - Wrongful Termination |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 05/27/2021 at 08:19 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 05/27/2021, Expected Purge Date: 06/01/2021 |
| | Image SOP |
| | Email Notification,  Chris Howard  chris.howard@acadiahealthcare.com |
| | Email Notification,  Lauren Foley  lauren.foley@acadiahealthcare.com |
| | Email Notification,  Keith Thompson  keith.thompson@acadiahealthcare.com |
| | Email Notification,  Emily Tuma  emily.tuma@acadiahealthcare.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>818 West 7th Street<br>Los Angeles, CA 90017<br>866-665-5799<br>SouthTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other

 **CT Corporation**

**TO:**     Chris Howard, Executive VP, General Counsel and Sec.
Acadia Healthcare Company, Inc.
6100 TOWER CIR STE 1000
FRANKLIN, TN 37067-1509

**RE:**     **Process Served in California**

**FOR:**    Acadia Healthcare Company, Inc.  (Domestic State: DE)

advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                           Thu, May 27, 2021

**Server Name:**                    DROP SERVICE

Entity Served            ACADIA HEALTHCARE COMPANY, INC.

Case Number              3720200038158CUWTNC

Jurisdiction             CA



SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
ACADIA HEALTHCARE COMPANY, INC. d/b/a MISSION TREATMENT SERVICES, INC.,
a corporate entity form unknown; and DOES 1-50, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

KATHERINE WILLIAMS, an individual;

---

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**10/16/2020** at 02:08:31 PM
Clerk of the Superior Court
By Michael Clemens, Deputy Clerk

---

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

The name and address of the court is:
*(El nombre y dirección de la corte es):*    North County Superior Court
325 South Melrose Dr.
Vista, CA 92081

37-2020-00038158-CU-WT-NC

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jihad Smaili (262219), Smaili & Associates, P.C., 600 W. Santa Ana Blvd., Ste 202, Santa Ana, CA, 92701; 714-547-4700

| DATE:
*(Fecha)* | 10/22/2020 | Clerk, by
*(Secretario)* | _M. Clemens_
M. Clemens | Deputy
*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED: You are served**
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify):* Acadia Healthcare Company, Inc.
   under: ☒ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*

**Page 1 of 1**

| Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov* |

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>Jihad M. Smaili, Esq. (SBN 262219)<br>Smaili & Associates, P.C.<br>600 W. Santa Ana Blvd., Suite 202<br>Santa Ana, CA 92701<br>TELEPHONE NO.: 714-547-4700    FAX NO.:<br>ATTORNEY FOR *(Name)*: Plaintiff | FOR COURT USE ONLY<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**10/16/2020** at 02:08:31 PM<br><br>Clerk of the Superior Court<br>By Michael Clemens, Deputy Clerk |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Diego
STREET ADDRESS:  325 South Melrose Dr.
MAILING ADDRESS:
CITY AND ZIP CODE: Vista, CA 92081
BRANCH NAME:  North County Superior Court

CASE NAME:
Katherine Williams v. Acadia Healthcare Company, Inc. d/b/a Mission Treatment Services, Inc.

| CIVIL CASE COVER SHEET | Complex Case Designation | 37-2020-00038158-CU-WT-NC |
|---|---|---|
| [✓] Unlimited  [ ] Limited<br>(Amount      (Amount<br>demanded     demanded is<br>exceeds $25,000)  $25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE: Judge Jacqueline M. Stern<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [✓] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [✓] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties      d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve              in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence         f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [✓] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [✓] punitive
4. Number of causes of action *(specify)*: 8
5. This case [ ] is  [✓] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*

Date: October 15, 2020

Jihad M. Smaili                                                          ▶
_____                                    _____
(TYPE OR PRINT NAME)                                               (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
      or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-
    domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**



# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

CASE NUMBER: 37-2020-00038158-CU-WT-NC          CASE TITLE: Williams vs. Acadia Healthcare Company Inc [IMAGED]

**NOTICE:** All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:
        **(1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),**
        **(2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), *and***
        **(3) the Notice of Case Assignment form (SDSC form #CIV-721).**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

**Potential Advantages and Disadvantages of ADR**
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| Potential Advantages | Potential Disadvantages |
|---|---|
| • Saves time | • May take more time and money if ADR does not |
| • Saves money | resolve the dispute |
| • Gives parties more control over the dispute | • Procedures to learn about the other side's case (discovery), |
| resolution process and outcome | jury trial, appeal, and other court protections may be limited |
| • Preserves or improves relationships | or unavailable |

**Most Common Types of ADR**
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:** A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:** A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:** There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.  Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

## Local ADR Programs for Civil Cases

**Mediation:** The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

On-line mediator search and selection:  Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005).  The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:** The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:** The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience.  Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

More information about court-connected ADR: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:** The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:**  To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

## Legal Representation and Advice

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: | 325 S Melrose DRIVE |
| MAILING ADDRESS: | 325 S Melrose DRIVE |
| CITY AND ZIP CODE: | Vista, CA 92081-6695 |
| BRANCH NAME: | North County |
| TELEPHONE NUMBER: | (760) 201-8027 |

| PLAINTIFF(S) / PETITIONER(S):   Katherine Williams |
|---|

| DEFENDANT(S) / RESPONDENT(S):  Acadia Healthcare Company Inc |
|---|

| WILLIAMS VS. ACADIA HEALTHCARE COMPANY INC [IMAGED] |
|---|

| NOTICE OF CASE ASSIGNMENT and CASE MANAGEMENT CONFERENCE | CASE NUMBER: 37-2020-00038158-CU-WT-NC |
|---|---|

## CASE ASSIGNED FOR ALL PURPOSES TO:

Judge:  Jacqueline M. Stern                                          Department: N-27

**COMPLAINT/PETITION FILED:** 10/16/2020

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 06/18/2021 | 09:00 am | N-27 | Jacqueline M. Stern |

Due to the COVID-19 pandemic, all hearings will be conducted remotely until further notice. Absent an order of the court, personal appearances at the hearing will not be allowed. For information on arranging telephonic or video appearances, contact CourtCall at (888)882-6878, or at www.courtcall.com. Please make arrangements with CourtCall as soon as possible.

A case management statement must be completed by counsel for all parties or self-represented litigants and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR* options.

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS:  The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time.  General civil cases consist of all civil cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, parking citation appeals, and family law proceedings.

COMPLAINTS:  Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants.

DEFENDANT'S APPEARANCE:  Defendant must generally appear within 30 days of service of the complaint.  (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

JURY FEES:  In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

COURT REPORTERS: Court reporters are not provided by the Court in Civil cases. See policy regarding normal availability and unavailability of official court reporters at www.sdcourt.ca.gov.

*ALTERNATIVE DISPUTE RESOLUTION (ADR):  THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).

**NOTICE OF CASE ASSIGNMENT**

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN DIEGO | *FOR COURT USE ONLY* |
|---|---|
| STREET ADDRESS:          325 S. Melrose | |
| MAILING ADDRESS:      325 S. Melrose | |
| CITY, STATE, & ZIP CODE: Vista, CA  92081-6695 | |
| BRANCH NAME:          North County | |

| PLAINTIFF(S):   Katherine Williams |
|---|
| DEFENDANT(S): Acadia Healthcare Company Inc DBA Mission Treatment Services Inc |
| SHORT TITLE:   WILLIAMS VS. ACADIA HEALTHCARE COMPANY INC |

| STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: 37-2020-00038158-CU-WT-NC |
|---|---|

Judge: Jacqueline M. Stern                                            Department: N-27

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process.  Selection of any of these options will not delay any case management timelines.

- [ ] Mediation (court-connected)
- [ ] Mediation (private)
- [ ] Voluntary settlement conference (private)
- [ ] Neutral evaluation (private)
- [ ] Other (*specify e.g., private mini-trial, private judge, etc.*): _____

- [ ] Non-binding private arbitration
- [ ] Binding private arbitration
- [ ] Non-binding judicial arbitration (discovery until 15 days before trial)
- [ ] Non-binding judicial arbitration (discovery until 30 days before trial)

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: *(Name)* _____

_____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____          Date: _____

_____          _____
Name of Plaintiff                                                    Name of Defendant

_____          _____
Signature                                                            Signature

_____          _____
Name of Plaintiff's Attorney                                   Name of Defendant's Attorney

_____          _____
Signature                                                            Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385.  Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated:  10/22/2020

_____
JUDGE OF THE SUPERIOR COURT

1   Jihad M. Smaili, Esq. [262219]
    **SMAILI & ASSOCIATES, PC**
2   Civic Center Plaza Towers
    600 W. Santa Ana Blvd., Suite 202
3   Santa Ana, California 92701
    714-547-4700
4   714-547-4710 (facsimile)
5   jihad@smaililaw.com

6   Attorneys for Plaintiff

7             **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8                   **FOR THE COUNTY OF SAN DIEGO**

9

10   KATHERINE WILLIAMS, an    )   **Case No.: 37-2020-00038158-CU-WT-NC**
    individual,                   )
11                             )
12           Plaintiff,           )
                              )
13       v.                     )   **PLAINTIFF'S STATEMENT OF**
                              )   **PUNITIVE DAMAGES**
14   ACADIA HEALTHCARE       )   **[CCP §425.115]**
    COMPANY, INC. d/b/a MISSION   )
15   TREATMENT SERVICES, INC., a   )
    corporate entity form unknown; and   )
16   DOES 1-50, inclusive,         )
17             Defendants.       )
18

19   **NOTICE TO: ACADIA HEALTHCARE COMPANY, INC. d/b/a MISSION**
20   **TREATMENT SERVICES, INC., a corporate entity form unknown; and DOES**
    **1—50, inclusive,**
21

22   Plaintiff Katherine Williams reserves the right to seek $100,000.00 in punitive
    damages against each of you when she seeks a judgment in the above captioned
23   lawsuit filed against you.

24   Dated: May 11, 2021         **SMAILI & ASSOCIATES, P.C.**
25

26                 By: *Jihad M. Smaili*
27                     Jihad M. Smaili, Esq.
                      Attorneys for Plaintiff
28



# Superior Court of California
# County of San Diego

# NOTICE OF ELIGIBILITY TO eFILE
# AND ASSIGNMENT TO IMAGING DEPARTMENT

**This case is eligible for eFiling. Should you prefer to electronically file documents, refer to General Order in re procedures regarding electronically imaged court records, electronic filing, and access to electronic court records in civil and probate cases for rules and procedures or contact the Court's eFiling vendor at www.onelegal.com for information.**

**This case has been assigned to an Imaging Department and original documents attached to pleadings filed with the court will be imaged and destroyed. Original documents should not be filed with pleadings. If necessary, they should be lodged with the court under California Rules of Court, rule 3.1302(b).**

On August 1, 2011 the San Diego Superior Court began the Electronic Filing and Imaging Pilot Program ("Program"). As of August 1, 2011 in all new cases assigned to an Imaging Department all filings will be imaged electronically and the electronic version of the document will be the official court file. The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and on the Internet through the court's website.

You should be aware that the electronic copy of the filed document(s) will be the official court record pursuant to Government Code section 68150. The paper filing will be imaged and held for 30 days. After that time it will be destroyed and recycled. **Thus, you should not attach any original documents to pleadings filed with the San Diego Superior Court. Original documents filed with the court will be imaged and destroyed except those documents specified in California Rules of Court, rule 3.1806.** Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant or petitioner to serve a copy of this notice with the complaint, cross-complaint or petition on all parties in the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words **"IMAGED FILE"** in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

Jihad M. Smaili, Esq. [262219]
**SMAILI & ASSOCIATES, PC**
Civic Center Plaza Towers
600 W. Santa Ana Blvd., Suite 202
Santa Ana, California 92701
714-547-4700
714-547-4710 (facsimile)
jihad@smaililaw.com

Attorney for Plaintiff

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**10/16/2020** at 02:08:31 PM
Clerk of the Superior Court
By Michael Clemens, Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN DIEGO**

| | |
|---|---|
| KATHERINE WILLIAMS, an individual; | Case No.: 37-2020-00038158-CU-WT-NC |
| | Assigned for all purposes to the |
| Plaintiff, | |
| v. | **COMPLAINT:** |
| | 1. Discrimination in Violation of Gov. Code §12940 *et seq.* |
| ACADIA HEALTHCARE COMPANY, INC. d/b/a MISSION TREATMENT SERVICES, INC., a corporate entity form unknown; and DOES 1-50, inclusive, | 2. Age Discrimination in Violation of Gov. Code §12940 *et seq.* |
| | 3. Failure to Prevent Discrimination in Violation of Gov. Code § 12940(k) |
| | 4. Failure to Accommodate in Violation of Gov. Code § 12940(m) |
| Defendants. | 5. Failure to Engage in Interactive Process in Violation of Gov. Code § 12940(n) |
| | 6. Retaliation in Violation of Gov. Code §12940(h) |
| | 7. Wrongful Termination |
| | 8. Violation of Business & Professions Code § 17200 *et seq.* |
| | **DEMAND FOR JURY TRIAL**
**UNLIMITED JURISDICTION** |

COMPLAINT

1

Plaintiff Katherine Williams (hereinafter "Plaintiff" and/or "Williams") alleges as follows:

## THE PARTIES

1.     At all times mentioned herein, and at the time the causes of action arose, Plaintiff was and is an individual.

2.     Plaintiff is informed and believes and thereon alleges that at all times mentioned herein, Defendant Acadia Healthcare Company, Inc. d/b/a Mission Treatment Services, Inc. ("Company"), is a corporate entity, form unknown, regularly conducting business in the State of California, and specifically, in the County of San Diego.  Plaintiff is further informed and believes and thereon alleges that Company was transacting business in the County of San Diego, State of California, at the time claims of Plaintiff arose.   At all times relevant, Company was an employer within the meaning of *Government Code* §12926(d) and as such was barred from, *inter alia*, harassing, discriminating or retaliating against Plaintiff in personnel, scheduling, employment, promotion, advancement, retention, hiring, terminating and other decisions relating to Plaintiff's employment on the basis of age, race, physical disability or medical condition, participation in protected activity, and other immutable characteristics.

3.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1—50, inclusive, are currently unknown to Plaintiff, who therefore sues said Defendants by such fictitious names.  Plaintiff will seek leave to amend this complaint to show their true names and capacities when ascertained.  Plaintiff is informed and believes and thereon alleges that each Defendant named herein as a DOE was responsible in some manner for the occurrences and damages alleged herein.

4.     Each reference in this complaint to "Defendant" and/or "Defendants" refers to Company, and also refers to all Defendants sued under fictitious names, jointly and severally.

5.     Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, are now and/or at all times mentioned in this Complaint were in some

manner legally responsible for the events, happenings and circumstances alleged in this Complaint.    Plaintiff is further informed and believes and thereon alleges that Defendants, and each of them, proximately subjected Plaintiff to the unlawful practices, wrongs, complaints, injuries and/or damages alleged in this Complaint.    Likewise, Defendants, and each of them are now and/or at all times mentioned in this Complaint were the agents, servants and/or employees of some or all other Defendants, and vice-versa, and in doing the things alleged in this Complaint, Defendants are now and/or at all times mentioned in this Complaint were acting within the course and scope of that agency, servitude and/or employment.

6.    Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, are now and/or at all times mentioned in this Complaint were members of and/or engaged in a joint venture, partnership and common enterprise, and were acting within the course and scope of, and in pursuance of said joint venture, partnership and common enterprise.

7.    Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, at all times mentioned in this Complaint, concurred and contributed to the various acts and omissions of each and every one of the other Defendants in proximately causing the complaints, injures and/or damages alleged in this Complaint.    Plaintiff is further informed and believes and thereon alleges that Defendants, and each of them, at all times mentioned in this Complaint, approved of condoned and/or otherwise ratified each and every one of the acts and/or omissions alleged in this Complaint.    Likewise, Defendants, and each of them, at all times mentioned in this Complaint aided and abetted the acts and omissions of each and every one of the other Defendants thereby proximately causing the damages alleged in this Complaint.

8.    Plaintiff is informed and believes and thereon alleges that at all actions alleged herein committed by Defendants were committed by managing agents of Defendants, or, such conduct was known by and/or ratified by managing agents of Defendants.

## VENUE AND JURISDICTION

9.     Venue is proper in this county and this Court has jurisdiction over this matter because Defendants operate out of Carlsbad, California, and, all of the claims and causes of action alleged herein occurred and accrued in the County of San Diego, State of California.

## FACTUAL BACKGROUND

10.     In or around November 2004, Defendant hired Plaintiff as a Clinic Director. Her job duties included, but were not limited to, day-to-day responsibilities and operations of the clinic, staffing, conducting performance evaluations, and counseling of outpatients. She earned a monthly salary of $3,000. Plaintiff dedicated 15 years of hard work to Defendant and never received a negative performance evaluation.

11.     Plaintiff is 68 years of age.

12.     While employed, Plaintiff became aware of plans for a merger between Defendant and another company. On or about November 13, 2018, Plaintiff's physician provided her with a doctor's note to inform Defendant of her Attention Deficit Disorder ("ADD"). Defendant was already aware of her preexisting medical condition and it was also noted in her employee chart. However, Plaintiff wanted to ensure that after Defendant merged with the new company, her new employer would also be aware of the same. As planned, on or about February 15, 2019, Acadia Healthcare merged with Mission Treatment Services.

13.     On or about May 7, 2019, Regional Director, Christie Enos ("Enos") inquired about Plaintiff's plans for retirement. During their conversation, Plaintiff informed Enos that the webinars were not adequate training and kindly requested one-on-one training. Enos quickly denied her request and mentioned, "It's not Acadia's way." Plaintiff was stunned at how quickly she was dismissed given that she needed the additional resource as an accommodation for her disability.

14.     On or about May 14, 2019, Plaintiff attempted to complain to Defendant's newly appointed Human Resources ("HR") Director, Jeff Rummel ("Rummel"), about her stress and ongoing issues with Enos. However, Rummel never gave Plaintiff the opportunity to voice her concerns. He dismissively directed her to speak with Enos regarding her issues. This was simply not possible as the issues concerned Enos herself and thus would need to be addressed by another agent of Defendant. Thus, despite being aware of her work-related disability, Defendant failed to provide an accommodation, refused to engage Plaintiff in a good faith interactive process, and did not provide workers' compensation paperwork.

15.     On or about June 4, 2019, Defendant's former President, Peter Morris ("Morris") and Regional Vice President, Tim Sanderson ("Sanderson") held an important meeting. During this meeting, Plaintiff kindly asked if she could speak with them about her work-related stress, anxiety, and issues with Enos. Morris and Sanderson refused to speak with Plaintiff and instructed her to approach Enos only. Plaintiff simply asked if she could send them e-mail disclosing information, but Morris and Sanderson immediately interrupted stating, "No. Do not send any communication to us." Plaintiff was shut down and prevented from voicing her legitimate concerns about her workplace.

16.     Left without options, Plaintiff filed for FMLA on or about June 10, 2019, and was placed off work until August 26, 2019. Plaintiff also filed for workers' compensation on or about July 3, 2019.

17.     On or about August 26, 2019, Plaintiff anticipated returning to work after being released by her doctor. However, her doctor extended her disability status and Plaintiff was not cleared to return.

18.     Throughout her employment with Defendant, Plaintiff suffered from multiple work-related disabilities. As previously mentioned, Plaintiff was diagnosed with ADD, alongside severe stress, depression, insomnia, and headaches. Plaintiff also had difficulty with her vision. In or around 2019, Plaintiff was diagnosed with Carpal Tunnel Syndrome, as a result of the nature of her work with Defendant. Plaintiff made Defendant

1  aware of all her disabilities and pain on numerous occasions. Defendant repeatedly failed
2  to provide a reasonable accommodation, refused to engage in a good faith interactive
3  process, and did not provide her with workers' compensation paperwork. Further,
4  Plaintiff was forced to work through her pain and disabilities which exacerbated her
5  injuries due to Defendant's disregard.

6      19.    After the company merger, Plaintiff's duties changed overnight. Defendant
7  did not provide Plaintiff with the necessary training to fulfill expectations and instead,
8  denied her request for assistance.

9      20.    Defendant's agent, Enos, constantly threatened Plaintiff after Plaintiff
10 lodged complaints about her. Defendant's agent stated that, "[Defendant] is big on
11 insubordination,"—a statement that Plaintiff reasonably interpreted to be a threat in
12 retaliation for her participation in protected conduct.

13     21.    Additionally, Defendant discriminated against Plaintiff on account of her
14 age. Enos repeatedly asked about Plaintiff's plans for retirement. Moreover, Plaintiff and
15 another mature co-worker *viz.* "Barbara" were denied proper training. In fact, when co-
16 worker, Celina Maham ("Maham"), attempted to help teach Plaintiff and Barbara,
17 Defendant's agent, Enos reprimanded Maham for doing so.

18     22.    On or about September 27, 2019, Defendant replaced Plaintiff with another
19 employee. Plaintiff is informed and believes that her replacement, all subsequent
20 replacements, have been significantly younger and less experienced than her.

21     23.    On or about December, 15, 2019, Plaintiff's doctor released Plaintiff back
22 to work. Plaintiff submitted requisite paperwork and communicated with HR
23 representative, Scott Allen. However, Defendant refused to put her into the schedule.
24 Plaintiff is informed and believes that Defendant terminated her employment on or about
25 December 15, 2019.

26     24.    Prior to filing this lawsuit, Plaintiff exhausted her administrative remedies
27 by timely filing a complaint with the Department of Fair Employment and Housing
28 (DFEH) and receiving a right-to-sue notice dated March 30, 2020.

Smaili & Associates, P.C.

# FIRST CAUSE OF ACTION

## DISCRIMINATION IN VIOLATION OF

## CALIFORNIA GOVERNMENT CODE § 12940 *et seq.*

### (Against All Defendants)

25.     Plaintiff refers to all allegations contained in paragraphs 1-24, inclusive and by such reference incorporates the same herein as though fully realleged in detail.

26.     California law, and particularly the Fair Employment and Housing Act ("FEHA"), codified at *Government Code* §12900 *et seq.*, prohibits discrimination against persons with a physical condition or disability, which is broadly defined therein, and which includes even the perception that a person has a medical or mental condition and/or physical condition or disability.  FEHA further prohibits discrimination based upon, *inter alia*, age, race, gender, sexual orientation, national origin, pregnancy and other immutable characteristics.

27.     Plaintiff has a disability as alleged above.

28.     Defendant was aware of Plaintiff's on the job injury and her resulting disability, as herein alleged, because Plaintiff specifically reported said disability directly to Defendant via Defendant's supervisors and managing agents.

29.     At all times herein alleged, Plaintiff was qualified for the position of employment that she held with Defendant and was able to perform the essential functions of that job.

30.     Plaintiff is informed and believes and thereon alleges that as a direct and proximate result of Plaintiff's disability, Defendant refused to engage Plaintiff in an interactive process, refused to communicate with Plaintiff, refused to accommodate Plaintiff 's medical restrictions, denied Plaintiff opportunity for advancement, promotion and the ability to earn a living, and terminated Plaintiff.

31.     Defendant's discriminatory action against Plaintiff, as alleged above, constitutes unlawful discrimination in employment on account of Plaintiff's disability in violation of FEHA, and particularly *Gov't Code* §12940(a).

Smith & Associates, P.C.

32.     As a direct, foreseeable, and proximate result of Defendant's discriminatory action against Plaintiff, as herein alleged, Plaintiff has been harmed in that Plaintiff has suffered the loss of wages, salary, benefits, the potential for advancement, and additional amounts of money Plaintiff would have received but for Defendants' discriminatory conduct, all in an amount subject to proof at the time of trial, but believed to be no less than three hundred thousand dollars.

33.     As a direct, foreseeable, and proximate result of the wrongful conduct of Defendant as herein alleged, Plaintiff has also suffered and continues to suffer emotional distress and anguish, humiliation, anxiety, and medical expenses all to Plaintiff damage in an amount subject to proof at trial.

34.     Plaintiff is informed and believes and thereon alleges that the above-alleged actions of Defendant were the result and consequence of Defendant's failure to supervise, control, direct, manage, and counsel those agents throughout Plaintiff 's employment and that Defendant ratified, condoned and/or encouraged the discriminatory behavior and enabled agents to believe that their conduct was appropriate.

35.     Defendant, and each of them, failed to offer counseling or comfort to Plaintiff and sent the unmistakable message that such conduct is appropriate in the workplace.

36.     Plaintiff is informed and believes and thereon alleges that Defendant has a systemic and wide-spread policy of discriminating against and retaliating against employees with disabilities. By failing to stop the discrimination, harassment and retaliation, Defendant ratified the discriminatory and retaliatory conduct which, in turn, directly caused a vicious cycle of wrongful conduct with impunity.

37.     Plaintiff is informed and believes and thereon alleges that Plaintiff's on the job injury and resulting disability was a motivating factor in the decision of Defendant to discriminate against her.

38.     The outrageous conduct of Defendant, and each of them, as alleged herein, was done with oppression and malice by Defendant and its supervisors and managers,

1   along with conscious disregard of Plaintiff's rights, and were ratified by those other

2   individuals who were managing agents of Defendant.

3        39.     The conduct of Defendant as alleged hereinabove was done with malice,

4   fraud or oppression, and in reckless disregard of Plaintiff's rights under California law.

5   As such, Plaintiff is entitled to punitive damages within the meaning of *Civ. Code* §3294.

6        40.     Plaintiff also continues to incur attorneys' fees and legal expenses in an

7   amount according to proof at the time of trial which fees and expenses are recoverable

8   pursuant to *Gov't Code* §12900 *et seq.*

9                      ## SECOND CAUSE OF ACTION

10                          ### AGE DISCRIMINATION

11                  ### IN VIOLATION OF GOV. CODE § 12940 *et seq.*

12                          **(Against all Defendants)**

13       41.     Plaintiff refers to all allegations contained in paragraphs 1-40, inclusive and

14  by such reference incorporates the same herein as though fully realleged in detail.

15       42.     At all times herein mentioned, Gov't Code §§12940(a) and 12941 were in

16  full force and effect and were binding on Defendant.  These sections require Defendant to

17  refrain from discriminating against any employee over the age of 40 because of their age.

18       43.     At the time of Plaintiff's termination, and at all times that Defendant was

19  discriminating against Plaintiff as alleged herein, Plaintiff was over the age of 40.

20  Plaintiff is informed and believes and thereon alleges that after years of wholly

21  satisfactory, competent and diligent performance to the profit of Defendants, that

22  Plaintiff's age, being over 40, was a motivating factor in Defendants' decision to

23  terminate Plaintiff's employment.  Said conduct by Defendants was intentional and

24  willful.

25       44.     Plaintiff is informed and believes and thereon alleges that Plaintiff was

26  replaced with an employee below the age of 40.

27

28

---

COMPLAINT

9

45.   Defendant was aware of Plaintiff's age, as herein alleged, because Plaintiff maintained Plaintiff's personnel file which specifically contained the date of Plaintiff's birth and her corresponding age.

46.   At all times herein alleged, Plaintiff was qualified for the position of employment that she held with Defendant and was able to perform the essential functions of that job.

47.   Plaintiff is informed and believes and thereon alleges that as a direct and proximate result of Plaintiff's age, Defendant decided to terminate Plaintiff's employment, and in fact, did terminate Plaintiff's employment.

48.   Defendants' discriminatory action against Plaintiff, as alleged above, constitutes unlawful discrimination in employment on account of Plaintiff's age in violation of FEHA, and particularly Gov't Code §12940.

49.   As a direct, foreseeable, and proximate result of Defendants' discriminatory action against Plaintiff, as herein alleged, Plaintiff has been harmed in that Plaintiff has suffered the loss of wages, salary, benefits, the potential for advancement, and additional amounts of money Plaintiff would have received but for Defendant's discriminatory conduct, all in an amount subject to proof at the time of trial.

50.   As a direct, foreseeable, and proximate result of the wrongful conduct of Defendant as herein alleged, Plaintiff has also suffered and continues to suffer emotional distress and anguish, humiliation, anxiety, and medical expenses all to her damage in an amount subject to proof at trial.

51.   Plaintiff is informed and believes and thereon alleges that the above-alleged actions of Defendant were the result and consequence of Defendant's failure to supervise, control, direct, manage, and counsel those agents throughout Plaintiff's employment and that Defendant ratified, condoned and/or encouraged the discriminatory behavior and enabled agents to believe that their conduct was appropriate.

1    52.    Defendants, and each of them, failed to offer counseling or comfort to
2 Plaintiff and sent the unmistakable message that such conduct is appropriate in the
3 workplace.

4    53.    Plaintiff is informed and believes and thereon alleges that Defendant has a
5 systemic and wide-spread policy of discriminating against and retaliating against
6 employees over the age of 40.  By failing to stop the discrimination, harassment and
7 retaliation, Defendant ratified the discriminatory and retaliatory conduct which, in turn,
8 directly caused a vicious cycle of wrongful conduct with impunity.

9    54.    The outrageous conduct of Defendant, and each of them was done with
10 oppression and malice by Defendant and its supervisors and managers, along with
11 conscious disregard of Plaintiff's rights, and were ratified by those other individuals who
12 were managing agents of Defendant.

13    55.    Plaintiff also continues to incur attorneys' fees and legal expenses in an
14 amount according to proof at the time of trial which fees and expenses are recoverable
15 pursuant to Gov't Code §12900 et seq.

16                              **THIRD CAUSE OF ACTION**
17            **FAILURE TO PREVENT DISCRIMINATION IN VIOLATION**
18                  **OF CALIFORNIA GOVERNMENT CODE § 12940(k)**
19                              **(Against All Defendants)**

20    56.    Plaintiff refers to all allegations contained in paragraphs 1-55, inclusive and
21 by such reference incorporates the same herein as though fully realleged in detail.

22 During the course of employment, Defendant, and each of them, failed to prevent or
23 remedy discrimination, retaliation and harassment toward Plaintiff on the basis of her
24 perceived disability and participation in protected conduct in violation of *Government*
25 *Code* §12940(k).

26    57.    As a direct result of the wrongful conduct of Defendant, Plaintiff suffered,
27 and continues to suffer, substantial losses in earnings and other benefits in an amount
28 according to proof at the time trial, including special and general damages.

58.     As a direct, foreseeable, and proximate result of the wrongful conduct of Defendant, Plaintiff has suffered and continues to suffer emotional distress and anguish, humiliation, substantial losses in salary, bonuses, job benefits, and other employment benefits which her would have received all to her damage in a sum within the jurisdiction of the Court to be ascertained according to proof.

59.     Plaintiff is informed and believes and thereon alleges that the outrageous conduct of Defendant, and each of them, as alleged herein, was done with oppression and malice by Plaintiff's supervisors and managers, along with conscious disregard of Plaintiff's rights, and were ratified by those other individuals who were managing agents of Defendant.

60.     As a proximate result of the wrongful conduct of Defendant, and each of them, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish according to proof at the time of trial.

61.     These unlawful acts were further encouraged by Defendant and done with a conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring Plaintiff.    The conduct of Defendant alleged hereinabove was done with malice, fraud or oppression, and in reckless disregard of Plaintiff's rights under California law.

61.     As such, Plaintiff is entitled to punitive damages within the meaning of *Civ. Code* §3294.

62.     Plaintiff has also incurred and continues to incur attorneys' fees and legal expenses in an amount according to proof at the time of trial.

## FOURTH CAUSE OF ACTION

## FAILURE TO ACCOMMODATE DISABILITY IN VIOLATION OF

## CALIFORNIA GOVERNMENT CODE § 12940(m)

### (Against All Defendants)

63.     Plaintiff refers to all allegations contained in paragraphs 1-62, inclusive and by such reference incorporates the same herein as though fully realleged in detail.

64.     Plaintiff has a disability as alleged above.

COMPLAINT

12

65.   Defendant was aware of Plaintiff's disability, as alleged above and herein.

66.   Defendant failed and refused to accommodate Plaintiff's needs, and, failed and refused to engage in an interactive process with Plaintiff, and, failed to address Plaintiff's needs in light of her disabilities.

67.   At all times herein alleged, Plaintiff was qualified for the position of employment that she held with Defendant and was able to perform the essential functions of that job if such reasonable accommodation had been made by Defendant. At no time would the performance of the functions of the employment position, with a reasonable accommodation for Plaintiff's disabilities, have been a danger to Plaintiff's or any other person's health or safety, nor would it have created an undue hardship to the operation of Defendant's business.

68.   Defendant's failure to accommodate Plaintiff, as alleged above, constitutes unlawful conduct in employment in violation of FEHA, and particularly *Gov't Code* §12940.

69.   As a direct, foreseeable, and proximate result of Defendant's wrongful conduct against Plaintiff, as herein alleged, Plaintiff has been harmed in that Plaintiff has suffered the loss of wages, salary, benefits, the potential for advancement, and additional amounts of money Plaintiff would have received but for Defendant's wrongful conduct, in an amount of at least three hundred thousand dollars, all subject to proof at the time of trial.

70.   As a direct, foreseeable, and proximate result of the wrongful conduct of Defendant as herein alleged, Plaintiff has also suffered and continues to suffer emotional distress and anguish, humiliation, anxiety, and medical expenses all to her damage in an amount subject to proof at trial.

71.   Plaintiff is informed and believes and thereon alleges that the above-alleged actions of Defendant were the result and consequence of Defendant's failure to supervise, control, direct, manage, and counsel those agents throughout Plaintiff's employment and

Small & Associates, A.C.

1    that Defendant ratified, condoned and/or encouraged the discriminatory behavior and

2    enabled agents to believe that their conduct was appropriate.

3       72.    Defendant, and each of them, failed to offer counseling or comfort to

4    Plaintiff and sent the unmistakable message that such conduct is appropriate in the

5    workplace.

6       73.    Plaintiff is informed and believes and thereon alleges that Defendant has a

7    systemic and wide-spread policy of discriminating against and retaliating against

8    employees with disabilities. By failing to stop the discrimination, harassment and

9    retaliation, Defendant ratified the discriminatory and retaliatory conduct which, in turn,

10    directly caused a vicious cycle of wrongful conduct with impunity.

11       74.    Plaintiff is informed and believes and thereon alleges that Defendant's

12    desire to avoid accommodating Plaintiff was a motivating factor in the decision of

13    Defendant to discriminate against her.

14       75.    The outrageous conduct of Defendant, and each of them, as alleged herein,

15    was done with oppression and malice by Defendant and its supervisors and managers,

16    along with conscious disregard of Plaintiff's rights, and were ratified by those other

17    individuals who were managing agents of Defendant.

18       76.    The conduct of Defendant as alleged hereinabove was done with malice,

19    fraud, or oppression, and in reckless disregard of Plaintiff's rights under California law.

20    As such, Plaintiff is entitled to punitive damages within the meaning of *Civ. Code* §3294.

21       77.    Plaintiff also continues to incur attorneys' fees and legal expenses in an

22    amount according to proof at the time of trial which fees and expenses are recoverable

23    pursuant to *Gov't Code* §12900 *et seq.*

24    ///

25    ///

26    ///

27    ///

28    ///

COMPLAINT

1

**FIFTH CAUSE OF ACTION**

2

**FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN**

3

**VIOLATION OF CALIFORNIA GOVERNMENT CODE § 12940(n)**

4

**(Against All Defendants)**

5       78.     Plaintiff refers to all allegations contained in paragraphs 1-77, inclusive and

6   by such reference incorporates the same herein as though fully realleged in detail.

7       79.     Plaintiff has a disability as alleged above.

8       80.     Defendant was aware of Plaintiff's disability, as alleged above and herein.

9       81.     Defendant failed and refused to engage Plaintiff in an interactive process

10   designed to unite Plaintiff with her job.

11       82.     At all times herein alleged, Plaintiff was qualified for the position of

12   employment that she held with Defendant and was able to perform the essential functions

13   of that job if such reasonable accommodation had been made by Defendant.  At no time

14   would the performance of the functions of the employment position, with a reasonable

15   accommodation for Plaintiff's disabilities, have been a danger to Plaintiff's or any other

16   person's health or safety, nor would it have created an undue hardship to the operation of

17   Defendant's business.

18       83.     Defendant's failure to engage with Plaintiff in an interactive process, as

19   alleged above, constitutes unlawful conduct in employment in violation of FEHA, and

20   particularly *Gov't Code* §12940.

21       84.     As a direct, foreseeable, and proximate result of Defendant's wrongful

22   conduct against Plaintiff, as herein alleged, Plaintiff has been harmed in that Plaintiff has

23   suffered the loss of wages, salary, benefits, the potential for advancement, and additional

24   amounts of money Plaintiff would have received but for Defendant's wrongful conduct,

25   all in an amount no less than three hundred thousand dollars, subject to proof at the time

26   of trial.

27       85.     As a direct, foreseeable, and proximate result of the wrongful conduct of

28   Defendant as herein alleged, Plaintiff has also suffered and continues to suffer emotional

1   distress and anguish, humiliation, anxiety, and medical expenses all to her damage in an
2   amount subject to proof at trial.

3       86.    Plaintiff is informed and believes and thereon alleges that the above-alleged
4   actions of Defendant were the result and consequence of Defendant's failure to supervise,
5   control, direct, manage, and counsel those agents throughout Plaintiff's employment and
6   that Defendant ratified, condoned and/or encouraged the discriminatory behavior and
7   enabled agents to believe that their conduct was appropriate.

8       87.    Defendant, and each of them, failed to offer counseling or comfort to
9   Plaintiff and sent the unmistakable message that such conduct is appropriate in the
10  workplace.

11      88.    Plaintiff is informed and believes and thereon alleges that Defendant has a
12  systemic and wide-spread policy of discriminating against and retaliating against
13  employees with disabilities.   By failing to stop the discrimination, harassment and
14  retaliation, Defendant ratified the discriminatory and retaliatory conduct which, in turn,
15  directly caused a vicious cycle of wrongful conduct with impunity.

16      89.    Plaintiff is informed and believes and thereon alleges that Defendant's
17  desire to avoid accommodating Plaintiff was a motivating factor in the decision of
18  Defendant to discriminate against her and ultimately terminate her.

19      90.    The outrageous conduct of Defendant, and each of them, as alleged herein,
20  was done with oppression and malice by Defendant and its supervisors and managers,
21  along with conscious disregard of Plaintiff's rights, and were ratified by those other
22  individuals who were managing agents of Defendant.

23      91.    The conduct of Defendant as alleged hereinabove was done with malice,
24  fraud or oppression, and in reckless disregard of Plaintiff's rights under California law.
25  As such, Plaintiff is entitled to punitive damages within the meaning of *Civ. Code* §3294.

26      92.    Plaintiff also continues to incur attorneys' fees and legal expenses in an
27  amount according to proof at the time of trial which fees and expenses are recoverable
28  pursuant to *Gov't Code* §12900 *et seq.*

## SIXTH CAUSE OF ACTION
### RETALIATION IN VIOLATION OF
### CALIFORNIA GOVERNMENT CODE §12940(h)
### (Against All Defendants)

93.   Plaintiff refers to all allegations contained in paragraphs 1-92, inclusive, and by such reference incorporates the same herein as though fully realleged in detail.

94.   At all times herein mentioned, FEHA, Government Code §12940(h), was in full force and effect and was binding on Defendant.  This statute requires Defendant to refrain from retaliating against Plaintiff.

95.   Plaintiff is informed and believes and thereon alleges that as a consequence of lodging complaints with Defendants about the harassing and discriminatory acts being committed against Plaintiff, coupled with Plaintiff's disability sustained while on-the-job for which workers compensation coverage was required along with reasonable accommodation, Defendant took retaliatory action against Plaintiff by failing to conduct a good faith interactive process aimed at reuniting Plaintiff with Plaintiff job, failing to determine the essential functions of Plaintiff's job, mistreat Plaintiff, and deny Plaintiff advancement and promotion.

96.   Defendant unlawfully retaliated against Plaintiff after she engaged in protected activity after being injured on the job, such as without limitation, filing or intending to file for workers' compensation benefits due to safety concerns and requesting accommodation, and, lodging workplace complaints related to the harassment and discrimination that she was facing, and other complaints of a hostile and unsafe working environment.

97.   As a proximate result of Defendant's willful, knowing, and intentional conduct against Plaintiff, she has sustained and continues to sustain substantial losses in Plaintiff earnings and other employment benefits and continues to suffer humiliation, emotional distress, and mental and physical pain an and anguish, and sleep dysfunction, all to Plaintiff damage in a sum according to proof.

98.     These unlawful acts were further encouraged by Defendant and done with a conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring Plaintiff.  In light of Defendant's willful, knowing, and intentional discrimination against Plaintiff which culminated in Plaintiff discharge, Plaintiff seeks an award of punitive and exemplary damages in an amount according to proof.

99.     Plaintiff has incurred and continues to incur legal expenses and attorney fees.  Plaintiff is presently unaware of the precise amount of said expenses and fees and prays leave of court to amend this Complaint when said amounts are more fully known.

## SEVENTH CAUSE OF ACTION

### WRONGFUL TERMINATION

#### (Against all Defendants)

100.     Plaintiff refers to all allegations contained in paragraphs 1-99, inclusive and by such reference incorporates the same herein as though fully realleged in detail.

101.     Plaintiff informed Defendants of her age, work related injuries, and resulting pain. Further, Defendants were aware of Plaintiff's age, work related injuries, and resulting pain.

102.     *Gov't Code* §12940 et seq., prohibits forms of discrimination against protected classes of employees.

103.     Defendant wrongfully terminated Plaintiff in violation of a substantial and fundamental public policy in that a determining and motivating factor in Defendants' decision to terminate Plaintiff was the desire to retaliate against her because of: (i) her age, (ii) work related injuries, (iii) disability, (iv) complaints about her work environment, and (v) filing/perceived filing for workers compensation case.

104.     Plaintiff is informed and believes and thereon alleges that these factors made up Defendants decision to terminate Plaintiff and/or played an important and integral role in said decision.  Such discrimination was in violation of the public policy of the State of California and resulted in damage and injury to Plaintiff as alleged herein.

Smaili & Associates, P.C.

1    105.   As a proximate result of Defendants willful, knowing, and intentional

2    discrimination and retaliation against Plaintiff, she has sustained and continues to sustain

3    substantial losses in Plaintiff earnings and other employment benefits and continues to

4    suffer humiliation, emotional distress, and mental and physical pain an and anguish, and

5    loss of sleep/sleep dysfunction, all to her damage in a sum according to proof.

6    106.   In light of Defendants willful, knowing, and intentional discrimination

7    against Plaintiff which resulted in her wrongful termination, Plaintiff seeks an award of

8    punitive and exemplary damages in an amount according to proof.

9    ## EIGHTH CAUSE OF ACTION

10   ## VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200 *et seq.*

11   ### (Against All Defendants)

12   107.   Plaintiff refers to all allegations contained in paragraphs 1-106 inclusive,

13   and by such reference incorporates the same herein as though fully realleged in detail.

14   108.   Defendant, and each of them, have engaged in unfair and unlawful

15   business practices as set forth above.

16   109.   Business & Professions Code § 17200 *et seq.* prohibits unlawful and unfair

17   business practices.

18   110.   By engaging in the above-described acts and practices, Defendant, and each

19   of them, have committed one or more acts of unfair, unlawful or fraudulent competition

20   within the meaning of Business & Professions Code §17200 *et seq.*

21   111.   Defendant, and each of them, have violated statutes and public policies.

22   Through the conduct alleged in this Complaint, Defendant, and each of them, have acted

23   contrary to public policies and have engaged in other unlawful and unfair business

24   practices in violation of Business & Professions Code § 17200 *et seq.*, depriving Plaintiff

25   and all interested persons of rights, benefits, and privileges guaranteed to all employees

26   under law.

27

28

112.    As a direct and proximate result of the aforementioned acts and practices, Plaintiff has suffered a loss of money and property in the form of wages and benefits that she would have received as an employee of Defendant, and each of them.

113.    Plaintiff seeks an order of this Court awarding restitution, injunctive relief and all other relief allowed under Business & Professions Code §17200 *et seq.*, plus interest and costs.

Smaili & Associates, P.C.

COMPLAINT

20

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1. For all actual, consequential, and incidental damages, including but not limited to loss of earnings and employee benefits, according to proof, but no less than three hundred thousand dollars;

2. For restitution for unfair competition pursuant to Business & Professions Code §17200 *et seq.*, resulting from Defendants' unlawful business acts and practices, according to proof;

3. For an order enjoining Defendants and their agents, servants, and employees, and all persons acting under, in concert with, or for them, from acting in derogation of any rights or duties alleged in this Complaint;

4. For pre-judgment and post-judgment interest, according to proof;

5. For punitive and exemplary damages, according to proof;

6. For attorneys' fees, according to proof and statute;

7. For costs of suit incurred herein;

8. For such other relief and the Court may deem just and proper.

Dated: October 12, 2020                    **SMAILI & ASSOCIATES, P.C.**


By: */s/ Jihad M. Smaili*
Jihad M. Smaili, Esq.
Attorney for Plaintiff

COMPLAINT

21

1

## DEMAND FOR JURY TRIAL

2     Plaintiff hereby requests a trial by jury.

3

4     Dated: October 12, 2020                    **SMAILI & ASSOCIATES, P.C.**

5

6                                        By:  _/s/ Jihad M. Smaili_

7                                              Jihad M. Smaili, Esq.
                                               Attorney for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

**Exhibit C**

1    SEYFARTH SHAW LLP
     Michael J. Burns (SBN 172614)
2    mburns@seyfarth.com
     560 Mission Street, 31st Floor
3    San Francisco, California 94105
     Telephone:    (415) 397-2823
4    Facsimile:    (415) 397-8549

5    SEYFARTH SHAW LLP
     Michelle Zakarian (SBN 327628)
6    mzakarian@seyfarth.com
     2029 Century Park East, Suite 3500
7    Los Angeles, California 90017-3021
     Telephone: (310) 277-7200
8    Facsimile:  (310) 201-5219

9    Attorneys for Defendant
     ACADIA HEALTHCARE COMPANY, INC. d/b/a
10   MISSION TREATMENT SERVICES, INC.

11

12                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                              COUNTY OF SAN DIEGO

14

15   KATHERINE WILLIAMS, an individual,        Case No. 37-2020-00038158-CU-WT-NC

16              Plaintiff,                      HON. JACQUELINE M. STERN

17        v.                                   **DEFENDANT'S ANSWER TO
                                               PLAINTIFF'S UNVERIFIED
18   ACADIA HEALTHCARE COMPANY, INC.           COMPLAINT**
     d/b/a MISSION TREATMENT SERVICES, INC.,
19   a corporate entity form unknown; and DOES 1-50,
     inclusive,                                Complaint Filed:   October 16, 2020
20                                             Trial Date:        None set
                Defendants.
21

22

23

24

25

26

27

28

─────────────────────────────────────────────────────────────
                DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT
72044466v.2

Acadia Healthcare Company Inc. d/b/a Mission Treatment Services, Inc. (hereinafter "ACADIA" or "DEFENDANT")[1] hereby answers the unverified Complaint for Damages of Katherine Williams ("Plaintiff"), as follows:

## GENERAL DENIAL

Pursuant to California Code of Civil Procedure section 431.30(d), Defendant generally denies each and every allegation in the Complaint.  In further answer to the Complaint, Defendant denies that Plaintiff has suffered any injury, damage or loss in any nature or manner whatsoever by reason of any act or omission of it.

## SEPARATE DEFENSES

## FIRST SEPARATE DEFENSE

(Failure to State a Cause of Action – All Causes of Action)

Plaintiff's Complaint, and each purported cause of action therein, fails to state facts sufficient to constitute a cause of action or state a claim upon which relief may be granted against Defendant.

## SECOND SEPARATE DEFENSE

(No Injury – All Causes of Action)

Plaintiff sustained no injuries, damages or loss by reason of any act of Defendant.

## THIRD SEPARATE DEFENSE

(Statute of Limitations – All Causes of Action)

The Complaint, and each and every cause of action therein, is barred in whole or in part by the applicable statutes of limitations, including, but not limited to those contained in the California Fair Employment and Housing Act, including Government Code Sections 12960(d) and 12965(b), as well as those contained in California Code of Civil Procedure sections 338, 343 and 335.1.

## FOURTH SEPARATE DEFENSE

(Failure to Exhaust Administrative Remedies – First through Sixth Causes of Action)

Defendant is informed and believes that Plaintiff's first through sixth claims are barred for failure to exhaust her administrative remedies under applicable California law.

---

[1] /   Mission Treatment Services, Inc. is a direct wholly-owned subsidiary of CRC Health, LLC.  It is an indirect wholly-owned subsidiary of Acadia Healthcare Company, Inc.

DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

72044466v.2

## FIFTH SEPARATE DEFENSE

(Consent – All Causes of Action)

Assuming that Defendant engaged in the conduct attributed to it, which it denies, Plaintiff consented to such conduct.

## SIXTH SEPARATE DEFENSE

(Estoppel – All Causes of Action)

Defendant is informed and believes that Plaintiff is equitably estopped from asserting her claims for relief because Plaintiff has by her own conduct, intentionally induced, caused, and/or contributed to the alleged conduct of Defendant of which she now complains.

## SEVENTH SEPARATE DEFENSE

(Laches – All Causes of Action)

Plaintiff's claims are barred in whole or in part by the equitable doctrine of laches.

## EIGHTH SEPARATE DEFENSE

(Privilege/Justification – All Causes of Action)

Assuming *arguendo* that any of the actions alleged in the Complaint were taken by Defendant, such actions were at all times privileged or justified.

## NINTH SEPARATE DEFENSE

(Ratification – All Causes of Action)

Plaintiff's claims are barred in whole or in part because any conduct by Defendant was ratified by Plaintiff.

## TENTH SEPARATE DEFENSE

(Legitimate Non-Discriminatory and/or Non-Retaliatory Factors – All Causes of Action)

Plaintiff may not obtain the relief requested in her Complaint because any adverse employment action(s) taken against her were based on legitimate non-discriminatory, non-retaliatory factors and not Plaintiff's disability, age, and/or any other protected characteristic and/or activity.

**ELEVENTH SEPARATE DEFENSE**

(Legitimate Business Justification/Mixed Motive - All Causes of Action)

Any recovery on Plaintiff's Complaint, or any purported cause of action alleged therein, is barred because assuming *arguendo* that discriminatory and/or retaliatory reasons had been a motivating factor in any decisions toward Plaintiff, which Defendant expressly denies, Defendant would have made the same decisions toward Plaintiff in any case for legitimate, non-discriminatory and/or retaliatory business reasons.

**TWELFTH SEPARATE DEFENSE**

(Unclean Hands – All Causes of Action)

Plaintiff's claims are barred to the extent she has unclean hands.

**THIRTEENTH SEPARATE DEFENSE**

(Waiver – All Causes of Action)

Plaintiff's claims are barred in whole or in part by the doctrine of waiver.

**FOURTEENTH SEPARATE DEFENSE**

(After-Acquired Evidence – All Causes of Action)

Plaintiff's claims are barred to the extent that Plaintiff engaged in misconduct which would have justified any adverse action by Defendant even if Defendant was unaware of the conduct.

**FIFTEENTH SEPARATE DEFENSE**

(Failure to Mitigate Damages – All Causes of Action)

Plaintiff is not entitled to back pay and/or other damages, to the extent that she failed to seek and obtain other employment and otherwise failed to mitigate her alleged loss of wages or other damages.

**SIXTEENTH SEPARATE DEFENSE**

(Management Discretion – All Causes of Action)

Any and all conduct of which Plaintiff complains or which was attributed to Defendant was a just and proper exercise of management discretion on the part of Defendant undertaken for a fair and honest reason other than Plaintiff's purported disability and/or any other protected characteristic.

DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

72044466v.2

### SEVENTEENTH SEPARATE DEFENSE

(Reasonable Investigation – All Causes of Action)

Any statements or actions alleged by Plaintiff to have been made or done by Defendant, if made or done, were made or done after investigation and on the basis of reasonable grounds for belief in their truth and correctness, with an honest belief in their truth and correctness, and in good faith and without malice.

### EIGHTEENTH SEPARATE DEFENSE

(Good Faith – All Causes of Action)

Assuming, *arguendo*, that any of the actions alleged in the Complaint were taken by Defendant, such actions were taken in good faith and were a lawful exercise of sound discretion of Defendant's legal rights, and were based on a rational, reasonable consideration of the facts.

### NINETEENTH SEPARATE DEFENSE

(Action In Accordance With Applicable Law and Employer Policies –  All Causes of Action)

If Defendant engaged in the acts complained of in Plaintiff's Complaint, which it denies, then such acts were privileged, justified and/or taken in accordance with applicable law and/or Defendant's policies and procedures.

### TWENTIETH SEPARATE DEFENSE

(Failure To Take Advantage of Defendant's Safeguards Against Discrimination, Harassment And/Or Retaliation - All Causes of Action)

Defendant exercised reasonable care to avoid discrimination, harassment and/or retaliation and to eliminate it when it might occur, and Plaintiff failed to act with like reasonable care to take advantage of the safeguards to otherwise prevent the harm that could have been avoided.

### TWENTY-FIRST SEPARATE DEFENSE

(Failure to Exhaust Internal Remedies - All Causes of Action)

Defendant exercised reasonable care to prevent and/or correct any unlawfully discriminatory and/or retaliatory workplace conduct allegedly experienced by Plaintiff.  Plaintiff's claims are barred, or alternatively her relief is limited, to the extent Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by Defendant or to avoid harm otherwise.

5

DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

### TWENTY-SECOND SEPARATE DEFENSE

#### (Any Actions Would Have Been Taken In Any Event – All Causes of Action)

The damages Plaintiff seeks are barred in whole or in part because any employment actions taken by Defendant against Plaintiff would have been taken in any event regardless of her purported disability and/or any other protected characteristic.

### TWENTY-THIRD SEPARATE DEFENSE

#### (Managerial Immunity - All Cause of Action)

The claims alleged against Defendant are barred under the doctrine of managerial immunity.

### TWENTY-FOURTH SEPARATE DEFENSE

#### (Outside the Course and Scope of Employment - All Causes of Action)

The Complaint, and each and every cause of action therein, is barred to the extent the alleged actions of Defendant's agents, employees, and representatives, if they occurred, were outside the course and scope of their employment.

### TWENTY-FIFTH SEPARATE DEFENSE

#### (At-Will Employment – All Causes of Action)

Plaintiff was at all relevant times an at-will employee.

### TWENTY-SIXTH SEPARATE DEFENSE

#### (Prompt Remedial Action – All Causes of Action)

To the extent that Plaintiff complained of any unlawful conduct, Defendant took prompt and appropriate remedial action to investigate and address her complaint(s) and took appropriate corrective action.

### TWENTY-SEVENTH SEPARATE DEFENSE

#### (Worker's Compensation Exclusivity – All Causes of Action)

Any claims by Plaintiff based in whole or in part upon any alleged physical or emotional injury or distress are barred because Plaintiff's sole and exclusive remedy, if any, for such injuries, is governed by the California Workers' Compensation Act pursuant to California Labor Code sections 3600 *et seq.*

DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

72044466v.2

## TWENTY-EIGHTH SEPARATE DEFENSE

### (Offset - All Causes of Action)

Any recovery on Plaintiff's Complaint, or any purported cause of action alleged therein, is barred in whole or in part because Defendant is entitled to an offset for any monies Plaintiff received from any source after Plaintiff ceased to be employed under the doctrine prohibiting double recovery set forth under applicable law.

## TWENTY-NINTH SEPARATE DEFENSE

### (Not Disabled – First, Third though Eighth Causes of Action)

Plaintiff is not a qualified individual with a disability.

## THIRTIETH SEPARATE DEFENSE

### (Essential Functions – First, Third though Eighth Causes of Action)

Plaintiff's Complaint is barred to the extent Plaintiff was unable to carry out the essential functions of her employment, or any other available employment position for which she was qualified, with or without reasonable accommodation.

## THIRTY-FIRST SEPARATE DEFENSE

### (Undue Hardship - First, Third though Eighth Causes Action)

To the extent that Plaintiff requested accommodations that were not reasonable or would cause Defendant undue hardship, and thus were not required, Plaintiff's claims fail.

## THIRTY-SECOND SEPARATE DEFENSE

### (Failure to Engage in an Interactive Process - First, Third though Eighth Causes of Action)

Plaintiff's claims are barred because she failed to participate in good faith, or at all, in an interactive process with Defendant regarding her purported need for a reasonable accommodation for her alleged disability.

## THIRTY-THIRD SEPARATE DEFENSE

### (No Causal Connection - All Causes of Action)

Plaintiff's retaliation claims fail as she cannot establish a causal connection between any purported protected activity and any adverse action(s) allegedly taken against her.

DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

72044466v.2

### THIRTY-FOURTH SEPARATE DEFENSE

#### (Failure to State a Claim for Relief for Punitive Damages – All Causes of Action)

Plaintiff is not entitled to recover any punitive, double or exemplary damages against Defendant and any allegations with respect thereto should be stricken because Plaintiff has failed to plead and cannot prove facts sufficient to support allegations of oppression, fraud and/or malice pursuant to California Civil Code § 3294(a).

### THIRTY-FIFTH SEPARATE DEFENSE

#### (No Act by A Managing Agent – All Causes of Action)

Plaintiff's prayer for punitive damages is barred to the extent that she has not identified any unlawful conduct by an officer, director or managing agent of Defendant.

### THIRTY-SIXTH SEPARATE DEFENSE

#### (No Extreme and/or Outrageous Conduct - All Causes of Action/Claim for Punitive Damages)

Defendant did not engage in any extreme and/or outrageous conduct with respect to Plaintiff.

### THIRTY-SEVENTH SEPARATE DEFENSE

#### (Excessive Fines/Due Process - All Causes of Action)

To the extent that Plaintiff seeks punitive damages, exemplary damages, or emotional distress damages in the Complaint, she violates the rights of Defendant to protection from "excessive fines" as provided in the Eighth Amendment to the United States Constitution and in Article I, Section 17 of the Constitution of the State of California and the rights of Defendant to procedural and substantive due process under the Fifth and Fourteenth Amendments to the United States Constitution and under the Constitution of the State of California.

### THIRTY-EIGHTH SEPARATE DEFENSE

#### (No Attorneys' Fees – All Causes of Action)

Plaintiff knew or should have known that her claims are without any reasonable basis in law or equity and cannot be supported by good faith arguments for extension, modification, or reversal of existing law. There also is no contractual and/or statutory basis for Plaintiff's prayer for attorneys' fees. As a result of Plaintiff's filing of this lawsuit, Defendant has been required to obtain the services of the undersigned attorneys, and has incurred and will continue to incur substantial costs and attorneys' fees

DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

72044466v.2

in defense of this frivolous case, and Defendant is, therefore, entitled to recover reasonable attorneys' fees, expenses, and costs incurred by and through this action in accordance with applicable California law.

### **RESERVATION OF RIGHTS**

Defendant reserves the right to assert additional affirmative and/or separate defenses should it become aware of additional defenses during the course of this litigation.

WHEREFORE, Defendant prays for judgment as follows:

1.     That Plaintiff take nothing by her Complaint, and that this Complaint be dismissed with prejudice;

2.     For costs of suit and attorneys' fees; and

3.     For such other further relief as this Court may deem just and proper.


DATED:  June 24, 2021                                Respectfully submitted,

SEYFARTH SHAW LLP

By: _____
       Michael J. Burns
       Michelle Zakarian

       Attorneys for Defendant
       ACADIA HEALTHCARE COMPANY, INC. d/b/a
       MISSION TREATMENT SERVICES, INC.

9

DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

72044466v.2

## **PROOF OF SERVICE**

STATE OF CALIFORNIA          )
                            )   ss
COUNTY OF LOS ANGELES        )

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 2029 Century Park East, Suite 3500, Los Angeles, California 90067-3021. On 24 June 2021, I served the within document(s):

DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

☐   I sent such document from facsimile machines (310) 201-5219 on 24 June 2021. I certify that said transmission was completed and that all pages were received and that a report was generated by said facsimile machine which confirms said transmission and receipt. I, thereafter, mailed a copy to the interested party(ies) in this action by placing a true copy thereof enclosed in sealed envelope(s) addressed to the parties listed below.

☒   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California, addressed as set forth below.

☐   by placing the document(s) listed above in a sealed envelope or package provided by an overnight delivery carrier with postage paid on account and deposited for collection with the overnight carrier at Los Angeles, California, addressed as set forth below.

☐   by transmitting the document(s) listed above, electronically, via the e-mail addresses set forth below.

Smaili & Associates, PC                T: 714-547-4700; F: 714-547-4710
Jihad M. Smaili, Esq.                  jihad@smaililaw.com
Civic Center Plaza Towers
600 W. Santa Ana Blvd., Suite 202      ***Attorneys for Plaintiff,***
Santa Ana, California 92701                    ***KATHERINE WILLIAMS***
Attorney for Plaintiff

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on  24 June 2021, at Los Angeles, California.

_____
Denise R. Wasko-Peña

---

DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

# NATIONWIDE LEGAL



**COURT INSTRUCTIONS**
**PHONE (213) 249-9999**
**FAX (213) 249-9990**

## LA168883

### 026 - SPECIAL E-FILING

| FIRM NAME: & ADDRESS: | CUST #: LA239 | COURT : |
|---|---|---|
| SEYFARTH SHAW LLP / CC | **DUE DATE #: 6/24/2021** | SAN DIEGO/VISTA SUPERIOR COURT |

SEYFARTH SHAW LLP / CC
2029 Century Park East Suite 3500
Los Angeles CA, 90067

PHONE #:(310) 277-7200
FAX #: (310) 282-6945

CONTACT: Denise Wasko-Peña EMAIL: dwasko@seyfarth.com
BILLING / FILE #: 109151-000004
DATE GENERATED #: 6/24/2021

**CUST #: LA239**

**DUE DATE #: 6/24/2021**

SAN DIEGO/VISTA SUPERIOR COURT
325 S. MELROSE DR., VISTA, CA 92083
CASE# 37-2020-00038158-CU-WT-NC
CASE TITLE: KATHERINE WILLIAMS, VS. ACADIA
HEALTHCARE COMPANY, INC

DOCUMENTS:  DEFENDANT'S ANSWER
TOPLAINTIFF'S UNVERIFIEDCOMPLAINT

---

**STATUTE DATE: 6/24/2021**    **HEARING DATE:**    **DEPT.**    **NLS DATE REC'D: 6/24/2021**

☒ FILE / CONFORM
☐ FILE AND SERVE
☐ COURTESY COPY DELIVERY
☐ RECORD
☐ COURT RESEARCH
☐ CERTIFIED

☒ Advanced Fees $ .00
☐ Adv Fees approved by

SPECIAL INSTRUCTIONS

**E-FILE TODAY AND ADVANCE FIRST APPEARANCE FEE AND PDF CLIENT E-FILE
RECEIPT.**

**REPORTS / COMMENTS:**

☐ **FILING SUBMITTED TO COURT ON** _____

☐ **REJECTED** _____

☐ **FILING CONFIRMED/REJECTED - SPOKE TO:** _____    **DATE:** _____

LA168883/WORKC



My Profile  |  Help (/Help/Operations)  |  Logout (/)

(/Home)

Incoming (/Operations/Orders/OPSIncomingOrders)       Pending (/Operations/Orders/OPSPendingOrders)       Executed (/Operations/Orders/OPSExecutedOr

Closed (/Operations/Orders/OPSClosedOrders)       Cases (/Operations/Orders/OPSCases)       Place Order (/NewOrder/Index)

**Customer: LA239 - Seyfarth Shaw, LLP / CC**
(/Home)

Bulk Import (/Operations/OrderBulkUpload)

eFile and eService

| Order Info | Case Info | Case Participants | Documents | Court Fees | Order Details |

**Order Summary**

eFiling (Existing Case)

**County:** San Diego

**Thank you for your order(s)**

Your order number(s): **4682860**

For your reference, you will receive an Order Confirmation by email.

If you would like further assistance, please contact our Customer Support at (213) 249-9999 Monday - Friday between the hours of M-F 9 AM to 5:00 PM Pacific.

**Back to Manage Cases**

**Case Info:**
Case Number: 37-2020-00038158-CU-WT-N
Case Name: Williams vs. Acadia Healthcare
[IMAGED]
Category: Civil - Unlimited
Case Type: Wrongful Termination

**Case Participants:**
Acadia Healthcare Company Inc, Defendant
Williams, Katherine, Plaintiff
Burns, Michael J., Attorney

« Previous      Submit                        Save As Draft

**Document(s):**
Answer

**Estimated Court Fees:**
Total fees: $438.00

**Order Details:**
Notify:
  efile3 3
Special Instructions:

Terms of Service (/SecureContent?s3DocPath=https://legalconnect.s3.amazonaws.com/tenantlogos/legalconnect/docs/LegalConnectTermsOfService.pdf)  |  Support Policy (/SecureContent?s3DocPath=https://legalconnect.s3.amazonaws.com/tenantlogos/legalconnect/docs/LegalConnectSupportPolicy.pdf)

Powere
LEGAL

**Exhibit D**



**1 OF 1 RECORD(S)**

FOR INFORMATIONAL PURPOSES ONLY
Copyright 2021 LexisNexis
a division of Reed Elsevier Inc. All Rights Reserved.

Date:6/23/2021
Report processed by:
Seyfarth Shaw LLP

| **Full Name** | **Address** | **County** | **Phone** |
|---|---|---|---|
| WILLIAMS, KATHERINE MARY | ███████████ ESCONDIDO, CA 92026-2064 SAN DIEGO COUNTY | SAN DIEGO | (760) 294-0774 |

## ADDITIONAL PERSONAL INFORMATION

| **SSN** | **DOB** | **Gender** | **LexID(sm)** |
|---|---|---|---|
| ███-XXXX | █/1951 (Age:69) | | 001294765487 |

### Subject Summary

**Name Variations**
1:    WILLIAM, KATHERINE M
2:    WILLIAMS, KATHERINE
3:    WILLIAMS, KATHERINE M
4:    WILLIAMS, KATHERINE MARY
5:    WILLIAMS, KATHY

**SSNs Summary**

| No. | SSN | State Iss. | Date Iss. | Warnings |
|---|---|---|---|---|
| | | | **Most frequent SSN attributed to subject:** | |
| 1: | ███-XXXX | California | 1967-1968 | |

**DOBs**
Reported DOBs:
█1951

**Others Using SSN - 0 records found**
**Address Summary - 15 records found**

| No. | Address |
|---|---|
| 1: | ███████████ ESCONDIDO, CA 92026-2064 SAN DIEGO COUNTY |
| 2: | ███████████ SAN DIEGO, CA 92117-2536 SAN DIEGO COUNTY |
| 3: | ███████████ ESCONDIDO, CA 92025-3439 SAN DIEGO COUNTY |
| 4: | ███████████ |

**No.**    **Address**



ESCONDIDO, CA 92026-2020
SAN DIEGO COUNTY

5:

EL CAJON, CA 92019-2433
SAN DIEGO COUNTY

6:

SAN DIEGO, CA 92174-1233
SAN DIEGO COUNTY

7:

EL CAJON, CA 92019-2433
SAN DIEGO COUNTY

8:

SAN DIEGO, CA 92110-5838
SAN DIEGO COUNTY

9:

SAN ANTONIO, TX 78219-1914
BEXAR COUNTY

10:

SPRING VALLEY, CA 91977-1942
SAN DIEGO COUNTY

11:

SAN DIEGO, CA 92116-3565
SAN DIEGO COUNTY

12:

ESCONDIDO, CA 92026
SAN DIEGO COUNTY

13:

SANTA ANA, CA 92706-3921
ORANGE COUNTY

14:

ANAHEIM, CA 92804-5421
ORANGE COUNTY

15:

LOS ANGELES, CA 90012
LOS ANGELES COUNTY

**Address Details**
**1:**                                    **ESCONDIDO, CA 92026-2064**

| **Address** | **Dates** | **Phone** |
|---|---|---|
| | 10/2006 - 6/2021 | (760) 294-0774 |

ESCONDIDO, CA 92026-2064
SAN DIEGO COUNTY
**Census Data for Geographical Region**
Median Head of Household Age: 30
Median Income: $52,785
Median Home Value: $332,804
Median Education: 13 years

**Household Members**
None Listed
**Other Associates**
None Listed

**2:** ███████████ **SAN DIEGO, CA 92117-2536**

**Address**                                                    **Dates**              **Phone**
████████████                                                   12/2000 - 1/2013
SAN DIEGO, CA 92117-2536
SAN DIEGO COUNTY
**Census Data for Geographical Region**
Median Head of Household Age: 42
Median Income: $89,541
Median Home Value: $482,778
Median Education: 14 years
**Household Members**
None Listed
**Other Associates**
████████████

**3:** ███████████ **ESCONDIDO, CA 92025-3439**

**Address**                                                    **Dates**              **Phone**
████████████                                                   7/2006 - 2/2011
ESCONDIDO, CA 92025-3439
SAN DIEGO COUNTY
**Census Data for Geographical Region**
Median Head of Household Age: 25
Median Income: $30,446
Median Home Value: $481,818
Median Education: 10 years
**Household Members**
None Listed
**Other Associates**
None Listed

**4:** ███████████ **ESCONDIDO, CA 92026-2020**

**Address**                                                    **Dates**              **Phone**
████████████                                                   8/2006 - 8/2009
ESCONDIDO, CA 92026-2020
SAN DIEGO COUNTY
**Census Data for Geographical Region**
Median Head of Household Age: 41
Median Income: $74,174
Median Home Value: $450,556
Median Education: 14 years
**Household Members**
None Listed
**Other Associates**
None Listed

**5:** ███████████ **EL CAJON, CA 92019-2433**

**Address**                                                    **Dates**              **Phone**
████████████                                                   11/2002 - 1/2008
EL CAJON, CA 92019-2433
SAN DIEGO COUNTY
**Census Data for Geographical Region**
Median Head of Household Age: 30
Median Income: $49,409
Median Home Value: $397,436
Median Education: 12 years
**Household Members**

None Listed
**Other Associates**
None Listed

**6:** ███████ **SAN DIEGO, CA 92174-1233**

**Address**                                                    Dates                          Phone
████████                                                       10/2002 - 1/2008
SAN DIEGO, CA 92174-1233
SAN DIEGO COUNTY
**Census Data for Geographical Region**
Median Head of Household Age: 34
Median Income: $75,740
Median Home Value: $500,000
Median Education: 14 years
**Household Members**
None Listed
**Other Associates**
None Listed

**7:** ███████████ **EL CAJON, CA 92019-2433**

**Address**                                                    Dates                          Phone
██████████                                                     11/2000 - 10/2002
EL CAJON, CA 92019-2433
SAN DIEGO COUNTY
**Census Data for Geographical Region**
Median Head of Household Age: 30
Median Income: $49,409
Median Home Value: $397,436
Median Education: 12 years
**Household Members**
None Listed
**Other Associates**
None Listed

**8:** █████████████ **SAN DIEGO, CA 92110-5838**

**Address**                                                    Dates                          Phone
███████ ██████                                                 1/1987 - 1/2003
SAN DIEGO, CA 92110-5838
SAN DIEGO COUNTY
**Census Data for Geographical Region**
Median Head of Household Age: 30
Median Income: $59,586
Median Home Value: $331,081
Median Education: 14 years
**Household Members**
None Listed
**Other Associates**
████████████

**9:** ████████ **SAN ANTONIO, TX 78219-1914**

**Address**                                                    Dates                          Phone
████████                                                       1/1986 - 1/1999
SAN ANTONIO, TX 78219-1914
BEXAR COUNTY
**Census Data for Geographical Region**
Median Head of Household Age: 33
Median Income: $46,191
Median Home Value: $63,204
Median Education: 12 years
**Household Members**
None Listed

**Other Associates**
None Listed

**10:** ███████████████ SPRING VALLEY, CA 91977-1942

**Address**                                        **Dates**           **Phone**
████████████████████                               2/1997 - 1/2004
█████████████████1942
SAN DIEGO COUNTY
**Census Data for Geographical Region**
Median Head of Household Age: 50
Median Income: $74,916
Median Home Value: $470,352
Median Education: 15 years
**Household Members**
████████████████████

**Other Associates**
█████████████

**11:** ███████████████ SAN DIEGO, CA 92116-3565

**Address**                                        **Dates**           **Phone**
█████████████████                                  12/1996 - 5/1997
SAN DIEGO, CA 92116-3565
SAN DIEGO COUNTY
**Census Data for Geographical Region**
Median Head of Household Age: 32
Median Income: $28,977
Median Home Value: $230,818
Median Education: 13 years
**Household Members**
None Listed
**Other Associates**
█████████████

**12:** █████████████████ CA 92026

**Address**                                        **Dates**           **Phone**
████████████████                                   1/1987 - 5/1995
ESCONDIDO, CA 92026
SAN DIEGO COUNTY
**Census Data for Geographical Region**
Median Head of Household Age: 42
Median Income: $64,458
Median Home Value: $419,412
Median Education: 14 years
**Household Members**
None Listed
**Other Associates**
None Listed

**13:** ██████████████ SANTA ANA, CA 92706-3921

**Address**                                        **Dates**           **Phone**
███████████████████                                1/1987 - 9/1993
SANTA ANA, CA 92706-3921
ORANGE COUNTY
**Census Data for Geographical Region**
Median Head of Household Age: 25
Median Income: $37,391
Median Home Value: $625,000
Median Education: 8 years
**Household Members**
None Listed

**Other Associates**
None Listed

**14:** ███████████████ **ANAHEIM, CA 92804-5421**

**Address**                                    **Dates**              **Phone**
███████████████                                7/1987 - 7/1987        (714) 991-8961
ANAHEIM, CA 92804-5421
ORANGE COUNTY
**Census Data for Geographical Region**
Median Head of Household Age: 28
Median Income: $56,173
Median Home Value: $512,887
Median Education: 11 years
**Household Members**
None Listed
**Other Associates**
None Listed

**15:** ███████████████ **LOS ANGELES, CA 90012**

████████                                       ████                   ████
LOS ANGELES, CA 90012                          1/1987 - 1/1987
LOS ANGELES COUNTY
**Household Members**
None Listed
**Other Associates**
None Listed

**County:** SAN DIEGO

# Exhibit E

VASQUEZ v. LOS ANGELES COUNTY METROPOLITAN..., JVR No. 1402210041...

JVR No. 1402210041, 2013 WL 7852947 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2015 Thomson Reuters/West
Superior Court, Los Angeles County, California.

VASQUEZ v. LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY

BC484335
DATE OF FILING: October 25, 2012
DATE OF TRIAL/SETTLEMENT: November 12, 2013

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $1,904,635**
HIGH AMOUNT: $0

LOW AMOUNT: $0


**Related Court Documents:**
Plaintiff's second amended complaint: 2012 WL 10007313

Defendant's trial brief: 2013 WL 6506751

Verdict form: 2013 WL 6506795


**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: Scott O. Cummings, Cummings & Franck P.C., Gardena, CA
Plaintiff: Lee Franck, Cummings & Franck P.C., Gardena, CA
Defendant: Calvin R. House, Gutierrez Preciado & House L.L.P., Pasadena, CA
Defendant: Caroline Shahinian, Gutierrez, Preciado & House L.L.P., Pasadena, CA

JUDGE: Kevin C. Brazile

RANGE AMOUNT: $1,000,000 - 1,999,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: M

Age: Adult

General Occupation: General Laborer


**DEFENDANT:**

VASQUEZ v. LOS ANGELES COUNTY METROPOLITAN..., JVR No. 1402210041...

Sex: O

Organization Type: Los Angeles County Metropolitan Transportation Authority

**DAMAGES:**
Compensatory Pain & Suffering: $1,250,000

Compensatory Future Medical: $185,000

Compensatory Past Wages: $84,348

Compensatory Future Wages: $385,287

Total Compensatory Award: $1,904,635

Punitive Damages: $0

Hedonic Damages: $0

Property Damages: $0

Interest: $0

Other Damages: $0

Loss of Services: $0

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: true

Failure Grant Leave: true

Failure Hire: true

Failure Promote: false

Suspension: true

Sexual Harassment: false

VASQUEZ v. LOS ANGELES COUNTY METROPOLITAN..., JVR No. 1402210041...

Harassment: true

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: true

Restrictions: false

Termination: true

**Entity Type: Government Entity**
**STATUTES**
**Primary Specific Statute**
Primary Name: State

**Primary General Statute**
**Primary Name: Disability Discrimination**
Primary General Statute Discrimination: true

Specific Statute: State

**General Statute: Family and Medical Leave**
General Statute Discrimination: false

Specific Statute: General

VASQUEZ v. LOS ANGELES COUNTY METROPOLITAN..., JVR No. 1402210041...

**General Statute: Retaliation**
General Statute Discrimination: false

Comparative Negligence Percentage: 0

**FACTS:**
Raphael Vasquez, a former bus driver, sued the Los Angeles County Metropolitan Transportation Authority for disability discrimination, failure to accommodate, failure to engage in the interactive process, in violation of the Americans with Disabilities Act (ADA), and interference with the Family and Medical Leave Act (FMLA) and the California Family Rights Act (CFRA), and retaliation in violation of the Fair Employment and Housing Act (FEHA) Cal. Gov't. Code Secs. 12940 et seq. The plaintiff alleged during his employment, he suffered from a variety of disabilities, including but not limited to gout, cataracts, blurry vision, diabetes, for which he treated with doctors, and in January 2010, he requested a medical leave of absence for hip replacement surgery due to Avascular Necrosis of the femur, which the defendant admitted he was eligible for, and he provided the necessary documentation indicating he would be out for approximately five months. He asserted following the surgery, his doctor provided a note that he was unable to work until June 1, 2010 due to Trochanteric Bursitis, and aftercare from his hip replacement, thereafter, he was cleared to return to work. Vazquez claimed in November 2010, he had cataract surgery, but the defendant began to use his disabilities for adverse actions, including discipline and suspensions, and in January 2011, he was terminated, and the proffered reason for his termination was his attendance. He asserted the defendant failed to engage in a timely, good faith, interactive process to determine the most effective reasonable accommodations for him, discouraged the use of FMLA leave, which violated the CFRA, and that his disability, his request for and/or taking medical leave were substantial motivating factors in the decision to terminate him. The defendant denied the allegations and contended the plaintiff was charged with excessive absenteeism after accumulating eight absences within a 12-month period, and at his discharge hearing he told the hearing officer he was in perfect health, but that he had treated some medical conditions. The defendant argued that the officer had no reason to believe the plaintiff might be disabled, and terminated him for violating it's attendance policy.

Jury Verdict Research
COURT: Superior

End of Document                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

ABOULAFIA v. GACN INC. D/B/A CABLE'S RESTAURANT, JVR No. 1403200023 (2013)

JVR No. 1403200023, 2013 WL 8115991 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2015 Thomson Reuters/West
Superior Court, Los Angeles County, California.

ABOULAFIA v. GACN INC. D/B/A CABLE'S RESTAURANT

BC469940
DATE OF FILING: September 23, 2011
DATE OF TRIAL/SETTLEMENT: December 17, 2013

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $5,681,682**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**Related Court Documents:**
Plaintiffs' complaint: 2011 WL 6463766

Verdict form: 2013 WL 6870002

Verdict form (punitive damages): 2013 WL 6869977

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: James R. Rosen, Rosen Saba LLP, Beverly Hills, CA
Plaintiff: Elizabeth L. Bradley, Rosen Saba LLP, Beverly Hills, CA
Plaintiff: Jonathan S. Dennis, Rosen Saba LLP, Beverly Hills, CA
Defendant: Eric J. Erickson, Lewis, Brisbois, Bisgaard & Smith LLP, Los Angeles, CA
Defendant: Christopher M. Habashy, Lewis, Brisbois, Bisgaard & Smith LLP, Los Angeles, CA
Defendant: Marie Dominguez-Gasson, Lewis, Brisbois, Bisgaard & Smith LLP, Los Angeles, CA

JUDGE: Yvette Palazuelos

RANGE AMOUNT: $5,000,000 - 999,999,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: Martha Aboulafia: F

Age: Adult, 58

General Occupation: Food Service Worker

Sex: Cheryl B. Colgin: F

Age: Adult, 58

General Occupation: Food Service Worker

Sex: Patricia Monica: F

Age: Adult, 67

General Occupation: Food Service Worker

Sex: Regina Greene: F

Age: Adult, 46

General Occupation: Food Service Worker

**DEFENDANT:**
Sex: O

General Occupation: Restaurant, Nightclub or Tavern

Organization Type: GACN Inc. d/b/a Cable's Restaurant

**DAMAGES:**
Compensatory Pain & Suffering: Martha Aboulafia: $250,000

Compensatory Past Wages: Martha Aboulafia: $58,164

Compensatory Future Wages: Martha Aboulafia: $53,592

Total Compensatory Award: Martha Aboulafia: $361,756

Compensatory Pain & Suffering: Cheryl B. Colgin: $250,000

Compensatory Past Wages: Cheryl B. Colgin: $66,262

Compensatory Future Wages: Cheryl B. Colgin: $131,372

Total Compensatory Award: Cheryl B. Colgin: $447,634

Compensatory Pain & Suffering: Patricia Monica: $250,000

Compensatory Past Wages: Patricia Monica: $95,588

Compensatory Future Wages: Patricia Monica: $157,486

ABOULAFIA v. GACN INC. D/B/A CABLE'S RESTAURANT, JVR No. 1403200023 (2013)

Total Compensatory Award: Patricia Monica: $503,074

Compensatory Pain & Suffering: Regina Greene: $250,267

Compensatory Past Wages: Regina Greene: $56,613

Compensatory Future Wages: Regina Greene: $62,338

Total Compensatory Award: Regina Greene: $369,218

Punitive Damages: $1,000,000

Hedonic Damages: $0

Property Damages: $0

Interest: $0

Other Damages: $0

Loss of Services: $0

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: false

Harassment: true

Hostile Work Env: false

Isolation: false

ABOULAFIA v. GACN INC. D/B/A CABLE'S RESTAURANT, JVR No. 1403200023 (2013)

Lay Off: false

Loss Benefits: false

Loss Pay: true

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true

**Entity Type: Service/Retail Company**
**STATUTES**
**Primary Specific Statute**
Primary Name: State

**Primary General Statute**
**Primary Name: Age Discrimination**
Primary General Statute Discrimination: true

Specific Statute: General

**General Statute: Wrongful Termination**
General Statute Discrimination: false

Comparative Negligence Percentage: 0

**FACTS:**
58-year-old Martha Aboulafia, 58-year-old Cheryl B. Colgin, 46-year-old Regina Greene, and 67-year-old Patricia Monica, formerly employed as servers, sued GACN Inc. d/b/a Cable's Restaurant, for age discrimination, wrongful termination, in violation of California's public policy, and failure to provide rest periods and/or 30 minute meal periods, pursuant to Cal. Lab. Code Sec. 226.7. The plaintiffs claimed during their employment, they were never the subject of any negative reviews or

ABOULAFIA v. GACN INC. D/B/A CABLE'S RESTAURANT, JVR No. 1403200023 (2013)

disciplinary actions until the restaurant came under new ownership, thereafter, they experienced negative treatment, a reduction in hours, and sudden complaints about job performance. They alleged after the transfer of ownership, suddenly they were systematically harassed, wrongfully terminated, and were replaced by younger female servers. Aboulafia, who worked for the defendant for more than 17 years, contended after the transfer of ownership, two days later she was terminated allegedly because business was slow, and she was told that an unidentified customer had complained about her. Colgin, who worked for the restaurant for more than 14 years, alleged she was also told two days after the transfer that she was no longer needed, but the manager called her again 10 minutes later, and fired her a second time, likely not remembering he had terminated her minutes earlier. Greene, who worked for the restaurant for three years, claimed that after the transfer, she was instructed to train newly hired younger female employees, but seven months later her manager falsely accused her of being under the influence of drugs and/or alcohol, terminated her, and subsequently falsely reported to the California Employment Development Department that she had voluntarily resigned in its attempt to avoid paying her unemployment benefits. Monica, who was employed for 13 years, asserted she was terminated two days after the transfer purportedly because her services were no longer needed, and business was slow. The defendant denied the allegations and contended it used nondiscriminatory factors to facilitate the layoffs, including identifying servers with flexible schedules and a willingness to work with all customers, and that it retained 11 servers employed by former management, and eight of those servers were within the protected class, ranging from 45 to 75 years old. The defendant also claimed the plaintiffs were allowed to take appropriate rest breaks. The jury awarded Aboulafia $1,361,756, Colgin $1,447,634, and Monica $1,503,074 for their age discrimination claims, and Greene's award included $952 for missed rest periods for a total award of $1,369,218.

Jury Verdict Research
COURT: Superior

---

**End of Document**                                      © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Silverman vs. Stuart F. Cooper Inc., 43 Trials Digest 16th 11 (2013)

43 Trials Digest 16th 11, 2013 WL 5820140 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2015 Thomson Reuters/West
Superior Court, Los Angeles County, California.

Silverman vs. Stuart F. Cooper Inc.

**TOPIC:**

Synopsis: Terminated employee claims age discrimination

Case Type: Labor & Employment; Discrimination; Labor & Employment; Age; Labor & Employment; Harassment-General; Labor & Employment; Termination/Constructive Discharge

DOCKET NUMBER: BC467464

STATE: California
COUNTY: Los Angeles

Verdict/Judgment Date: July 19, 2013

JUDGE: Deirdre H. Hill
**ATTORNEYS:**
Plaintiff: Allen J. Beck, Gleason & Favarote, Los Angeles; Paul M. Gleason, Gleason & Favarote, Los Angeles; Janet S. Yavrouian, Gleason & Favarote, Los Angeles.
Defendant: Charles J. Schufreider, Barton, Klugman & Oetting, Los Angeles.

**SUMMARY:**

Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $325,223

Range: $200,000-499,999
$133,222 to plaintiff for past loss of earnings

$40,668 to plaintiff for future loss of earnings

$116,333 to plaintiff for past emotional distress

$35,000 to plaintiff for future emotional distress

The jury found defendants Stuart F. Cooper Inc. or Burdge Cooper Inc. acted with oppression, fraud or malice but declined to award punitive damages.

Trial Type: Jury

Deliberations: Not reported.

Jury Poll: Not reported.

**EXPERTS:**
Plaintiff: Not reported.
Defendant: Not reported.

**TEXT:**

**CASE INFORMATION**

**FACTS/CONTENTIONS**
According to court records: Plaintiff Joe Silverman was hired by defendant Stuart F. Cooper Inc. in 1994 as a salesman. Plaintiff said he was compensated with a base salary, commission, expense reimbursement and medical benefits, regardless of sales performance. Plaintiff said his sale performance fluctuated, but he was never subjected to discipline, and he achieved an acceptable sales record. In August 2009, plaintiff was reportedly demoted by defendant David Overgaar, defendant Stuart Cooper's president, without warning and his compensation package was changed. His compensation change converted him to 100 percent commission and limited his automobile reimbursement to $200 per month. Plaintiff said the company had never forced such a compensation package on any other employee. The new package also established a sales quota for plaintiff in order to return to his prior compensation plan. He said he was required to have sales of at least $90,000 over a six-month period with no single job accounting for more than 30 percent of sales. This quota was unprecedented and never applied to other sales employees, plaintiff claimed.
In November 2009, another sales representative, 49, was allegedly hired with a salary plus commissions compensation package.
In October 2010 plaintiff, 76, apparently filed a claim for age discrimination with the Department of Fair Employment and Housing based on the demotion and his change in compensation. Within six months of his complaint, plaintiff said, plaintiff was terminated by defendant Burdge Cooper Inc. for the pretextual reason of "poor attitude."
Plaintiff alleged age discrimination in violation of the Fair Employment and Housing Act and public policy, unlawful retaliation in violation of the FEHA, age harassment in violation of the FEHA, failure to prevent discrimination and harassment in violation of the FEHA, wrongful termination in violation of public policy and failure to pay final wages and waiting time penalties.

**CLAIMED INJURIES**
According to court records:
Emotional distress.

**CLAIMED DAMAGES**
According to court records:
Not reported.

**SETTLEMENT DISCUSSIONS**
According to court records:

Not reported.

**COMMENTS**
According to court records:

The complaint was filed Aug. 12, 2011.

**Silverman vs. Stuart F. Cooper Inc., 43 Trials Digest 16th 11 (2013)**

Trials Digest, A Thomson Reuters/West business
Los Angeles County Superior Court/Downtown

**End of Document**    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

13 Trials Digest 16th 10, 2013 WL 1415554 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2015 Thomson Reuters/West
Superior Court, Los Angeles County, California.

Bisharat vs. Los Angeles Unified School District

**TOPIC:**
Synopsis: Teacher claims school district failed to accommodate disability, forced early retirement

Case Type: Labor & Employment; Discrimination; Labor & Employment; Disability/Medical Condition; Labor & Employment; Termination/Constructive Discharge; Labor & Employment; Violation of Public Policy

DOCKET NUMBER: BC458496

STATE: California
COUNTY: Los Angeles

Verdict/Judgment Date: February 15, 2013

JUDGE: Ronald M. Sohigian
**ATTORNEYS:**
Plaintiff: Ellen E. Cohen, Law Offices of Joseph M. Lovretovich, Woodland Hills; Paul M. Gleason, Gleason & Favarote, Los Angeles; Victoria N. Jalili, Law Offices of Joseph M. Lovretovich, Woodland Hills; Joseph M. Lovretovich, Law Offices of Joseph M. Lovretovich, Woodland Hills; Janet S. Yavrouian, Gleason & Favarote, Los Angeles.
Defendant: Charlie L. Hill, Office of General Counsel, Los Angeles; Linda Hurevitz, Ballard, Rosenberg, Golper & Savitt, Glendale; Linda Miller Savitt, Ballard, Rosenberg, Golper & Savitt, Glendale.

**SUMMARY:**

Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $473,750

Range: $200,000-499,999
$138,585 to plaintiff for past lost earnings; $328,165 to plaintiff for future lost earnings; $7,000 to plaintiff for past emotional distress.

Trial Type: Jury

Deliberations: Not reported.

Jury Poll: Not reported.

**EXPERTS:**
Plaintiff: Not reported.
Defendant: Not reported.

**TEXT:**

## CASE INFORMATION

### FACTS/CONTENTIONS

According to court records: Plaintiff Ghassan Bisharat was hired as a teacher for defendant Los Angeles Unified School District in 1983. Throughout plaintiff's employment, he reportedly worked at schools considered to be in violent neighborhoods, and students physically attacked plaintiff on several occasions.

On Feb. 5, 2008, plaintiff was assaulted by a student while reviewing final grades with a group of senior students. A male student reportedly jumped up, began screaming and cursing, and threatened plaintiff to "watch his back." The student then threw various school supplies at plaintiff's face. At the same time, another student reportedly lunged at plaintiff intending to strike him in the face, but she was pulled away before she was able to strike plaintiff. As she was being pulled away she told plaintiff she would burn him alive in his car. Plaintiff filed a written report detailing the incident, and around 3:00 p.m. police arrived and advised plaintiff to leave the school using the side door to avoid running into the students who had assaulted him. On Feb. 21, 2008, the student who had threatened plaintiff confronted him again. Plaintiff said he began to suffer an extreme panic attack and believed the student wanted to kill him. Plaintiff said he also thought he was having a heart attack. Plaintiff was ultimately put on disability leave.

While out on disability leave plaintiff's doctor advised plaintiff that he could not return to work in any classroom and defendant would need to find him a position outside of the classroom. Plaintiff claimed he had previously done work for defendant outside the classroom including research and publishing research. Plaintiff claimed defendant refused to place plaintiff in a position outside the classroom and told him he had to appeal to a committee if he wanted an alternative position. Plaintiff said the committee denied plaintiff's request and told him his only option was to take early retirement if he wanted to maintain any of his benefits. Plaintiff said that because he was left with no income and the possibility of no benefits, he was forced to file for retirement April 1, 2009. Plaintiff said that at that time, he was four years away from obtaining full retirement benefits and because he was forced to take early retirement he was receiving only a portion of the benefits he would have been entitled to had he been able to continue working.

Plaintiff alleged disability discrimination, failure to prevent discrimination, failure to accommodate a disability, failure to engage in the interactive process and constructive termination in violation of the Fair Employment and Housing Act, Cal. Gov't Code §§ 12940 et seq., and violations of public policy.

Defendant denied liability and contended plaintiff could not perform the essential functions of his job with or without accommodation. Defendants further contended plaintiff's doctor never provided a letter stating that plaintiff could return to work in any classroom setting.

### CLAIMED INJURIES

According to court records:
Emotional distress.

### CLAIMED DAMAGES

According to court records:
Not reported.

### SETTLEMENT DISCUSSIONS

According to court records:

Not reported.

### COMMENTS

According to court records:

**Bisharat vs. Los Angeles Unified School District, 13 Trials Digest 16th 10 (2013)**

The complaint was filed March 30, 2011.

Trials Digest, A Thomson Reuters/West business
Los Angeles County Superior Court/Downtown

---

**End of Document**                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Jolly vs. City of Long Beach, 27 Trials Digest 16th 14 (2013)

27 Trials Digest 16th 14, 2013 WL 3340512 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2015 Thomson Reuters/West
Superior Court, Los Angeles County, California.

Jolly vs. City of Long Beach

**TOPIC:**

Synopsis: Former city employee claims discrimination, hostile work environment

Case Type: Labor & Employment; Discrimination; Labor & Employment; Age; Labor & Employment; Disability/ Medical Condition; Labor & Employment; Harassment-General; Labor & Employment; Retaliation; Labor & Employment; Termination/Constructive Discharge

DOCKET NUMBER: BC453032

STATE: California
COUNTY: Los Angeles

Verdict/Judgment Date: May 16, 2013

JUDGE: Terry A. Green
**ATTORNEYS:**
Plaintiff: J. Bernard Alexander III, Alexander, Krakow & Glick, Santa Monica; Tracy L. Fehr, Alexander, Krakow & Glick, Santa Monica.
Defendant: Lisa Bond, Richards, Watson & Gershon, Los Angeles; Robert E. Shannon, Office of City Attorney, Long Beach; Barry M. Meyers, Office of City Attorney, Long Beach.

**SUMMARY:**

Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $325,000

Range: $200,000-499,999
$250,000 to plaintiff for past lost earnings

$75,000 to plaintiff for past noneconomic damages

Trial Type: Jury

Deliberations: Not reported.

Jury Poll: Not reported.

**EXPERTS:**
Plaintiff: Not reported.
Defendant: Not reported.

**TEXT:**

Jolly vs. City of Long Beach, 27 Trials Digest 16th 14 (2013)

## CASE INFORMATION

### FACTS/CONTENTIONS

According to court records: Plaintiff Gerald Jolly worked for defendant city of Long Beach for almost nine years and last held the position of Information Systems Analyst. Plaintiff said that up until August 2008, he had received a series of favorable reviews and had never been disciplined or reprimanded.

On Aug. 5, 2008, plaintiff received a negative performance evaluation from the Technology Services Officer, defendant Jeanne Takano, and new manager Jack Cuilla. Plaintiff said that although Cuilla had only supervised plaintiff for one year, Cuilla issued an evaluation that purported to address a four-year period dating back to 2004 and that included no input from plaintiff's previous supervisor from that time period. Plaintiff claimed he was the only employee to have received a performance evaluation encompassing four years.

Plaintiff said that prior to September 2008, he had 35 years' experience as a mainframe information systems analyst. In September 2008, at age 57, plaintiff was reassigned to work on a new operating system with which he had no previous experience. Plaintiff requested assignment to one of two available mainframe positions, but was reportedly denied by Takano. Plaintiff claimed that after he left the department, Takano assigned two employees from his team to work in the mainframe system area.

Plaintiff said that at the direction of Takano, plaintiff's supervisor, Michelle Kimura, informed plaintiff he was expected to "master" the new Hansen system, without training or guidance. Plaintiff said that while a rapid learning curve for the Hansen system would be two to three months, he was given four days of training sessions that were completely unrelated to the Hansen system to which he had been assigned. Plaintiff said that when he asked his supervisors questions about the system, he was belittled in his efforts to learn the system and his inquiries were deflected or went unanswered.

Plaintiff said that although he was a member of a group that was expected to work as a team, plaintiff was excluded from attending or participating in staff or team meetings. Plaintiff claimed he was micro-managed and required to account for his whereabouts at every moment. Plaintiff said he was the only employee required to leave a note at his desk notifying employees of his whereabouts for every time he left his desk, including trips to the restroom. Plaintiff claimed he was subjected to disparaging and unprofessional remarks by his supervisors. Plaintiff said he complained about the hostile work environment to both Kimura and Takano, but his complaints went unaddressed. Plaintiff claimed that in response to his complaints, defendants retaliated against him by attacking his work and requiring and soliciting the assistance of plaintiff's supervisor and his coworkers to harass him. Plaintiff said that Takano labeled him a "special project" and specifically instructed Kimura that regardless of plaintiff's efforts, he had to fail.

In addition, plaintiff claimed defendants harassed him based on his disabilities. Plaintiff said he often spoke in a loud voice due to his hearing loss. Takano and Kimura reportedly chastised plaintiff for speaking in a "loud voice" and purposefully mischaracterized his elevated speech as a temper tantrum and reprimanded him. Further, plaintiff said he suffered from high stress and defendants purposefully scheduled meetings with plaintiff several weeks in advance in order to create additional stress for plaintiff. Plaintiff said that within months of working with Takano and Kimura he experienced high blood pressure, severe leg cramps, stress, anxiety, irritability and sleeplessness.

On June 19, 2009, plaintiff took a medical leave of absence due to the allegedly hostile work environment. Plaintiff resigned in late July 2009.

Plaintiff alleged discrimination based on disability and age, harassment, retaliation, failure to engage in the interactive process, failure to prevent discrimination and harassment, and constructive discharge.

Defendant denied liability.

### CLAIMED INJURIES
NA

### CLAIMED DAMAGES
According to court records:

---

**Jolly vs. City of Long Beach, 27 Trials Digest 16th 14 (2013)**

Not reported.


**SETTLEMENT DISCUSSIONS**
According to court records:

Not reported.


**COMMENTS**
According to court records:

The complaint was filed Jan. 12, 2011.


Trials Digest, A Thomson Reuters/West business
Los Angeles County Superior Court/Downtown

---

**End of Document**                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

SIGLIN v. CARDEN WHITTIER SCHOOL INC., JVR No. 1205170012 (2012)

JVR No. 1205170012, 2012 WL 1798892 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2015 Thomson Reuters/West
Superior Court, Los Angeles County, California.

SIGLIN v. CARDEN WHITTIER SCHOOL INC.

BC433923
DATE OF FILING: March 23, 2010
DATE OF TRIAL: March 27, 2012

TOPIC:

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total Verdict: $323,985**
**Judge Reduced Award To:**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**EXPERT-WITNESSES:**
Plaintiff:
Psychology & Social Behavior: Maddi, Salvatore, Ph.D., Irvine, CA
Defendant:
Psychologist: Grienenberger, John, Ph.D., Los Angeles, CA
**ATTORNEY:**
Plaintiff: Monica T. Guizar, Los Angeles, CA
Sandra C. Munoz, Los Angeles, CA
Defendant: James T. Jackson, Santa Ana, CA

JUDGE: Elizabeth Allen White

RANGE AMOUNT: $200,000 - 499,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: Female

Age: Adult, 59

General Occupation: Teacher

**DECEDENT:**
**DEFENDANT:**

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

SIGLIN v. CARDEN WHITTIER SCHOOL INC., JVR No. 1205170012 (2012)

Sex: Organization

Organization Type: Carden Whittier School Inc.

Policy Limit:

**ENTITY TYPE: Private Educational Institution**
**DAMAGES:**
Compensatory Past Wages Award: $288,985

Compensatory Pain And Suffering Award: $35,000

Total Compensatory Award: $323,985

Punitive Damages: $0

Hedonic Damages: $0

Property Damages: $0

Other Damages: $0

Interest: $0

Loss of Service: $0

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: true

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: false

Harassment: false

SIGLIN v. CARDEN WHITTIER SCHOOL INC., JVR No. 1205170012 (2012)

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: true

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: true

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true


**STATUTES**
**Primary Specific Statute**
Primary Name: ADA/ADAAA


**Primary General Statute**
**Primary Name: Disability Discrimination**
Primary general Statute Discrimination: true


**Specific Statute: ADA**
**General Statute: Retaliation**
General Statute Discrimination: false

Comparative Negligence Percentage: 0


**FACTS:**
Judy Siglin sued Carden Whittier School Inc. for disability discrimination, retaliation, wrongful termination, and intentional infliction of emotional distress. The 59-year-old former second and third grade school teacher alleged that following a two month

SIGLIN v. CARDEN WHITTIER SCHOOL INC., JVR No. 1205170012 (2012)

medical leave of absence, which she took with the defendant's approval, upon her return; the school refused to reinstate her to the class she taught prior to her leave. She asserted that instead of allowing her to teach at the second and third grade levels as she had done for 18 years, she was designated to a substitute teacher and tutor position, and when she made a request for the defendant to restore her former teaching position, it refused to do so. Siglin asserted that Carden Whittier School retaliated against her for taking medical leave, and discriminated against her based on her perceived disability, which was a clear violation of the California Family Rights Act and the Americans with Disabilities Act. She also contended that ultimately the school unlawfully terminated her employment, that this violated public policy, and caused her severe emotional distress. Carden Whittier School denied the allegations and contended that the plaintiff was not terminated, that its actions against her were non-discriminatory and based on legitimate business reasons. Carden Whittier also contended that the plaintiff's tenure at the school ended after her contract expired, and because of economical hardships, it was unable to renew her contract. The jury found for Siglin on her disability discrimination claim, but found for Carden Whittier on her retaliation and intentional infliction of emotional distress claims.

Jury Verdict Research
COURT: Superior

**End of Document**      © 2015 Thomson Reuters. No claim to original U.S. Government Works.

SUN v. TRANSIT AIR CARGO INC., JVR No. 1203190009 (2012)

JVR No. 1203190009, 2012 WL 933613 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2015 Thomson Reuters/West
Superior Court, Orange County, California.

SUN v. TRANSIT AIR CARGO INC.

30-2011-00446922
DATE OF INCIDENT: June 30, 2010
DATE OF FILING: February 02, 2011
DATE OF TRIAL: March 18, 2012

TOPIC:

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total Verdict: $175,000**
**Judge Reduced Award To:**
**Final Demand: $140,000**
**Final Offer: $5000**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: Brian J. Mankin, Riverside, CA
Defendant: Nicholas D. Mosich, Costa Mesa, CA

JUDGE: Barbara Tam Nomoto Schumann

RANGE AMOUNT: $100,000 - 199,999

STATE: California
COUNTY: Orange

**SUMMARY**
**PLAINTIFF:**
Sex: Female

Age: Adult

General Occupation: General Laborer

**DECEDENT:**
Other Expenses: $0

SUN v. TRANSIT AIR CARGO INC., JVR No. 1203190009 (2012)

**DEFENDANT:**
Sex: Organization

Organization Type: Transit Air Cargo Inc.

Policy Limit:

**ENTITY TYPE: General Business Entity**
Claimed Past Wages: $40,000

**DAMAGES:**
Compensatory Past Medical Award: $0

Compensatory Future Medical Award: $0

Compensatory Past Wages Award: $41,125

Compensatory Future Wages Award: $0

Compensatory Pain And Suffering Award: $0

Other Compensatory Award: $120,959

Total Compensatory Award: $175,000

Punitive Damages: $0

Hedonic Damages: $0

Property Damages: $0

Other Damages: $0

Interest: $0

Loss of Service: $0

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

SUN v. TRANSIT AIR CARGO INC., JVR No. 1203190009 (2012)

Failure Accomodate: true

Failure Grant Leave: true

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: false

Harassment: false

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true

**STATUTES**
**Primary Specific Statute**
Primary Name: ADA/ADAAA

**Primary General Statute**
**Primary Name: Disability Discrimination**

SUN v. TRANSIT AIR CARGO INC., JVR No. 1203190009 (2012)

Primary general Statute Discrimination: true

**Specific Statute: General**
**General Statute: Wrongful Termination**
General Statute Discrimination: false

Comparative Negligence Percentage: 0

**FACTS:**
The plaintiff, May Sun, sued Transit Air Cargo Inc. for disability discrimination and wrongful termination. The plaintiff contended that the defendant discriminated against her based on her physical disability, failed to accommodate her request for medical leave, and that this was in non-compliance with the California Family Rights Act, which grants eligible employees a total of 12 work weeks of unpaid leave during a 12 month period for serious health condition. She asserted that she was also wrongfully terminated from her employment only one day after she requested medical leave, and that Transit Air Cargo acted with malice and indifference to her federally protected rights under the Americans with Disabilities Act. Transit Air Cargo denied the allegations and contended that it had a plan in place to discharge the plaintiff from her employment prior to her request for medical leave, and that its decision to terminate her was not due to any discriminatory reasons based on her disability, but out of the necessity for a reduction in the workforce, and because of issues with her performance.

Jury Verdict Research
COURT: Superior

---

End of Document © 2015 Thomson Reuters. No claim to original U.S. Government Works.

O'Connor vs. UHS-Corona Inc., 34 Trials Digest 14th 11 (2011)

34 Trials Digest 14th 11, 2011 WL 3606915 (Cal.Superior) (Verdict and Settlement Summary)

Copyright (c) 2015 Thomson Reuters/West
Superior Court, Riverside County, California.

O'Connor vs. UHS-Corona Inc.

**TOPIC:**
Synopsis: Nurse alleges retaliatory termination in violation of CFRA

Case Type: Labor & Employment; Retaliation; Labor & Employment; Termination/Constructive Discharge; Labor & Employment; Family & Medical Leave; Defamation; Other; Labor & Employment; Violation of Public Policy

DOCKET NUMBER: RIC516507

STATE: California
COUNTY: Riverside

Verdict/Judgment Date: January 20, 2011

JUDGE: Lillian Y. Lim
**ATTORNEYS:**
Plaintiff: Jeffrey A. Rager, Rager Law Firm, Torrance; Melanie Rasic Savarese, Savarese Law Firm, Sierra Madre.
Defendant: Tracie Childs, Manning & Marder, Kass, Ellrod, Ramirez, San Diego; Al De La Cruz, Manning & Marder, Kass, Ellrod, Ramirez, San Diego.

**SUMMARY:**

Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $1,630,334

Range: $1,000,000-1,999,999
$130,334 past economic loss; $1,000,000 past non-economic loss; $500,000 future non-economic loss against defendants UHS-Corona Inc. dba Corona Regional Medical Center and UHS of Delaware Inc. During a concurrent bench trial, the court ruled that Universal Health Services Inc. was not a single or joint employer of plaintiff, and judgment was issued in favor of Universal Health Services Inc. as against plaintiff.

Trial Type: Jury

Deliberations: Not reported.

Jury Poll: Not reported.

**EXPERTS:**
Plaintiff: Not reported.
Defendant: Not reported.

**TEXT:**

O'Connor vs. UHS-Corona Inc., 34 Trials Digest 14th 11 (2011)

## CASE INFORMATION

### FACTS/CONTENTIONS

According to court records: On March 25, 2003, plaintiff Doreen O'Connor began her employment with defendants Corona Regional Medical Center, Universal Health Services Inc. ("UHS"), Brenda Schicker, Ruth Battles, and May Walsh as an RN on the nursery staff from 7:00 a.m. to 7:00 p.m.

On July 9, 2003, plaintiff's Performance Review read, "Doreen meets or exceeds all standards of performance. She is very willing to learn and very pleasant with patients and co-workers. It is a pleasure to have Doreen on staff, she has experienced some very busy shifts and is doing an excellent job."

On March 23, 2005, plaintiff was rated overall as "Exceeds Requirements." The review stated, "Doreen has been very helpful in some of the changes that have taken place in our department. She developed two of the tests that were used for competencies in our mother-baby department. Doreen is a very knowledgeable and skilled nurse here at Corona and we are lucky to have her here as part of our staff."

In April 2006, plaintiff was promoted to Charge Nurse. In October 2007, defendant Brenda Schicker was hired as Education Manager.

In February and March 2008, plaintiff was on a protected medical leave for diabetes and asthma. Upon return from her medical leave, she was presented with a performance review in May 2008. She received a lower rating and was told not to be "emotional" when presenting concerns to her director. Plaintiff was informed that she was "not giving as much as before because of her medical condition."

On October 8, 2008, plaintiff was informed she was fired by defendants Schicker, Battles, and Walsh. In the presence of others, plaintiff was accused of "harassing, stocking [sic], and spying, on the nursing staff." She was accused of "inappropriate behavior and inappropriate language." She was told that the staff felt "threatened" by her.

Plaintiff filed suit for Retaliation in Violation of the California Family Rights Act, Wrongful Termination in Violation of Public Policy, Retaliatory Termination in Violation of Public Policy, and Defamation Per Se.

### CLAIMED INJURIES

According to court records:
Emotional distress; major depressive disorder.

### CLAIMED DAMAGES

According to court records:
$125,723 loss of earnings.

### SETTLEMENT DISCUSSIONS

According to court records:

Not reported.

### COMMENTS

According to court records:

The complaint was filed on December 30, 2008.

Trials Digest, A Thomson Reuters/West business
Riverside County Superior Court/Central

O'Connor vs. UHS-Corona Inc., 34 Trials Digest 14th 11 (2011)

**End of Document**                                   © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Ronald Vanderheiden v. City of Alameda, 2011 WL 1562075 (2011)

2011 WL 1562075 (Cal.Superior) (Verdict and Settlement Summary)

Copyright (c) 2015 ALM Media Properties, LLC. All Rights Reserved
Superior Court, Alameda County, California.

Ronald Vanderheiden v. City of Alameda

No. RG06 283619

DATE OF VERDICT/SETTLEMENT: March 23, 2011

TOPIC: EMPLOYMENT - CALIFORNIA'S FAIR EMPLOYMENT & HOUSING ACT - DISCRIMINATION - PERCEIVED DISABILITY - EMPLOYMENT - DISABILITY DISCRIMINATION

Terminated Firefighter Denied Being Mentally Unfit for Job

**SUMMARY:**

RESULT: Verdict-Plaintiff

Award Total: $680,182

The jury found in favor of Vanderheiden and awarded him $680,182 in economic damages. It awarded no emotional distress damages.

**EXPERT WITNESSES:**

Plaintiff: Margo R. Ogus, Ph.D.; Economics; Mountain View, CA Steven A. Harman; Human Resources Policies; Dublin, CA Defendant: Mark D. Cohen, M.S.; Economics; Lafayette, CA Rhoma D. Young; Human Resources Policies; Oakland, CA

**ATTORNEYS:**

Plaintiff: Christopher E. Platten; Wylie, McBride, Jesinger, Platten & Renner; San Jose, CA (Ronald Vanderheiden); Amy L. Sekany; Wylie, McBride, Platten & Renner; San Jose, CA (Ronald Vanderheiden, Ronald Vanderheiden)

Defendant: Ian P. Fellerman; Wiley Price & Radulovich, LLP; Alameda, CA (City of Alameda); Joan Pugh Newman; Wiley, Price & Radulovich, L.L.P.; Alameda, CA (City of Alameda)

JUDGE: Wynne S. Carvill

RANGE AMOUNT: $500,000-999,999

STATE: California

COUNTY: Alameda

**INJURIES: Vanderheiden sought recovery of economic damages for lost wages and pension, as well as significant non-economic emotional distress damages. After his termination, Vanderheiden started his own business providing instruction and certification in First Aid and CPR.**

Facts:

In April 2006, plaintiff Ronald Vanderheiden, 50, was terminated from his position as a firefighter for the city of Alameda. He had held the position for 14 years.

Ronald Vanderheiden v. City of Alameda, 2011 WL 1562075 (2011)

Vanderheiden sued the city for disability discrimination under California's Fair Employment and Housing Act, alleging he was terminated based on a perceived psychological disability. He claimed he was wrongfully terminated by the city on the ground that he was psychologically unable to perform as a member of a team with the Alameda Fire Department.

Vanderheiden contended that he had a sterling career as a firefighter with the city, and he contended the city was unable to cite a single instance wherein he was unable to execute his duties as a firefighter or emergency medical technician. Instead, Vanderheiden contended that the city relied on unverified complaints made by co-workers regarding his alleged "erratic behavior" in justifying a fitness for duty evaluation. He alleged that the co-workers' complaints were retaliation for his previously reporting alleged misconduct of a fellow firefighter to the police.

Vanderheiden claimed that the city knew it placed him into a potentially hostile work environment because he had filed the police report. He contended that the city ignored his complaints of retaliation, including alleged ostracism by fellow firefighters, purported destruction of his safety equipment and alleged threats to his physical safety.

The city stated that one of the primary bases for terminating Vanderheiden was a fitness for duty evaluation performed by a psychologist. The report deemed Vanderheiden psychologically incapable of performing as a member of a team with the Fire Department. However, plaintiffs' counsel argued that the city relied on the psychologist's evaluation despite reports from four other mental health professionals that indicated Vanderheiden was able to work.

Vanderheiden contended that the city refused to accept his pre-termination offer for an independent medical examination, and instead relied on the single opinion of the other psychologist.

The trial court held that under the standard of "objective reasonableness" only that information which the decision-maker had knowledge of prior to the termination was relevant. Therefore, the court excluded all expert testimony pertaining to the objective scientific and medical validity of the tests administered in the fitness for duty evaluation, as well as the underlying basis for each of the five professional opinions offered by Vanderheiden because none of that information was known by the fire chief at the time he terminated Vanderheiden.

The city contended that its decision to terminate Vanderheiden was reasonable because: 1) numerous employees personally observed Vanderheiden engage in erratic behavior (including getting dressed in his car, acting depressed, having mood swings, staring at other firefighters, calling in sick 160 hours during a four and a half month time period, sleeping at work in the morning, pacing the hallways, tape-recording conversations, crying and showing up unannounced at chiefs' homes); 2) Vanderheiden indicated that he was interested in obtaining an industrial disability retirement if he would receive his full salary; 3) two outside psychologists separately concluded that Vanderheiden was psychologically unable to work; 4) one of Vanderheiden's treating therapists repeatedly informed the City's Employee Assistance Program that Vanderheiden was unable to work; 5) the most recent performance evaluation by Vanderheiden's direct supervisor concluded that Vanderheiden had excessive problems in emotional self-control and interpersonal behavior; and 6) Vanderheiden failed to obtain any additional counseling or treatment after the second outside psychologist concluded that he was psychologically unable to work.

The defense noted that following his termination, Vanderheiden never applied for another firefighter position.

ALM Properties, Inc.
Superior Court of Alameda County, Oakland

PUBLISHED IN: VerdictSearch California Reporter Vol. 10, Issue 17

End of Document                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Ward vs. Cadbury Schweppes Bottling Group, 10 Trials Digest 15th 7 (2011)

10 Trials Digest 15th 7, 2011 WL 7447633 (C.D.Cal.) (Verdict and Settlement Summary)

Copyright (c) 2015 Thomson Reuters/West
United States District Court, C.D. California, Western Division.

Ward vs. Cadbury Schweppes Bottling Group

**TOPIC:**
Synopsis: Truck drivers claim age discrimination resulted in constructive discharge

Case Type: Labor & Employment; Age; Labor & Employment; Termination/Constructive Discharge

DOCKET NUMBER: 09CV03279(DMG)

STATE: California
COUNTY: Not Applicable
Verdict/Judgment Date: December 7, 2011

JUDGE: Dolly M. Gee
**ATTORNEYS:**
Plaintiff: Michael F. Baltaxe, Law Offices of Michael F. Baltaxe, Westlake Village; Wendy K. Marcus, Law Offices of Timothy B. Sottile, Westlake Village; Timothy B. Sottile, Law Offices of Timothy B. Sottile, Westlake Village.
Defendant: Daryl M. Crone, Crone Hawxhurst, Los Angeles; Joshua Paul Gelbart, Crone Hawxhurst, Los Angeles; Gerald E. Hawxhurst, Crone Hawxhurst, Los Angeles; Diyari Vazquez, Crone Hawxhurst, Los Angeles.

**SUMMARY:**

Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $17,899,400

Range: $5,000,000-999,999,999
Plaintiff Ward: $133,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $350,000 for past and future physical impairment, including psyche, hypertension, stomach, sleeplessness, anxiety, and chest pain; $1,800,000 punitive damages. Plaintiff Jones: $44,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $1,214,000 punitive damages. Plaintiff Suhay: $71,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $200,000 past and future physical impairment, including hernia and shoulder surgeries; $1,542,000 punitive damages. Plaintiff Valadez: $130,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $500,000 past and future physical impairment, including right knee surgery; $2,043,000 punitive damages. Plaintiff Talton: $144,000 past income; $500,000 past and future medical expenses; $800,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $200,000 past and future physical impairment, including back and stress; $1,753,000 punitive damages. Plaintiff January: $140,000 past income; $800,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $200,000 past and future physical impairment, including shoulder stress and strain; $1,335,400 punitive damages.

Trial Type: Jury

Ward vs. Cadbury Schweppes Bottling Group, 10 Trials Digest 15th 7 (2011)

Trial Length: 13 days.

Deliberations: 1 day.

Jury Poll: Not reported.

**EXPERTS:**

Plaintiff: Jeff Nelken B.S., M.A., R.D., food safety, Woodland Hills, (310) 273-5492.; Karen Lynn Smith, M.A., economist, Adams Smith Economics, San Marino, (626) 796-4040.

Defendant: Not reported.

**TEXT:**

**CASE INFORMATION**

**FACTS/CONTENTIONS**

According to court records: Plaintiffs Robert M. Ward, Robert E. Jones, Jose M. Valadez, Leonard Talton, Gary Suhay, and Alfonso W. January were employed by defendants Cadbury Schweppes Bottling Group, Cadbury Schweppes Holdings Inc., 7-Up/RC Bottling Company of Southern California, Dr. Pepper Snapple Group, and American Bottling Company.

Plaintiffs alleged defendants, through upper management, implemented and enforced an unwritten policy of discrimination against older employees, including plaintiffs. Plaintiffs claimed defendants assigned the older truck drivers more difficult and physically taxing routes so they would quit or become injured, transferred the older forklift operators to more difficult and strenuous duties so that they would quit or become injured, piled work on plaintiffs so that they would quit or become injured, and wrote some plaintiffs up for frivolous and pre-textual reasons.

Plaintiffs alleged discrimination based on age, failure to prevent discrimination or retaliation, constructive discharge in violation of public policy, failure to engage in good-faith interactive process, and failure to accommodate.

**CLAIMED INJURIES**

According to court records:

Hypertension; stomach; sleeplessness; anxiety; chest pain; hernia; shoulder; knee; anxiety; emotional distress; back.

**CLAIMED DAMAGES**

According to court records:

Not reported.

**SETTLEMENT DISCUSSIONS**

According to court records:

Not reported.

**COMMENTS**

According to court records:

The complaint was filed in Los Angeles Superior Court, case number BC410112. It was removed to federal court on May 8, 2009.

**Ward vs. Cadbury Schweppes Bottling Group, 10 Trials Digest 15th 7 (2011)**

Trials Digest, A Thomson Reuters/West business
Central District Federal Court/Los Angeles

End of Document                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

27 Trials Digest 14th 10, 2010 WL 6806990 (C.D.Cal.) (Verdict and Settlement Summary)

Copyright (c) 2015 Thomson Reuters/West
United States District Court, C.D. California, Western Division.

Peacock vs. Quest Diagnostics

**TOPIC:**

Synopsis: Employee alleges discriminatory termination in violation of CFRA

Case Type: Labor & Employment; Discrimination; Labor & Employment; Termination/Constructive Discharge; Labor & Employment; Violation of Public Policy; Labor & Employment; Family & Medical Leave; Labor & Employment; Disability/ Medical Condition; Labor & Employment; Retaliation

DOCKET NUMBER: 09CV09206(JHN)

STATE: California
COUNTY: Not Applicable

Verdict/Judgment Date: December 15, 2010

JUDGE: Jacqueline H. Nguyen
**ATTORNEYS:**
Plaintiff: Christopher B. Adamson, Lavi & Ebrahimian, Los Angeles; Joseph Lavi, Lavi & Ebrahimian, Los Angeles.
Defendant: Deanna L. Ballesteros, Epstein, Becker & Green, Los Angeles; David Jacobs, Epstein, Becker & Green, Los Angeles.

**SUMMARY:**

Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $229,638

Range: $200,000-499,999
$71,138 past economic; $8,500 future economic; $150,000 past non-economic.

Trial Type: Jury

Deliberations: Not reported.

Jury Poll: Not reported.

**EXPERTS:**
Plaintiff: Not reported.
Defendant: Not reported.

**TEXT:**

**CASE INFORMATION**

## FACTS/CONTENTIONS

According to court records: Plaintiff Janeen A. Peacock was an employee of defendant Quest Diagnostics, working as a Specimen Tech II from February 2003 until approximately January 16, 2008, when she was wrongfully terminated. In the later part of 2007, plaintiff's Manager and/or Supervisor, Raymond Candeleria, started causing plaintiff severe emotional distress and depression, which manifested itself in panic attacks which were witnessed by Candeleria. Plaintiff informed Candeleria that she had been under a lot of stress at work and that was the reason for her panic attacks, which, over the months, started to increase in frequency and/or duration.

In early January 2008, plaintiff had an outburst at work in front of Candeleria. Plaintiff started crying uncontrollably in front of Candeleria and told him that her outburst was due to severe distress at work.

On January 16, 2008, plaintiff checked herself into Northridge Hospital's Emergency Room due to severe depression. On January 17, 2008, plaintiff informed defendant's Human Resources that she had been admitted into hospital for severe depression and that she had been taken off work. Plaintiff was released on January 21, 2008 and was placed on disability by her treating physician until February 5, 2008. Upon release from the hospital, plaintiff informed defendant of her disability and mailed a copy of her doctor's note placing her off work and on disability.

On January 22, 2008, plaintiff contacted defendant's Benefit Department and informed them that she had to receive psychological treatment and group therapy from January 22, 2008 to February 1, 2008. She was informed that that was okay and that defendant would follow up with plaintiff in a few days.

On February 1, 2008, plaintiff was informed by her treating physician that her insurance had been canceled. Plaintiff contacted Human Resources to find out why and was told that they did not know why.

On February 1, 2008, plaintiff received a letter dated January 31, 2008, stating that defendant had terminated plaintiff's employment for job abandonment.

Plaintiff filed suit for Discriminatory Termination in Violation of the California Family Rights Act, California Government Code § 12945.2; Violation of the California Family Rights Act, California Government Code § 12945.2(a), Interfering with the Rights and Refusing an Employee's Request for a CFRA Medical Leave; Retaliatory Termination in Violation of the California Family Rights Act, California Government Code § 12945.2, for Requesting and Going on a Medical Leave; Tortious Termination and Discrimination in Violation of Public Policy; Disability Discrimination in Violation of FEHA; Discrimination Based on Perceived Disability in Violation of FEHA; Disability Discrimination in Violation of FEHA, Failure to Provide Reasonable Accommodation; Disability Discrimination in Violation of FEHA, Failure to Engage in Interactive Process; Retaliatory Termination in Violation of FEHA for Requesting a Reasonable Accommodation; Tortious Termination and Discrimination in Violation of Public Policy Based on FEHA; and Tortious Termination, Discrimination, and Failure to Hire in Violation of Public Policy for the Right to File a Workers' Compensation Claim due to Work Related Injury.

## CLAIMED INJURIES

NA

## CLAIMED DAMAGES

According to court records:
Not reported.

## SETTLEMENT DISCUSSIONS

According to court records:

Not reported.

## COMMENTS

According to court records:

Peacock vs. Quest Diagnostics, 27 Trials Digest 14th 10 (2010)

The complaint was filed on October 29, 2009.

Trials Digest, A Thomson Reuters/West business
Central District Federal Court/Los Angeles

End of Document                                                 © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Beverly Dodd v. Haight Brown & Bonesteel LLP, 2010 WL 4845803 (2010)

2010 WL 4845803 (Cal.Superior) (Verdict and Settlement Summary)

Copyright (c) 2015 ALM Media Properties, LLC. All Rights Reserved
Superior Court, Los Angeles County, California.

Beverly Dodd v. Haight Brown & Bonesteel LLP

No. BC413813
DATE OF VERDICT/SETTLEMENT: October 15, 2010
TOPIC: EMPLOYMENT - WRONGFUL TERMINATION - EMPLOYMENT - AGE DISCRIMINATION - EMPLOYMENT
- DISABILITY DISCRIMINATION - EMPLOYMENT - FMLA

Suit: Secretary Terminated While Undergoing Cancer Treatment

**SUMMARY:**
RESULT: Verdict-Plaintiff

Award Total: $410,520

The jury found the defendant liable, and awarded Dodd $410,520 in damages for future lost earnings, including her life insurance policy. Dodd was not awarded damages for pain and suffering.

**EXPERT WITNESSES:**
Plaintiff: Flavio Marenco; Clinical Psychology; Los Angeles, CA Solomon Hamburg, M.D.; Oncology; Beverly Hills, CA
**ATTORNEYS:**
Plaintiff: Michael J. Procopio; Campion, Rodolff, Van Riper & Procopio; Santa Ana, CA (Beverly Dodd); Michael Louis Kelly;
Kirtland & Packard; El Segundo, CA (Beverly Dodd)
Defendant: Linda Miller Savitt; Ballard, Rosenberg, Golper & Savitt, LLP; Glendale, CA (Haight Brown & Bonesteel LLP);
Eric C. Schwettmann; Ballard, Rosenberg, Golper & Savitt; Glendale, CA (Haight Brown & Bonesteel LLP)

JUDGE: Joanne O'Donnell

RANGE AMOUNT: $200,000-499,999

STATE: California
COUNTY: Los Angeles

**INJURIES: Dodd asked the jury for $525,000 in damages for past and future lost earnings, as well as $900,000 in
damages for past pain and suffering and $900,000 for future pain and suffering.**

**Facts:**
On Nov. 14, 2008, plaintiff Beverly Dodd, 66, was terminated from her job as a legal secretary at the firm of Haight Brown &
Bonesteel LLP, located in Los Angeles. Dodd, who had been employed at the firm for roughly 20 years, was on medical leave
at the time as she received treatment for liver cancer.

Dodd sued Haight Brown & Bonesteel, alleging she was wrongfully terminated due to her age, medical condition, disability
and her high rate of compensation, in violation of Federal and State Law.

Beverly Dodd v. Haight Brown & Bonesteel LLP, 2010 WL 4845803 (2010)

Dodd contended that at the time of her termination she had 10 days remaining on 12 weeks of unpaid leave under the Family Medical Leave Act, for treatment of her liver cancer. She claimed that she called the firm's human resources manager to request an additional three to six months of unpaid leave for further cancer treatment. She said she then received a Federal Express letter terminating her employment on Nov. 14, 2008, with her initial leave expiring on Nov. 24.

The law firm contended that Dodd was lawfully terminated as a result of her inability to come back to work after her FMLA leave period expired. It claimed it received a note from Dodd's doctor, which indicated that she would not be able to return after her leave since she had another six months of treatment left.

The law firm further contended that Dodd could not return in any capacity for at least a year given her physician's certifications. It also argued that Dodd did not request any reasonable accommodation and that it engaged in the interactive process to the fullest extent possible, given Dodd's refusal to allow all relevant information to be shared.

The defendant further contended that neither Dodd's age nor salary had any bearing on her termination.

She claimed she lost her annual salary of $70,000 and benefits, including a 3 percent of salary-per-year pension plan contribution, a life insurance policy, and medical insurance. She claimed that she planned to work full-time until age 70 and part-time until age 75. Dodd testified that she also suffered emotional distress as a result of her termination, and has been unable to find work thereafter.

Haight contended that Dodd's inability to work at the time her leave expired, and for at least a year after, precluded any award of damages to her. The defendant further contended that Dodd failed to mitigate her damages when she was allegedly able to return to work nearly 18 months later by seeking subsequent employment.

Insurer:

Underwriters at Lloyd's of London

ALM Properties, Inc.
Superior Court of Los Angeles County, Central

PUBLISHED IN: VerdictSearch California Reporter Vol. 9, Issue 46

---

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Jeanette A. Ybarra v. Dacor Holdings Inc., Distinctive..., 2010 WL 2404221...

2010 WL 2404221 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2015 ALM Media Properties, LLC. All Rights Reserved
Superior Court, Los Angeles County, California.

Jeanette A. Ybarra v. Dacor Holdings Inc., Distinctive Appliance Inc, and Rene Castro

No. KC-054144

DATE OF VERDICT/SETTLEMENT: February 26, 2010

TOPIC: EMPLOYMENT - WRONGFUL TERMINATION - EMPLOYMENT - AGE DISCRIMINATION - EMPLOYMENT - DISABILITY DISCRIMINATION - INTENTIONAL TORTS - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Fired Pltf With Kidney Disease Alleged Age, Disability Bigotry

**SUMMARY:**
RESULT: Verdict-Plaintiff

Award Total: $615,236

The jury found disability discrimination. Ybarra dismissed her age discrimination claim, after the jury was locked 6-6 on the question.

Ybarra was awarded $615,236.

**EXPERT WITNESSES:**
Plaintiff: Anthony E. Reading, Ph.D.; Psychology/Counseling; Beverly Hills, CA Jenny McNulty; Economics; Los Angeles, CA
Defendant: Edward J. Workman, Ph.D.; Vocational Rehabilitation; San Clemente, CA Stuart Friedman, M.D.; Nephrology; Los Angeles, CA
**ATTORNEYS:**
Plaintiff: Charles T. Mathews; Charles T. Mathews & Associates; San Marino, CA (Jeanette A. Ybarra); Deane L. Shanander; Charles T. Mathews & Associates; San Marino, CA (Jeanette A. Ybarra)
Defendant: Michelle T. Harrington; Stone & Hiles; Los Angeles, CA (Dacor Holdings Inc., Rene Castro); Paula G. Tripp; Anderson, McPharlin & Conners; Los Angeles, CA (Dacor Holdings Inc., Rene Castro)

JUDGE: Robert A. Dukes

RANGE AMOUNT: $500,000-999,999

STATE: California
COUNTY: Los Angeles

**INJURIES: Ybarra claimed past and future lost earnings and benefits, insisting that she had difficulty finding a new job due to her age, medical condition and the current economical climate. Ybarra alleged that she had intended to work at Dacor until retirement.**

Facts:

Jeanette A. Ybarra v. Dacor Holdings Inc., Distinctive..., 2010 WL 2404221...

In May 1991, plaintiff Jeanette Ybarra was hired by Dacor Holdings Inc. as a sales coordinator. She was then promoted to the position of inventory control coordinator, working at the company's distribution center in the City of Industry.

In 1996, Ybarra began dialysis treatment for a congenital kidney disease, which she administered to herself at work, two times a day. Approximately two years later, Ybarra developed a severe peritonitis and went off work for eight months. On her return, she began renal hemodialysis, which required her to come into work early three days a week.

In January 2008, Ybarra missed four weeks of work due to an infection. She claimed that before her infection, in late 2007, her supervisor, Rene Castro, began taking her job duties away from her. Ybarra also claimed that the company accumulated her missed time as negative 960 hours in sick days, which forced her to use vacation days.

On April 1, 2008, Ybarra was terminated as Castro informed that her position was being eliminated.

Ybarra sued Dacor and Castro, as well as Distinctive Appliance Inc., the holdings company that owned Dacor, alleging wrongful termination, disability discrimination, age discrimination and intentional infliction of emotional distress.

Distinctive was discontinued from the case prior to trial.

Ybarra claimed that her illness and age eventually led to her discharge. She asserted that Castro made efforts to exclude her from activity with younger coworkers and that his decision to take away her responsibilities was in response to her medical condition.

Ybarra further purported that the company was undergoing a change in health insurance coverage, and the new provider had increased rates for employees with pre-existing conditions. Ybarra alleged that all the combined factors led to her being the first Dacor employee to be laid off.

In regard to the age discrimination claim, she charged that the company fired several employees who were over the age of 40 while promoting younger individuals.

The defense responded that Ybarra was not fired due to her age or disability, and that she was just an unlucky employee in regard to company layoffs. The defendants further claimed that the plaintiff's performance was becoming weak, and her work wasn't timely enough, also contributing to her termination.

Ybarra countered that her performance didn't suffer as a result of her medical condition, and that her annual performance appraisals were always good. She contended that she received a score of 3 or 4 in her reviews, with 3 being deemed as "efficient" and 4 being "commendable."

Ybarra also sought past and future medical costs due to her affected coverage after termination. She additionally sought pain and suffering damages.

The defense contested Ybarra's damages, arguing that if she were awarded anything, it should be reduced due to her shortened life expectancy. Counsel contended that Ybarra should have been able to obtain a new job within a year of termination.

ALM Properties, Inc.
Superior Court of Los Angeles County, Pomona

PUBLISHED IN: VerdictSearch California Reporter Vol. 9, Issue 24

---

End of Document                                 © 2015 Thomson Reuters. No claim to original U.S. Government Works.

16 Trials Digest 12th 17, 2009 WL 999514 (C.D.Cal.) (Verdict and Settlement Summary)

Copyright (c) 2015 Thomson Reuters/West
United States District Court, C.D. California, Western Division.

Malone vs. Potter

**TOPIC:**

Synopsis: Mail carrier claims he was targeted because of disability

Case Type: Labor & Employment; Termination/Constructive Discharge; Labor & Employment; Discrimination; Labor & Employment; Disability/Medical Condition; Labor & Employment; Retaliation

DOCKET NUMBER: 07CV05530(MMM)

STATE: California
COUNTY: Not Applicable

Verdict/Judgment Date: March 10, 2009

JUDGE: Margaret M. Morrow
**ATTORNEYS:**
Plaintiff: Andrew M. Wyatt, Law Offices of Andrew M. Wyatt, Woodland Hills.
Defendant: Gwendolyn M. Gamble, Office of U. S. Attorney, Los Angeles; Thomas P. O'Brien, Office of U. S. Attorney, Los Angeles; Leon W. Weidman, Office of U. S. Attorney, Los Angeles.

**SUMMARY:**

Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $300,000

Range: $200,000-499,999
$300,000 for disability discrimination and retaliation.

Trial Type: Jury

Deliberations: Not reported.

Jury Poll: Not reported.

**EXPERTS:**
Plaintiff: Barbara Ammons, Ph.D., psychologist, Diamond Bar.; Lawrence Ball, human resources consultant, Human Resources Management Network, Fullerton.; Anand Khemlani, economist.
Defendant: Thomas J. Grogan, M.D., orthopedic surgeon, Santa Monica, (310) 828-5441.; Brian P. Jacks, M.D., psychiatrist, Beverly Hills, (310) 274-0684.; Jerald H. Udinsky, Ph.D., economist, The Udinsky Group, Berkeley, (510) 649-9000.

**TEXT:**

**CASE INFORMATION**

Malone vs. Potter, 16 Trials Digest 12th 17 (2009)

**FACTS/CONTENTIONS**

According to court records: Plaintiff Earnest J. Malone was hired as a City Carrier on August 12, 1978 and was transferred to the position of Lobby Director as a result of the Step B decision in September 2006 until he was transferred on July 12, 2007 to Custodian/Deliver connected mail to letter carrier on assignment and express mail. During the relevant period of time, plaintiff was working for defendant U.S. Postal Service.

Plaintiff alleged employment discrimination based on disability and in retaliation for protected EEO activity in violation of Title VII of the Civil Rights Act of 1964 and the Rehabilitation Act.

Plaintiff said that, during the course of his career, he was subjected to disparate treatment on the basis of disability and reprisal for protected activity. Plaintiff filed an EEO Complaint of Discrimination on August 18, 2007.

On March 17, 2005, plaintiff settled an EEO complaint with defendant in which he alleged discrimination and retaliation for filing other EEO complaints. Mike McGee, postmaster of the Compton Post Office, was identified as the responsible management official.

As a result of his ongoing conflict with management at the Compton Post Office, plaintiff developed psychological symptoms, he claimed. On June 14, 2005, plaintiff's treating physician, Dr. Barbara Ammon, diagnosed plaintiff as being temporarily totally disabled for his usual employment until July 15, 2005. On August 25, 2005, Ammon wrote a letter to the Medical Unit and released plaintiff to return to work on August 29, 2005. She advised defendant that plaintiff's medical condition had improved and that he was not a danger to himself or others. On August 26, 2005, the Associate Area Medical Director for the Medical Unit released plaintiff to return to work on August 29, 2005, without limitations.

On September 9, 2005, plaintiff wrote a letter to the Medical Unit and to McGee at the Compton Post Office, requesting that he be returned to work. On September 15, 2005, defendant notified plaintiff to return to work, but by this time, he was under Ammon's treatment for recurring work-related stress such that he could not return to work. On September 16, 2005, McGee told plaintiff that he could not return to work until he got cleared by EAP. McGee sent a copy to the Medical Unit. On September 25, 2005, Ammon sent an updated medical report and released plaintiff to return to work without restrictions. On September 30, 2005, the Associate Area Medical Director once again released plaintiff to duty without limitations. On September 30, 2005, Atwood of the EAP unit released plaintiff to duty.

On October 3, 2005, plaintiff received a phone call from the Medical Unit with instructions to report to duty on October 4, 2005. Plaintiff called the Compton Post Office and spoke to Supervisor William Perry, who informed him that McGee changed his work location and work schedule. McGee ordered plaintiff to report to Hub City as an Assistant Lobby Director. Plaintiff asked Perry why he was being transferred from the main office at Compton Post Office. Perry told him that his job had been abolished at the Compton Post Office and that he was needed as an Assistant Lobby Director at Hub City.

On October 4, 2005, plaintiff reported to duty at Hub City as an Assistant Lobby Director. His work schedule was changed from 7:00 a.m. to 3:30 p.m. to 8:30 a.m. to 5:00 p.m. Monday through Friday. Plaintiff's commute was longer because the distance from his house to Hub City was farther than his commute from his house to the Compton Main Post Office. Plaintiff claimed this practice was very common at USPS and was known as "freeway therapy" because it is a form of reprisal when management does not like an employee and wants to punish them without formal disciplinary action.

At the time of the complaint, plaintiff was employed as a City Letter Carrier performing modified duties in a limited duty assignment at the Compton Main Post Office. The limited job duty offer of Lobby Director was based on plaintiff's physical restrictions of no lifting, pushing, or pulling greater than five pounds, no repetitive or forceful gripping, no overhead activities, and no driving more than 30 minutes at one time, beginning on October 4, 2005.

The second issue involved Postmaster McGee's failure to return plaintiff to the Compton Main Post Office and to pay him his out-of-schedule and overtime pay beginning in October 2005. In a Step B grievance resolution dated May 24, 2006, representatives of USPS and National Association of Letter Carriers agreed that plaintiff should be returned to the Compton Main Post Office and be made whole for losses, including mileage and any applicable out-of-schedule pay. Plaintiff was not returned to the Compton Main Office until August 2006, over two months later. Plaintiff was not paid any of the back pay he was owed. Plaintiff said that, because of his prior EEO activity in which he won against McGee, McGee used the opportunity not to comply with the Step B decision as a means to further discriminate and retaliate against plaintiff. McGee appealed the decision as a means to further delay plaintiff's eventual return to the Main Office. McGee also claimed that there was no work available for plaintiff within plaintiff's restrictions. However, the position of Lobby Director was a position created

Malone vs. Potter, 16 Trials Digest 12th 17 (2009)

for plaintiff to accommodate his work restriction. Eventually, Labor Relations told Postmaster McGee that he had to return plaintiff to the Main Office on August 7, 2006.

Even though McGee said there were no jobs for plaintiff to come back to, plaintiff was returned to his position of Lobby Director until he was further retaliated against by a sudden reassignment at the Main Post Office. On July 12, 2007, acting-officer-in-charge, Tyrone William, reassigned plaintiff to perform custodial duties, deliver Express Mail Delivery, and connect carrier connect mail with letter carrier on assignments. Light-duty employees, such as plaintiff, were routinely sent home early, sometimes losing as much as a half-day's pay. Because plaintiff could not perform all of the duties, some of which included driving, he was sent home. Plaintiff claimed there was no justification for removing him from his light-duty assignment of Lobby Director.

From September 14, 2007 through September 19, 2007, plaintiff was denied his limited light-duty work within his medical restrictions when Williams assigned plaintiff to work on the street as a mail carrier, which exceeded his work restrictions. On September 14, 2007, plaintiff was sent home by Williams without pay and not permitted to work his assigned duties. On September 17, 2007, plaintiff told Williams that he could no longer perform street delivery and was sent home without pay instead of being given his light duty assignment. From September 14, 2007 until September 19, 2007, plaintiff was sent home because he was unable to carry business mail on the street. Plaintiff was also not allowed to complete the other 90 percent of his duties when he was sent home because of plaintiff's inability to carry mail on the street for one hour.

On September 27, 2007, Ammons placed plaintiff on total temporary disability due to work-related stress. Plaintiff did not return to the workplace after September 19, 2007 and was forced to take disability retirement.

Defendant contended the Hub City Post Office was located less than 1 mile from the Compton Main Post Office. Defendant claimed that in July 2007, the Postal Service Los Angeles District instructed postmasters that defendant needed letter carriers to perform letter carrier duties as their main job function and that window clerks would primarily perform the Lobby Director duties because window clerks were being moved to different offices as automation eliminated the need for their positions and letter carrier positions/routes were being lost.


## CLAIMED INJURIES

NA


## CLAIMED DAMAGES

According to court records:

Not reported.


## SETTLEMENT DISCUSSIONS

According to court records:

Not reported.


## COMMENTS

According to court records:

The complaint was filed on August 23, 2007.


Trials Digest, A Thomson Reuters/West business
Central District Federal Court/Los Angeles

---

   © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Beard vs. Los Angeles County Law Library, 6 Trials Digest 12th 15 (2009)

6 Trials Digest 12th 15, 2009 WL 250543 (Cal.Superior) (Verdict and Settlement Summary)

Copyright (c) 2015 Thomson Reuters/West
Superior Court, Los Angeles County, California.

Beard vs. Los Angeles County Law Library

**TOPIC:**
Synopsis: Law library employees claim supervisor discriminated against older employees

Case Type: Labor & Employment; Termination/Constructive Discharge; Labor & Employment; Age; Labor & Employment; Discrimination; Labor & Employment; Harassment-General; Labor & Employment; Race/National Origin; Labor & Employment; Violation of Public Policy; Labor & Employment; Retaliation

DOCKET NUMBER: BC381575

STATE: California
COUNTY: Los Angeles

Verdict/Judgment Date: January 7, 2009

JUDGE: Ruth A. Kwan
**ATTORNEYS:**
Plaintiff: Carol L. Gillam, The Gillam Law Firm, Los Angeles; John A. Haubrich Jr., The Gillam Law Firm, Los Angeles; Shawna Rasul, The Gillam Law Firm, Los Angeles.
Defendant: Katherine A. Hren, Ballard, Rosenberg, Golper & Savitt, Universal City; Linda Miller Savitt, Ballard, Rosenberg, Golper & Savitt, Universal City.

**SUMMARY:**

Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $146,000

Range: $100,000-199,999
Defendant LACLL filed a motion for summary judgment as to plaintiff Reynolds. The court granted the motion as to plaintiff's third, fourth, seventh, and eighth causes of action and denied the motion as to the first and fifth causes of action. The jury found in favor of plaintiff Reynolds on the remaining causes of action and awarded her $86,000 in past economic loss and $60,000 in future economic loss. The outcome of plaintiff Beard's claims was unknown.

Trial Type: Jury

Deliberations: Not reported.

Jury Poll: Not reported.

**EXPERTS:**
Plaintiff: Not reported.
Defendant: Not reported.

Beard vs. Los Angeles County Law Library, 6 Trials Digest 12th 15 (2009)

**TEXT:**

**CASE INFORMATION**

**FACTS/CONTENTIONS**

According to court records: In August 2005, defendant Los Angeles County Law Library ("LACLL") hired defendant Marcia Koslov as executive director. Plaintiffs Betty Beard and Diane Reynolds and other library staff allegedly noticed defendant Koslov's inability to control her temper. Defendant Koslov used curse words frequently, screamed at staff, and threatened their jobs. Defendant LACLL paid for defendant Koslov to attend anger management sessions.

Plaintiff Reynolds, age 60, had spent her entire career after law school with defendant LACLL employed as director of reference and research. Plaintiff Reynolds said her 38-year employment came to an end not long after defendant Koslov was hired. Plaintiff alleged defendant Koslov was determined to get rid of older employees, despite the lack of any legitimate cause. Plaintiff Reynolds also alleged she was subjected to a hostile work environment perpetuated by defendant Koslov. Plaintiff Reynolds claimed defendant Koslov began removing duties from her and also threatened plaintiff Reynolds when she wouldn't write false negative evaluations to justify others' terminations. Plaintiff Reynolds said defendant Koslov pressured her to retire and on February 26, 2007, defendant Koslov gave plaintiff an ultimatum, either announce her retirement or be terminated. Plaintiff Reynolds was constructively terminated on March 13, 2007.

Plaintiff Beard, a 55-year-old African-American human resources manager for defendant LACLL, alleged her employment also ended soon after defendant Koslov was hired.

Plaintiffs alleged age discrimination, race/national origin discrimination, harassment, retaliation, failure to prevent harassment, wrongful termination in violation of public policy, wrongful constructive termination, and breach of implied contract.

**CLAIMED INJURIES**

According to court records:

Emotional distress.

**CLAIMED DAMAGES**

According to court records:

Not reported.

**SETTLEMENT DISCUSSIONS**

According to court records:

Not reported.

**COMMENTS**

According to court records:

The complaint was filed on December 3, 2007.

Trials Digest, A Thomson Reuters/West business
Los Angeles County Superior Court/Downtown

**Beard vs. Los Angeles County Law Library, 6 Trials Digest 12th 15 (2009)**

End of Document

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

**Exhibit F**

43 Trials Digest 16th 11, 2013 WL 5820140 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2015 Thomson Reuters/West
Superior Court, Los Angeles County, California.

Silverman vs. Stuart F. Cooper Inc.

**TOPIC:**
Synopsis: Terminated employee claims age discrimination

Case Type: Labor & Employment; Discrimination; Labor & Employment; Age; Labor & Employment; Harassment-General; Labor & Employment; Termination/Constructive Discharge

DOCKET NUMBER: BC467464

STATE: California
COUNTY: Los Angeles

Verdict/Judgment Date: July 19, 2013

JUDGE: Deirdre H. Hill
**ATTORNEYS:**
Plaintiff: Allen J. Beck, Gleason & Favarote, Los Angeles; Paul M. Gleason, Gleason & Favarote, Los Angeles; Janet S. Yavrouian, Gleason & Favarote, Los Angeles.
Defendant: Charles J. Schufreider, Barton, Klugman & Oetting, Los Angeles.

**SUMMARY:**
Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $325,223

Range: $200,000-499,999
$133,222 to plaintiff for past loss of earnings

$40,668 to plaintiff for future loss of earnings

$116,333 to plaintiff for past emotional distress

$35,000 to plaintiff for future emotional distress

The jury found defendants Stuart F. Cooper Inc. or Burdge Cooper Inc. acted with oppression, fraud or malice but declined to award punitive damages.

Trial Type: Jury

Deliberations: Not reported.

Jury Poll: Not reported.

Silverman vs. Stuart F. Cooper Inc., 43 Trials Digest 16th 11 (2013)

**EXPERTS:**
Plaintiff: Not reported.
Defendant: Not reported.

**TEXT:**

**CASE INFORMATION**

**FACTS/CONTENTIONS**
According to court records: Plaintiff Joe Silverman was hired by defendant Stuart F. Cooper Inc. in 1994 as a salesman. Plaintiff said he was compensated with a base salary, commission, expense reimbursement and medical benefits, regardless of sales performance. Plaintiff said his sale performance fluctuated, but he was never subjected to discipline, and he achieved an acceptable sales record. In August 2009, plaintiff was reportedly demoted by defendant David Overgaar, defendant Stuart Cooper's president, without warning and his compensation package was changed. His compensation change converted him to 100 percent commission and limited his automobile reimbursement to $200 per month. Plaintiff said the company had never forced such a compensation package on any other employee. The new package also established a sales quota for plaintiff in order to return to his prior compensation plan. He said he was required to have sales of at least $90,000 over a six-month period with no single job accounting for more than 30 percent of sales. This quota was unprecedented and never applied to other sales employees, plaintiff claimed.
In November 2009, another sales representative, 49, was allegedly hired with a salary plus commissions compensation package.
In October 2010 plaintiff, 76, apparently filed a claim for age discrimination with the Department of Fair Employment and Housing based on the demotion and his change in compensation. Within six months of his complaint, plaintiff said, plaintiff was terminated by defendant Burdge Cooper Inc. for the pretextual reason of "poor attitude."
Plaintiff alleged age discrimination in violation of the Fair Employment and Housing Act and public policy, unlawful retaliation in violation of the FEHA, age harassment in violation of the FEHA, failure to prevent discrimination and harassment in violation of the FEHA, wrongful termination in violation of public policy and failure to pay final wages and waiting time penalties.

**CLAIMED INJURIES**
According to court records:
Emotional distress.

**CLAIMED DAMAGES**
According to court records:
Not reported.

**SETTLEMENT DISCUSSIONS**
According to court records:

Not reported.

**COMMENTS**
According to court records:

The complaint was filed Aug. 12, 2011.

Silverman vs. Stuart F. Cooper Inc., 43 Trials Digest 16th 11 (2013)

Trials Digest, A Thomson Reuters/West business
Los Angeles County Superior Court/Downtown

**End of Document**                                          © 2015 Thomson Reuters. No claim to original U.S. Government Works.

VASQUEZ v. LOS ANGELES COUNTY METROPOLITAN..., JVR No. 1402210041...

JVR No. 1402210041, 2013 WL 7852947 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2015 Thomson Reuters/West
Superior Court, Los Angeles County, California.

VASQUEZ v. LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY

BC484335
DATE OF FILING: October 25, 2012
DATE OF TRIAL/SETTLEMENT: November 12, 2013

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $1,904,635**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**Related Court Documents:**
Plaintiff's second amended complaint: 2012 WL 10007313

Defendant's trial brief: 2013 WL 6506751

Verdict form: 2013 WL 6506795

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: Scott O. Cummings, Cummings & Franck P.C., Gardena, CA
Plaintiff: Lee Franck, Cummings & Franck P.C., Gardena, CA
Defendant: Calvin R. House, Gutierrez Preciado & House L.L.P., Pasadena, CA
Defendant: Caroline Shahinian, Gutierrez, Preciado & House L.L.P., Pasadena, CA

JUDGE: Kevin C. Brazile

RANGE AMOUNT: $1,000,000 - 1,999,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: M

Age: Adult

General Occupation: General Laborer

**DEFENDANT:**

VASQUEZ v. LOS ANGELES COUNTY METROPOLITAN..., JVR No. 1402210041...

Sex: O

Organization Type: Los Angeles County Metropolitan Transportation Authority

**DAMAGES:**
Compensatory Pain & Suffering: $1,250,000

Compensatory Future Medical: $185,000

Compensatory Past Wages: $84,348

Compensatory Future Wages: $385,287

Total Compensatory Award: $1,904,635

Punitive Damages: $0

Hedonic Damages: $0

Property Damages: $0

Interest: $0

Other Damages: $0

Loss of Services: $0

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: true

Failure Grant Leave: true

Failure Hire: true

Failure Promote: false

Suspension: true

Sexual Harassment: false

VASQUEZ v. LOS ANGELES COUNTY METROPOLITAN..., JVR No. 1402210041...

Harassment: true

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: true

Restrictions: false

Termination: true


**Entity Type: Government Entity**
**STATUTES**
**Primary Specific Statute**
Primary Name: State


**Primary General Statute**
**Primary Name: Disability Discrimination**
Primary General Statute Discrimination: true

Specific Statute: State


**General Statute: Family and Medical Leave**
General Statute Discrimination: false

Specific Statute: General

VASQUEZ v. LOS ANGELES COUNTY METROPOLITAN..., JVR No. 1402210041...

**General Statute: Retaliation**
General Statute Discrimination: false

Comparative Negligence Percentage: 0

**FACTS:**
Raphael Vasquez, a former bus driver, sued the Los Angeles County Metropolitan Transportation Authority for disability discrimination, failure to accommodate, failure to engage in the interactive process, in violation of the Americans with Disabilities Act (ADA), and interference with the Family and Medical Leave Act (FMLA) and the California Family Rights Act (CFRA), and retaliation in violation of the Fair Employment and Housing Act (FEHA) Cal. Gov't. Code Secs. 12940 et seq. The plaintiff alleged during his employment, he suffered from a variety of disabilities, including but not limited to gout, cataracts, blurry vision, diabetes, for which he treated with doctors, and in January 2010, he requested a medical leave of absence for hip replacement surgery due to Avascular Necrosis of the femur, which the defendant admitted he was eligible for, and he provided the necessary documentation indicating he would be out for approximately five months. He asserted following the surgery, his doctor provided a note that he was unable to work until June 1, 2010 due to Trochanteric Bursitis, and aftercare from his hip replacement, thereafter, he was cleared to return to work. Vazquez claimed in November 2010, he had cataract surgery, but the defendant began to use his disabilities for adverse actions, including discipline and suspensions, and in January 2011, he was terminated, and the proffered reason for his termination was his attendance. He asserted the defendant failed to engage in a timely, good faith, interactive process to determine the most effective reasonable accommodations for him, discouraged the use of FMLA leave, which violated the CFRA, and that his disability, his request for and/or taking medical leave were substantial motivating factors in the decision to terminate him. The defendant denied the allegations and contended the plaintiff was charged with excessive absenteeism after accumulating eight absences within a 12-month period, and at his discharge hearing he told the hearing officer he was in perfect health, but that he had treated some medical conditions. The defendant argued that the officer had no reason to believe the plaintiff might be disabled, and terminated him for violating it's attendance policy.

Jury Verdict Research
COURT: Superior

---

**End of Document**                                      © 2015 Thomson Reuters. No claim to original U.S. Government Works.

ABOULAFIA v. GACN INC. D/B/A CABLE'S RESTAURANT, JVR No. 1403200023 (2013)

JVR No. 1403200023, 2013 WL 8115991 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2015 Thomson Reuters/West
Superior Court, Los Angeles County, California.

ABOULAFIA v. GACN INC. D/B/A CABLE'S RESTAURANT

BC469940
DATE OF FILING: September 23, 2011
DATE OF TRIAL/SETTLEMENT: December 17, 2013

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $5,681,682**
HIGH AMOUNT: $0

LOW AMOUNT: $0


**Related Court Documents:**
Plaintiffs' complaint: 2011 WL 6463766

Verdict form: 2013 WL 6870002

Verdict form (punitive damages): 2013 WL 6869977


**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: James R. Rosen, Rosen Saba LLP, Beverly Hills, CA
Plaintiff: Elizabeth L. Bradley, Rosen Saba LLP, Beverly Hills, CA
Plaintiff: Jonathan S. Dennis, Rosen Saba LLP, Beverly Hills, CA
Defendant: Eric J. Erickson, Lewis, Brisbois, Bisgaard & Smith LLP, Los Angeles, CA
Defendant: Christopher M. Habashy, Lewis, Brisbois, Bisgaard & Smith LLP, Los Angeles, CA
Defendant: Marie Dominguez-Gasson, Lewis, Brisbois, Bisgaard & Smith LLP, Los Angeles, CA

JUDGE: Yvette Palazuelos

RANGE AMOUNT: $5,000,000 - 999,999,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: Martha Aboulafia: F

Age: Adult, 58


General Occupation: Food Service Worker

---

ABOULAFIA v. GACN INC. D/B/A CABLE'S RESTAURANT, JVR No. 1403200023 (2013)

Sex: Cheryl B. Colgin: F

Age: Adult, 58

General Occupation: Food Service Worker

Sex: Patricia Monica: F

Age: Adult, 67

General Occupation: Food Service Worker

Sex: Regina Greene: F

Age: Adult, 46

General Occupation: Food Service Worker

**DEFENDANT:**
Sex: O

General Occupation: Restaurant, Nightclub or Tavern

Organization Type: GACN Inc. d/b/a Cable's Restaurant

**DAMAGES:**
Compensatory Pain & Suffering: Martha Aboulafia: $250,000

Compensatory Past Wages: Martha Aboulafia: $58,164

Compensatory Future Wages: Martha Aboulafia: $53,592

Total Compensatory Award: Martha Aboulafia: $361,756

Compensatory Pain & Suffering: Cheryl B. Colgin: $250,000

Compensatory Past Wages: Cheryl B. Colgin: $66,262

Compensatory Future Wages: Cheryl B. Colgin: $131,372

Total Compensatory Award: Cheryl B. Colgin: $447,634

Compensatory Pain & Suffering: Patricia Monica: $250,000

Compensatory Past Wages: Patricia Monica: $95,588

Compensatory Future Wages: Patricia Monica: $157,486

ABOULAFIA v. GACN INC. D/B/A CABLE'S RESTAURANT, JVR No. 1403200023 (2013)

Total Compensatory Award: Patricia Monica: $503,074

Compensatory Pain & Suffering: Regina Greene: $250,267

Compensatory Past Wages: Regina Greene: $56,613

Compensatory Future Wages: Regina Greene: $62,338

Total Compensatory Award: Regina Greene: $369,218

Punitive Damages: $1,000,000

Hedonic Damages: $0

Property Damages: $0

Interest: $0

Other Damages: $0

Loss of Services: $0

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: false

Harassment: true

Hostile Work Env: false

Isolation: false

ABOULAFIA v. GACN INC. D/B/A CABLE'S RESTAURANT, JVR No. 1403200023 (2013)

Lay Off: false

Loss Benefits: false

Loss Pay: true

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true

**Entity Type: Service/Retail Company**
**STATUTES**
**Primary Specific Statute**
Primary Name: State

**Primary General Statute**
**Primary Name: Age Discrimination**
Primary General Statute Discrimination: true

Specific Statute: General

**General Statute: Wrongful Termination**
General Statute Discrimination: false

Comparative Negligence Percentage: 0

**FACTS:**
58-year-old Martha Aboulafia, 58-year-old Cheryl B. Colgin, 46-year-old Regina Greene, and 67-year-old Patricia Monica, formerly employed as servers, sued GACN Inc. d/b/a Cable's Restaurant, for age discrimination, wrongful termination, in violation of California's public policy, and failure to provide rest periods and/or 30 minute meal periods, pursuant to Cal. Lab. Code Sec. 226.7. The plaintiffs claimed during their employment, they were never the subject of any negative reviews or

ABOULAFIA v. GACN INC. D/B/A CABLE'S RESTAURANT, JVR No. 1403200023 (2013)

disciplinary actions until the restaurant came under new ownership, thereafter, they experienced negative treatment, a reduction in hours, and sudden complaints about job performance. They alleged after the transfer of ownership, suddenly they were systematically harassed, wrongfully terminated, and were replaced by younger female servers. Aboulafia, who worked for the defendant for more than 17 years, contended after the transfer of ownership, two days later she was terminated allegedly because business was slow, and she was told that an unidentified customer had complained about her. Colgin, who worked for the restaurant for more than 14 years, alleged she was also told two days after the transfer that she was no longer needed, but the manager called her again 10 minutes later, and fired her a second time, likely not remembering he had terminated her minutes earlier. Greene, who worked for the restaurant for three years, claimed that after the transfer, she was instructed to train newly hired younger female employees, but seven months later her manager falsely accused her of being under the influence of drugs and/or alcohol, terminated her, and subsequently falsely reported to the California Employment Development Department that she had voluntarily resigned in its attempt to avoid paying her unemployment benefits. Monica, who was employed for 13 years, asserted she was terminated two days after the transfer purportedly because her services were no longer needed, and business was slow. The defendant denied the allegations and contended it used nondiscriminatory factors to facilitate the layoffs, including identifying servers with flexible schedules and a willingness to work with all customers, and that it retained 11 servers employed by former management, and eight of those servers were within the protected class, ranging from 45 to 75 years old. The defendant also claimed the plaintiffs were allowed to take appropriate rest breaks. The jury awarded Aboulafia $1,361,756, Colgin $1,447,634, and Monica $1,503,074 for their age discrimination claims, and Greene's award included $952 for missed rest periods for a total award of $1,369,218.


Jury Verdict Research
COURT: Superior


**End of Document**                                           © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Ward vs. Cadbury Schweppes Bottling Group, 10 Trials Digest 15th 7 (2011)

10 Trials Digest 15th 7, 2011 WL 7447633 (C.D.Cal.) (Verdict and Settlement Summary)

Copyright (c) 2015 Thomson Reuters/West
United States District Court, C.D. California, Western Division.

Ward vs. Cadbury Schweppes Bottling Group

**TOPIC:**
Synopsis: Truck drivers claim age discrimination resulted in constructive discharge

Case Type: Labor & Employment; Age; Labor & Employment; Termination/Constructive Discharge

DOCKET NUMBER: 09CV03279(DMG)

STATE: California
COUNTY: Not Applicable

Verdict/Judgment Date: December 7, 2011

JUDGE: Dolly M. Gee
**ATTORNEYS:**
Plaintiff: Michael F. Baltaxe, Law Offices of Michael F. Baltaxe, Westlake Village; Wendy K. Marcus, Law Offices of Timothy B. Sottile, Westlake Village; Timothy B. Sottile, Law Offices of Timothy B. Sottile, Westlake Village.
Defendant: Daryl M. Crone, Crone Hawxhurst, Los Angeles; Joshua Paul Gelbart, Crone Hawxhurst, Los Angeles; Gerald E. Hawxhurst, Crone Hawxhurst, Los Angeles; Diyari Vazquez, Crone Hawxhurst, Los Angeles.

**SUMMARY:**

Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $17,899,400

Range: $5,000,000-999,999,999
Plaintiff Ward: $133,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $350,000 for past and future physical impairment, including psyche, hypertension, stomach, sleeplessness, anxiety, and chest pain; $1,800,000 punitive damages. Plaintiff Jones: $44,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $71,214,000 punitive damages. Plaintiff Suhay: $71,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $200,000 past and future physical impairment, including hernia and shoulder surgeries; $1,542,000 punitive damages. Plaintiff Valadez: $130,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $500,000 past and future physical impairment, including right knee surgery; $2,043,000 punitive damages. Plaintiff Talton: $144,000 past income; $500,000 past and future medical expenses; $800,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $200,000 past and future physical impairment, including back and stress; $1,753,000 punitive damages. Plaintiff January: $140,000 past income; $800,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $200,000 past and future physical impairment, including shoulder stress and strain; $1,335,400 punitive damages.

Trial Type: Jury

Ward vs. Cadbury Schweppes Bottling Group, 10 Trials Digest 15th 7 (2011)

Trial Length: 13 days.

Deliberations: 1 day.

Jury Poll: Not reported.

**EXPERTS:**
Plaintiff: Jeff Nelken B.S., M.A., R.D., food safety, Woodland Hills, (310) 273-5492.; Karen Lynn Smith, M.A., economist, Adams Smith Economics, San Marino, (626) 796-4040.
Defendant: Not reported.

**TEXT:**

**CASE INFORMATION**

**FACTS/CONTENTIONS**
    According to court records: Plaintiffs Robert M. Ward, Robert E. Jones, Jose M. Valadez, Leonard Talton, Gary Suhay, and Alfonso W. January were employed by defendants Cadbury Schweppes Bottling Group, Cadbury Schweppes Holdings Inc., 7-Up/RC Bottling Company of Southern California, Dr. Pepper Snapple Group, and American Bottling Company.
    Plaintiffs alleged defendants, through upper management, implemented and enforced an unwritten policy of discrimination against older employees, including plaintiffs. Plaintiffs claimed defendants assigned the older truck drivers more difficult and physically taxing routes so they would quit or become injured, transferred the older forklift operators to more difficult and strenuous duties so that they would quit or become injured, piled work on plaintiffs so that they would quit or become injured, and wrote some plaintiffs up for frivolous and pre-textual reasons.
    Plaintiffs alleged discrimination based on age, failure to prevent discrimination or retaliation, constructive discharge in violation of public policy, failure to engage in good-faith interactive process, and failure to accommodate.

**CLAIMED INJURIES**
    According to court records:
    Hypertension; stomach; sleeplessness; anxiety; chest pain; hernia; shoulder; knee; anxiety; emotional distress; back.

**CLAIMED DAMAGES**
    According to court records:
    Not reported.

**SETTLEMENT DISCUSSIONS**
According to court records:

Not reported.

**COMMENTS**
According to court records:

The complaint was filed in Los Angeles Superior Court, case number BC410112. It was removed to federal court on May 8, 2009.

**Ward vs. Cadbury Schweppes Bottling Group, 10 Trials Digest 15th 7 (2011)**

Trials Digest, A Thomson Reuters/West business
Central District Federal Court/Los Angeles

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

WELCH v. IVY HILL CORP., JVR No. 1105250063 (2011)

JVR No. 1105250063, 2011 WL 3293268 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2015 Thomson Reuters/West
Superior Court, Los Angeles County, California.

WELCH v. IVY HILL CORP.

BC414667
DATE OF TRIAL: March 08, 2011

TOPIC:

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total Verdict: $1,270,000**
**Judge Reduced Award To:**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: Carney R. Shegerian, Santa Monica, CA
Defendant: Kelly O. Scott, Beverly Hills, CA
Karina B. Sterman, Beverly Hills, CA
Jennifer S. Grock, Beverly HIlls, CA

JUDGE: Not Available

RANGE AMOUNT: $1,000,000 - 1,999,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: Female

Age: Adult, 62

**DECEDENT:**
**DEFENDANT:**
Sex: Organization

Inactive Defendant (for organization): Ivy Hill Corp.

Policy Limit:

WELCH v. IVY HILL CORP., JVR No. 1105250063 (2011)

Other Expenses: $0

**ENTITY TYPE: General Business Entity**
**DAMAGES:**
Compensatory Past Medical Award: $0

Compensatory Future Medical Award: $0

Compensatory Past Wages Award: $0

Compensatory Future Wages Award: $0

Compensatory Pain And Suffering Award: $1,270,000

Other Compensatory Award: $0

Total Compensatory Award: $1,270,000

Punitive Damages: $0

Hedonic Damages: $0

Property Damages: $0

Other Damages: $0

Interest: $0

Loss of Service: $0

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

WELCH v. IVY HILL CORP., JVR No. 1105250063 (2011)

Sexual Harassment: false

Harassment: true

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true

**STATUTES**
**Primary Specific Statute**
Primary Name: State

**Primary General Statute**
Primary Name: Age Discrimination

Primary general Statute Discrimination: true

Comparative Negligence Percentage: 0

**FACTS:**
A 62-year-old former account executive sued the defendant company claiming age discrimination in violation of state law.
The plaintiff alleged that the defendant wrongfully terminated her due to her age, that her most profitable accounts were taken

WELCH v. IVY HILL CORP., JVR No. 1105250063 (2011)

rom her, and that she was harassed by her supervisor. The defendant denied the allegations and claimed that the plaintiff was terminated due to a shutdown after the company was sold, and that it was the decision of the acquiring company as to whom it would hire. The defendant further contended that the plaintiff's most profitable account was taken from her t the request of the client.

Jury Verdict Research
COURT: Superior

End of Document                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

LIEMANDT v. MEGA RV CORP., JVR No. 1104250047 (2011)

JVR No. 1104250047, 2011 WL 2912831 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2015 Thomson Reuters/West
Superior Court, Orange County, California.

LIEMANDT v. MEGA RV CORP.

30-2010-00388086
DATE OF TRIAL: February 04, 2011

TOPIC:

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total Verdict: $435,000**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: John A. Belcher, Pasadena, CA
Jeremy Golan, Los Angeles, CA
Defendant: William J. Tebbe, Los Angeles, CA
Adam K. Obeid, Irvine, CA

JUDGE: Not Available

RANGE AMOUNT: $200,000 - 499,999

STATE: California
COUNTY: Orange

**SUMMARY**
**PLAINTIFF:**
Sex: Male

Age: Adult, 68

**DECEDENT:**
**DEFENDANT:**
Sex: Organization

Inactive Defendant (for organization): Mega RV Corp.

Policy Limit:

Other Expenses: $0

LIEMANDT v. MEGA RV CORP., JVR No. 1104250047 (2011)

**ENTITY TYPE: General Business Entity**
**DAMAGES:**
Compensatory Past Medical Award: $0

Compensatory Future Medical Award: $0

Compensatory Past Wages Award: $0

Compensatory Future Wages Award: $0

Compensatory Pain And Suffering Award: $385,000

Other Compensatory Award: $0

Total Compensatory Award: $385,000

Punitive Damages: $50,000

Hedonic Damages: $0

Property Damages: $0

Other Damages: $0

Interest: $0

Loss of Service: $0

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: true

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

LIEMANDT v. MEGA RV CORP., JVR No. 1104250047 (2011)

Sexual Harassment: false

Harassment: false

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true


**STATUTES**
**Primary Specific Statute**
Primary Name: State


**Primary General Statute**
Primary Name: Age Discrimination

Primary general Statute Discrimination: true

Comparative Negligence Percentage: 0


**FACTS:**
A 68-year-old salesman sued the defendant claiming age discrimination in violation of state law. The plaintiff contended that the defendant wrongfully terminated him due to his age after it demoted him from his management position to a sales position on his return to work after suffering a massive heart attack. The defendant denied the allegations and claimed that the plaintiff

LIEMANDT v. MEGA RV CORP., JVR No. 1104250047 (2011)

was fired for poor performance and insubordination. It further claimed that more than 70 percent of its employees were more than 50-years-old.

Jury Verdict Research
COURT: Superior

---

End of Document                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

O'Connor vs. UHS-Corona Inc., 34 Trials Digest 14th 11 (2011)

34 Trials Digest 14th 11, 2011 WL 3606915 (Cal.Superior) (Verdict and Settlement Summary)

Copyright (c) 2015 Thomson Reuters/West
Superior Court, Riverside County, California.

O'Connor vs. UHS-Corona Inc.

**TOPIC:**

Synopsis: Nurse alleges retaliatory termination in violation of CFRA

Case Type: Labor & Employment; Retaliation; Labor & Employment; Termination/Constructive Discharge; Labor & Employment; Family & Medical Leave; Defamation; Other; Labor & Employment; Violation of Public Policy

DOCKET NUMBER: RIC516507

STATE: California
COUNTY: Riverside

Verdict/Judgment Date: January 20, 2011

JUDGE: Lillian Y. Lim
**ATTORNEYS:**

Plaintiff: Jeffrey A. Rager, Rager Law Firm, Torrance; Melanie Rasic Savarese, Savarese Law Firm, Sierra Madre.
Defendant: Tracie Childs, Manning & Marder, Kass, Ellrod, Ramirez, San Diego; Al De La Cruz, Manning & Marder, Kass, Ellrod, Ramirez, San Diego.

**SUMMARY:**

Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $1,630,334

Range: $1,000,000-1,999,999
$130,334 past economic loss; $1,000,000 past non-economic loss; $500,000 future non-economic loss against defendants UHS-Corona Inc. dba Corona Regional Medical Center and UHS of Delaware Inc. During a concurrent bench trial, the court ruled that Universal Health Services Inc. was not a single or joint employer of plaintiff, and judgment was issued in favor of Universal Health Services Inc. as against plaintiff.

Trial Type: Jury

Deliberations: Not reported.

Jury Poll: Not reported.

**EXPERTS:**
Plaintiff: Not reported.
Defendant: Not reported.

**TEXT:**

O'Connor vs. UHS-Corona Inc., 34 Trials Digest 14th 11 (2011)

## CASE INFORMATION

### FACTS/CONTENTIONS

According to court records: On March 25, 2003, plaintiff Doreen O'Connor began her employment with defendants Corona Regional Medical Center, Universal Health Services Inc. ("UHS"), Brenda Schicker, Ruth Battles, and May Walsh as an RN on the nursery staff from 7:00 a.m. to 7:00 p.m.

On July 9, 2003, plaintiff's Performance Review read, "Doreen meets or exceeds all standards of performance. She is very willing to learn and very pleasant with patients and co-workers. It is a pleasure to have Doreen on staff, she has experienced some very busy shifts and is doing an excellent job."

On March 23, 2005, plaintiff was rated overall as "Exceeds Requirements." The review stated, "Doreen has been very helpful in some of the changes that have taken place in our department. She developed two of the tests that were used for competencies in our mother-baby department. Doreen is a very knowledgeable and skilled nurse here at Corona and we are lucky to have her here as part of our staff."

In April 2006, plaintiff was promoted to Charge Nurse. In October 2007, defendant Brenda Schicker was hired as Education Manager.

In February and March 2008, plaintiff was on a protected medical leave for diabetes and asthma. Upon return from her medical leave, she was presented with a performance review in May 2008. She received a lower rating and was told not to be "emotional" when presenting concerns to her director. Plaintiff was informed that she was "not giving as much as before because of her medical condition."

On October 8, 2008, plaintiff was informed she was fired by defendants Schicker, Battles, and Walsh. In the presence of others, plaintiff was accused of "harassing, stocking [sic], and spying, on the nursing staff." She was accused of "inappropriate behavior and inappropriate language." She was told that the staff felt "threatened" by her.

Plaintiff filed suit for Retaliation in Violation of the California Family Rights Act, Wrongful Termination in Violation of Public Policy, Retaliatory Termination in Violation of Public Policy, and Defamation Per Se.

### CLAIMED INJURIES

According to court records:
Emotional distress; major depressive disorder.

### CLAIMED DAMAGES

According to court records:
$125,723 loss of earnings.

### SETTLEMENT DISCUSSIONS

According to court records:

Not reported.

### COMMENTS

According to court records:

The complaint was filed on December 30, 2008.

Trials Digest, A Thomson Reuters/West business
Riverside County Superior Court/Central

O'Connor vs. UHS-Corona Inc., 34 Trials Digest 14th 11 (2011)

**End of Document**                              © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Peacock vs. Quest Diagnostics, 27 Trials Digest 14th 10 (2010)

27 Trials Digest 14th 10, 2010 WL 6806990 (C.D.Cal.) (Verdict and Settlement Summary)

Copyright (c) 2015 Thomson Reuters/West
United States District Court, C.D. California, Western Division.

Peacock vs. Quest Diagnostics

**TOPIC:**

Synopsis: Employee alleges discriminatory termination in violation of CFRA

Case Type: Labor & Employment; Discrimination; Labor & Employment; Termination/Constructive Discharge; Labor & Employment; Violation of Public Policy; Labor & Employment; Family & Medical Leave; Labor & Employment; Disability/Medical Condition; Labor & Employment; Retaliation

DOCKET NUMBER: 09CV09206(JHN)

STATE: California
COUNTY: Not Applicable

Verdict/Judgment Date: December 15, 2010

JUDGE: Jacqueline H. Nguyen
**ATTORNEYS:**
Plaintiff: Christopher B. Adamson, Lavi & Ebrahimian, Los Angeles; Joseph Lavi, Lavi & Ebrahimian, Los Angeles.
Defendant: Deanna L. Ballesteros, Epstein, Becker & Green, Los Angeles; David Jacobs, Epstein, Becker & Green, Los Angeles.

**SUMMARY:**

Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $229,638

Range: $200,000-499,999
$71,138 past economic; $8,500 future economic; $150,000 past non-economic.

Trial Type: Jury

Deliberations: Not reported.

Jury Poll: Not reported.

**EXPERTS:**
Plaintiff: Not reported.
Defendant: Not reported.

**TEXT:**

**CASE INFORMATION**

Peacock vs. Quest Diagnostics, 27 Trials Digest 14th 10 (2010)

## FACTS/CONTENTIONS

According to court records: Plaintiff Janeen A. Peacock was an employee of defendant Quest Diagnostics, working as a Specimen Tech II from February 2003 until approximately January 16, 2008, when she was wrongfully terminated. In the later part of 2007, plaintiff's Manager and/or Supervisor, Raymond Candeleria, started causing plaintiff severe emotional distress and depression, which manifested itself in panic attacks which were witnessed by Candeleria. Plaintiff informed Candeleria that she had been under a lot of stress at work and that was the reason for her panic attacks, which, over the months, started to increase in frequency and/or duration.

In early January 2008, plaintiff had an outburst at work in front of Candeleria. Plaintiff started crying uncontrollably in front of Candeleria and told him that her outburst was due to severe distress at work.

On January 16, 2008, plaintiff checked herself into Northridge Hospital's Emergency Room due to severe depression. On January 17, 2008, plaintiff informed defendant's Human Resources that she had been admitted into hospital for severe depression and that she had been taken off work. Plaintiff was released on January 21, 2008 and was placed on disability by her treating physician until February 5, 2008. Upon release from the hospital, plaintiff informed defendant of her disability and mailed a copy of her doctor's note placing her off work and on disability.

On January 22, 2008, plaintiff contacted defendant's Benefit Department and informed them that she had to receive psychological treatment and group therapy from January 22, 2008 to February 1, 2008. She was informed that that was okay and that defendant would follow up with plaintiff in a few days.

On February 1, 2008, plaintiff was informed by her treating physician that her insurance had been canceled. Plaintiff contacted Human Resources to find out why and was told that they did not know why.

On February 1, 2008, plaintiff received a letter dated January 31, 2008, stating that defendant had terminated plaintiff's employment for job abandonment.

Plaintiff filed suit for Discriminatory Termination in Violation of the California Family Rights Act, California Government Code § 12945.2; Violation of the California Family Rights Act, California Government Code § 12945.2(a), Interfering with the Rights and Refusing an Employee's Request for a CFRA Medical Leave; Retaliatory Termination in Violation of the California Family Rights Act, California Government Code § 12945.2, for Requesting and Going on a Medical Leave; Tortious Termination and Discrimination in Violation of Public Policy; Disability Discrimination in Violation of FEHA; Discrimination Based on Perceived Disability in Violation of FEHA; Disability Discrimination in Violation of FEHA, Failure to Provide Reasonable Accommodation; Disability Discrimination in Violation of FEHA, Failure to Engage in Interactive Process; Retaliatory Termination in Violation of FEHA for Requesting a Reasonable Accommodation; Tortious Termination and Discrimination in Violation of Public Policy Based on FEHA; and Tortious Termination, Discrimination, and Failure to Hire in Violation of Public Policy for the Right to File a Workers' Compensation Claim due to Work Related Injury.


## CLAIMED INJURIES

NA


## CLAIMED DAMAGES

According to court records:
Not reported.


## SETTLEMENT DISCUSSIONS

According to court records:

Not reported.


## COMMENTS

According to court records:

Peacock vs. Quest Diagnostics, 27 Trials Digest 14th 10 (2010)

The complaint was filed on October 29, 2009.

Trials Digest, A Thomson Reuters/West business
Central District Federal Court/Los Angeles

**End of Document**                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

**Exhibit G**

Mark A. Crawford v. DIRECTV Inc., 2010 WL 5383296 (2010)

2010 WL 5383296 (Cal.Superior) (Verdict and Settlement Summary)

Copyright (c) 2015 ALM Media Properties, LLC. All Rights Reserved
Superior Court, Los Angeles County, California.

Mark A. Crawford v. DIRECTV Inc.

No. BC417507

DATE OF VERDICT/SETTLEMENT: September 29, 2010

TOPIC: EMPLOYMENT - DISABILITY DISCRIMINATION - EMPLOYMENT - FAILURE TO ACCOMMODATE - EMPLOYMENT - WRONGFUL TERMINATION - EMPLOYMENT - RETALIATION - EMPLOYMENT - CALIFORNIA'S FAIR EMPLOYMENT & HOUSING ACT

Worker With Ptsd Said He Was Forced to Watch Combat Footage

**SUMMARY:**
RESULT: Arbitration

Award Total: $353,172

The parties entered arbitration, and the arbiter found DIRECTV had failed to offer Crawford reasonable accommodations or engage in the interactive process required by FEHA after Crawford was placed on leave. He found no wrongful termination, retaliation or discrimination.

Crawford was awarded $149,234 for past lost income, $25,200 for non-economic damages, $159,762.50 for attorney fees, $11,123.30 for arbitration costs, and $7,851.80 for prejudgment interest.

**EXPERT WITNESSES:**
Plaintiff: David T. Factor; Economics; Pasadena, CA
**ATTORNEYS:**
Plaintiff: Vincent Calderone; Bononi Law Group; Los Angeles, CA (Mark A. Crawford)
Defendant: Dianne Baquet Smith; Sheppard, Mullin, Richter & Hampton; Los Angeles, CA (DIRECTV Inc.)

JUDGE: Sherman W. Smith

RANGE AMOUNT: $200,000-499,999

STATE: California
COUNTY: Los Angeles

**INJURIES:** Crawford claimed he was terminated from his job due to DIRECTV's failure to grant him reasonable accommodation of his disability. He sought an unspecified amount for lost income and non-economic damages.

Facts:
In 1999, plaintiff Mark Crawford, a veteran of the first Gulf War, was hired as a broadcast operator at DIRECTV's Los Angeles broadcast center. In October 2006, his schedule was changed from Sunday through Wednesday to Wednesday through Sunday. He requested a return to his original schedule, claiming he was participating in therapy for post-traumatic stress disorder on

Mark A. Crawford v. DIRECTV Inc., 2010 WL 5383296 (2010)

his original days off. He also submitted a note from his social worker which stated that viewing violent images aggravated his condition. He was not returned to his original schedule.

In April 2007, Crawford was placed on administrative leave after two supervisors reported what they claimed was a threatening e-mail. After an evaluation, he was found medically unfit for his position due to his PTSD and placed on medical leave. He was terminated in April 2008 when the leave was exhausted.

Crawford sued DIRECTV, alleging violations of the Fair Employment and Housing Act, wrongful termination and retaliation. He claimed DIRECTV failed to offer him reasonable accommodations for his disability or engage in an interactive process after he was placed on leave. He alleged he requested a reasonable accommodation to a position where he would not be required to watch unedited combat footage, and that he knew of and was qualified for a number of such positions at the company. He claimed no discussions of accommodations were made after he was placed on medical leave.

DIRECTV argued that Crawford did not claim any disabilities prior to his schedule change and that it offered him reasonable accommodations such as days off, job transfers, or a leave of absence, but that he refused them. DIRECTV claimed no accommodations were possible after Crawford was placed on leave as he was never medically cleared to return to work. It further argued there were no available positions where Crawford would not be required to view violent images. The defense contended Crawford was terminated because he was not medically cleared to return to work at the time he ran out of medical leave time.

ALM Properties, Inc.
Superior Court of Los Angeles County, Central

PUBLISHED IN: VerdictSearch California Reporter Vol. 9, Issue 48

---

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

---

Davis vs. Robert Bosch Power Tool, 23 Trials Digest 8th 2 (2005)

23 Trials Digest 8th 2, 2005 WL 1421308 (Cal.Superior) (Verdict and Settlement Summary)

Copyright (c) 2015 Thomson Reuters/West
Superior Court, Los Angeles County, California.

Davis vs. Robert Bosch Power Tool

**TOPIC:**

Synopsis: Salesman alleges wrongful termination

Case Type: Employment; Termination; Discriminatory; Defamation; Unspecified; Invasion of Privacy

DOCKET NUMBER: BC310229

STATE: California
COUNTY: Los Angeles

Verdict/Judgment Date: March 4, 2005

JUDGE: Victor E. Chavez
**ATTORNEYS:**
Plaintiff: Jeffery A. Brightwell, Law Offices of Jeffery A. Brightwell, Calabasas.; Mirjana N. Tolt, Law Offices of Mirjana N. Tolt, Beverly Hills.
Defendant: Ellen Stuart, Thompson & Alessio, San Diego.; Kris P. Thompson, Thompson & Alessio, San Diego.

**SUMMARY:**

Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $263,025

Range: $200,000-$499,999
$195,000 loss of earnings; $68,025 unpaid commissions/willful failure to pay; plus statutory penalties, attorney fees, and costs. The jury voted 10 to 2 on liability, 12 to 0 on willful failure to pay.

Trial Type: Jury

Trial Length: 16 days.

Deliberations: 1.5 days.

Jury Poll: Mixed poll.

**EXPERTS:**
Plaintiff: Andrew L. Hunt, CPA, economist, White, Zuckerman, Warsavsky, Luna & Wolfe, Sherman Oaks, (818) 981-4226.; Michael A. Robbins, human resources consultant, EXTTI Inc., Bell Canyon, (818) 712-0203.
Defendant: Not reported.

**TEXT:**

Davis vs. Robert Bosch Power Tool, 23 Trials Digest 8th 2 (2005)

## CASE INFORMATION

### FACTS/CONTENTIONS

According to Plaintiff: Plaintiff Kenneth Davis, a 54-year-old salesman, was a 21-year employee of defendant Robert Bosch Tool Corporation. Following company policy, he gave rebates to vendors. Defendants Robert Bosch Tool Corporation, Robert Bosch Corporation, and Gary Tharp contended that plaintiff was taking kickbacks. They suspended plaintiff for six months without pay and then terminated him without notification. Plaintiff alleged that he was wrongfully terminated without just cause. He further alleged age discrimination, defamation, and invasion of privacy.

### CLAIMED INJURIES

NA

### CLAIMED DAMAGES

According to Plaintiff: Unpaid commissions; loss of past and future earnings and benefits.

### SETTLEMENT DISCUSSIONS

According to Plaintiff: Demand: None formal. Offer: $0 (CCP § 998).

### COMMENTS

According to Plaintiff: Jeffery A. Brightwell provided the information for this report.

Trials Digest, A Thomson/West business
Los Angeles County Superior Court/Downtown

---

End of Document                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Fred Denenberg v. California Department of Transportation, 2006 WL 5305734 (2006)

2006 WL 5305734 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2015 ALM Media Properties, LLC. All Rights Reserved
Superior Court, San Diego County, California

Fred Denenberg v. California Department of Transportation

No. GIC836582

DATE OF VERDICT/SETTLEMENT: September 16, 2006

TOPIC: EMPLOYMENT - SEXUAL ORIENTATION DISCRIMINATION - EMPLOYMENT - FAILURE TO ACCOMMODATE

Clerk Claimed Discrimination Based on Disability, Orientation

**SUMMARY:**

RESULT: Verdict-Plaintiff

The jury did not find any discrimination based on sexual orientation. It did, however, find the defendant failed to provide Denenberg with a reasonable accommodation and discriminated against him on the basis of a disability. The jury awarded Denenberg $119,000 in economic damages and $25,000 in noneconomic damages, for a total $144,000. The judge awarded him an additional $490,000 in attorney's fees and $133,000 in costs, and ordered the department of transportation to award him a retroactive promotion. The promotion will result in an additional $12,000 of annual earnings through his career as well as upward adjustments to his retirement benefits.

**EXPERT WITNESSES:**
Plaintiff: Brian P. Brinig, J.D., C.P.A.; Damage Analysis; San Diego, CA Christopher Benbo, M.D.; Psychiatry; La Jolla, CA George Pratt, Ph.D.; Psychology/Counseling; La Jolla, CA Michael A. Robbins; Human Resources Policies; Bell Canyon, CA Defendant: Mark A. Kalish, M.D.; Psychology/Counseling; San Diego, CA

**ATTORNEYS:**
Plaintiff: Paul D. Jackson; Law Offices of Paul D. Jackson; San Diego, CA (Fred Denenberg); David M. deRubertis; The deRubertis Law Firm; Woodland Hills, CA (Fred Denenberg)
Defendant: Christopher J. Welsh; California Department of Transportation; San Diego, CA (California Department of Transportation); Julie A. Jordan; CalTrans Legal Department; San Diego, CA (California Department of Transportation)

JUDGE: Steven R. Denton

RANGE AMOUNT: $100,000-199,999

STATE: California

COUNTY: San Diego

**INJURIES:** Denenberg claimed that he suffered emotional distress and sought treatment from a psychologist. He also sought to recover the income he lost when he took a leave of absence to cope with the distress caused by the way his employer treated him.

**Facts:**

In 1998 plaintiff Fred Denenberg, a gay man, was hired by the California Department of Transportation as an office technician, an entry-level position. He received excellent performance reviews and was promoted to assistant administrator. Starting in

Fred Denenberg v. California Department of Transportation, 2006 WL 5305734 (2006)

1999, he sought promotion to associate administrator, the next job level above his own. Such a promotion would normally occur in relatively short time, he alleged, but his requests were repeatedly denied. He was told that budgetary constraints had forced the company to put into place a hiring and promotions freeze. When the freeze was lifted on July 1, 2004, Joseph Hull, the deputy director of traffic operations, promised Denenberg that his promotion would be processed.

When Hull had not yet finished processing the paperwork by late August 2004 despite Denenberg's further complaints, Denenberg sought legal counsel. His attorney, Paul Jackson, sent the department's upper management a letter alleging that Denenberg had been the subject of harassment based on his sexual orientation and that the department had failed to promote him because he was gay. Afterward, Denenberg's superiors and co-workers leveled accusations of wrongdoing against him. The alleged wrongdoing included telling a co-worker to "kiss his ass," making derogatory comments about a co-worker's religion, slamming a door in a co-worker's face and acting in a rude manner toward co-workers and management.

In late September 2004, Denenberg, who claimed to be suffering from stress and depression related to his workplace, complained about a sexually related email sent from a co-worker a year earlier. At the instruction of a psychologist, he went on a leave of absence, and the department stopped processing his promotion.

In August 2005, one year after his original stress leave began, Denenberg's psychologist recommended that he be given an accommodation that allowed him to telecommute. Hull did not allow telecommuting, however, and denied the accommodation. The psychologist revised the accommodation to request that Denenberg return to the workplace but that any face-to-face interaction with the co-workers he claimed had retaliated against him be minimized. Hull denied that request as well.

When Denenberg was able to return to work without restriction, the department informed him it had eliminated his position and offered him six other positions that were equivalent or nearly equivalent to his former position. Denenberg declined them all.

Denenberg sued the California Department of Transportation for discrimination and retaliation on the basis of sexual orientation and discrimination and retaliation on the basis of disability. He contended that for a period of about 1.5 years he was harassed based on his sexual orientation; the alleged harassment consisted of perceived sexual advances, derogatory comments about his orientation and a degrading, homophobic email. He claimed that the department's refusal to promote him in September 2004 was in retaliation for the letter his attorney wrote complaining of harassment and discrimination. He also claimed that the department's stated reason for not promoting him--that he went on medical leave--indicated disability discrimination and showed that the company was retaliating against him for seeking accommodation of a disability. He further alleged that when his psychologist approved his return to work with a minimum of interaction with co-workers, there were desks and offices available that could have been used to meet this request.

The defendant denied any wrongdoing. It claimed that the reason Denenberg was not promoted was because he had either failed the promotional exam or did not receive a high enough score for placement. The state budget crises, the department's budget, and the lack of available work prevented promotions for new hires until June 30, 2004. Once the freeze was lifted, the plaintiff was promised a noncompetitive promotion. It contended that it had begun processing a noncompetitive promotion for Denenberg at the time he took his leave but stopped when he was out for almost two years and the department did not know when or whether he would return to work and that, under the Civil Service Act, the promotion could not go through because he was not at work to accept the new appointment. This had implications for his retirement and benefits.

The department also claimed that the request to telecommute was denied because the position required interaction with co-workers and the timely sharing of information. The department noted that over the course of nine months, it offered the plaintiff six alternative positions at the same classification and rate of pay but he refused all of them. Finally, the company denied any knowledge of the claimed harassment.

Before the trial began, the plaintiff dropped the claim that he should have been promoted before 2003. The state had a freeze on promotions and new hires between June 2003 and June 2004.

Fred Denenberg v. California Department of Transportation, 2006 WL 5305734 (2006)

At trial, the defense impeached Denenberg's credibility by attacking his assertion that he had never been involved in any other lawsuits by introducing numerous lawsuits that he had either filed or were filed against him.

The defendant claimed that it was not his workplace problems that caused the plaintiff's medical condition but rather other stressors, such as a tumultuous relationship with his domestic partner who suffered from chronic medical problems. The defendant introduced evidence of domestic discord, including allegations of domestic abuse.

Insurer:

Self insured California Department of Transportation

ALM Properties, Inc.
Superior Court of San Diego County, at San Diego

PUBLISHED IN: VerdictSearch California Reporter Vol. 7, Issue 4

---

**End of Document**    © 2015 Thomson Reuters. No claim to original U.S. Government Works.